**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.: 3:19-cv-01743-SB<br><br>**DECLARATION OF JUAN RAMON MORALES IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**Declaration of Juan Ramon Morales**

I, Juan Ramon Morales, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen, born in Brooklyn, NY on ▉▉▉▉▉▉▉. I am not a veteran of the armed services.

2. I currently live in Liberty, NY and with my wife, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, my daughter ▉▉▉▉ and my step-daughter ▉▉▉▉▉▉. I work as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in Ferndale, NY and my wife ▉▉▉▉ works as a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in Liberty, NY. My family's average net annual household income is approximately $47,000.

3. I currently have a catastrophic health insurance plan through my employer, which I originally enrolled in to avoid having to pay a penalty for not having health insurance under the Affordable Care Act. This plan has a very high deductible and does not cover much in terms of medical care. I have kept the plan because it will at least provide some coverage for emergencies and it is otherwise the most affordable option my employer offers. Separately, ▉▉▉▉ and I carry medical debt in the amount of $950 with a monthly payment of $69.

4. My daughter ▉▉▉▉ who is a US citizen, and my step-daughter ▉▉▉▉▉▉ a lawful permanent resident, both have a subsidized health insurance that costs approximately $15/month.

5. My wife, ▉▉▉▉ a national of Mexico, does not have health insurance, nor would be allowed to obtain insurance through her current employer. I have asked my employer to add her as a dependent to my plan, but my employer told me that she is not eligible to be added because she does not have a Social Security Number. My employer told me that once she has a Social Security Number, she can be added to my catastrophic health plan, but my employer has not provided me any written documentation regarding the costs and guaranteeing that they can add her to my plan within 30 days of her providing a Social Security Number. There is nothing in the paperwork I received when I enrolled in the plan guaranteeing that a family member will have effective coverage within 30 days of presenting a Social Security Number and be automatically eligible to enroll.

6. Based on my conversations with my employer and research I have done, it is also highly likely that we will not be able to afford the additional costs necessary to add Vianca to my catastrophic plan and, if so, we could afford the additional costs to do so because of her prior medical history.

7. I have read what is considered approved health insurance under the President's Proclamation and the plans are either not available to ▮ and I or unaffordable due to our current financial situation. For example, ▮ cannot obtain a visitor plan because she is present in the United States and we are not eligible for TRICARE or Medicare. Because of her prior illnesses, most options outside of subsidized insurance under the Affordable Care Act remain unavailable to ▮.

8. ▮ has lived in the United States since 2006. We met that same year in Liberty and began dating and fell in love almost immediately. We have been inseparable since then. We married in 2013.

9. In 2010, ▮ was diagnosed with leukemia, and had to have an emergency brain surgery. She also has epilepsy and has suffered in the past from seizures. Those are under control because she faithfully takes her prescribed medications, Keppra for the seizures, and Gabapentin for the headaches, for which she pays out-of-pocket approximately $45/month. If she obtained an immigrant visa and held status as a lawful permanent resident she would be eligible to receive subsidized care and better treatment to make sure she remains healthy.

10. Perhaps our greatest joy was the birth of our daughter ▮ in ▮. After nearly losing ▮ in 2010 to her illness, I believed that God gave us a new purpose with ▮ and she and ▮ mean the world to us both.

11. In January 2017, I filed an I-130 petition to qualify ▮ as my spouse, so she can apply for an immigrant visa. This was approved in July 2017. However, because ▮ entered the United States without inspection, under the current law she cannot apply for a Green Card from within the United States and will have to process her immigrant visa at the US consulate in Ciudad Juarez, Mexico. Because she has accumulated more than one year of unlawful presence in the United States since her entry, she would be subject to a 10-year bar to returning.

2

Page 2 - DECLARATION OF JUAN RAMON MORALES IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

In May 2018, she filed an I-601A provisional unlawful presence waiver application to overcome that eventual 10-year bar. The waiver is based on the extreme hardship that I would suffer if she was not allowed to obtain permanent residence. The I-601A process allowed ▓▓▓ to file and await approval of this application from within the United States as a way to minimize the time I would be separated from her. The I-601A application was approved in April 2019.

12. Since then, ▓▓▓ has completed all other required steps of the Consular Process and our family is now waiting for her interview to be scheduled in Ciudad Juarez, Mexico.

13. ▓▓▓ and I were awaiting the interview when we received news of the October 4 Presidential Proclamation detailing the ban on ▓▓▓ re-entry as an immigrant unless she will be covered by approved health insurance within 30 days of the her entry into the United States, or unless she possesses the financial resources to pay for reasonably foreseeable medical costs.

14. Based on what I have learned from my employer and my own online research, I do not believe that ▓▓▓ will be able to show that she has health insurance at the time of her immigrant visa interview, or that she will have health insurance within 30 days of coming to the United States with a Green Card. I understand that even with successful applications, Green Cards and Social Security numbers are not always mailed quickly after a permanent resident's arrival in the United States.

15. In addition, given her past health issues, even though she is currently in good health and is able to pay for all her current medications, I do not believe that ▓▓▓ will be able to show that she will be able to pay for all her future medical costs at the time of her immigrant visa interview.

16. If her visa was refused or delayed for any time, she would not be able to refill her prescription; she has no place to live in Mexico; she would lose her job in the United States; and we would be financially ruined because our family relies on her income. Moreover, the refusal of her visa will lead to the revocation of her I-601A hardship waiver, which would make her inadmissible to the United States for 10 years.

17. Because of the lack of any notice and the overall uncertainty about what kind of proof would be sufficient to convince a consular officer, I believe that if ▮ leaves the United States for her consular interview, she will be banned from reentering under the Proclamation due to lack of approved health insurance and inability to have financial resources to pay for medical costs.

18. As part of ▮ I-601A application, we proved that I would suffer extreme hardship if ▮ immigrant visa application is not approved. We included a lot of evidence of the extreme psychological, emotional, financial and physical hardship I and my family would suffer if she is denied permanent residence. This whole green card process has taken many years so far, and brought up a lot of pain for me to envision raising our daughters alone and being separated from the love of my life.

19. As the spouse of an undocumented immigrant, I have experienced firsthand the stress of not knowing if I may come home from work one day to find my wife has disappeared. I have experienced the disadvantage of not having my wife be able to drive because she cannot have a driver license. My wife has been the victim of scams and attempted scams, including frightening phone calls from people demanding money and threatening to call the immigration police if we did not pay. Most frightening has been the worry that if my spouse's medical condition somehow worsens, she could not obtain appropriate medical care because of her status. With the approval of the I-601A, we believed we were on the cusp of finally putting behind us a very challenging episode in our lives.

20. I understand that under the new Proclamation I could be indefinitely unable to reunite with ▮ after she goes to Mexico to process her visa at the consulate. We are in a terrible bind right now. If we do not continue with the consular process, we risk losing all the work we have done over the last several years to get to this point. If we do continue with the process, there is a real risk that ▮ visa will be denied and she will be stuck in Mexico without me or our children. It is as if we are re-living the extreme hardship all over again – I know that I could not live in Mexico with my daughters because of the violence and poverty there, and I do not know where our family could all be together that is safe and where

we could live without fear and despair. If we are separated, I will be not only heartbroken but worried sick about ▇▇▇ and her health and safety – I do not know if she will have access to her life-saving medications in Mexico, and if she does, if we will be able to afford them. I am also worried about our daughters, who are very attached to their mother and may want to be with her no matter where she is. They will be confused and devastated if their mother is taken away from them. And yet we cannot have them live in Mexico where they would be without a home, educational opportunities and where they would be certain to live in poverty and subjected to constant threats of violence.

21. When I learned that we could very well suffer this indefinite separation, I felt tremendous anxiety and despair, particularly given the whole process we have already been through. We have not told our children yet about this new Proclamation because we do not want them to worry about being separated from their mother.

22. I am willing to serve as a class representative on behalf of those who are similarly situated to me and cannot have family members join them in the United States because of this Proclamation.

23. I know that if the class is certified I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all suffering due to the President's Proclamation.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed at Liberty, NY on November 5, 2019.

Juan Ramon Morales

6

Page 6 - DECLARATION OF JUAN RAMON MORALES IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION