DocuSign Envelope ID: 8AB5ACB6-1327-40EF-9C36-938B3B3F5980

**Stephen Manning** (SBN 013373)
smanning@ilgrp.com
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA  90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br><br> DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No.: 3:19-cv-01743-SB <br><br><br><br><br> **DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR CLASS CERTIFICATION** |

I, Dania Palanker, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1.      I am an Assistant Research Professor at the Center on Health Insurance Reforms ("CHIR") with Georgetown University's Health Policy Institute. CHIR is composed of a team of nationally recognized experts on private health insurance and health reform. We are based at Georgetown University's Health Policy Institute (HPI), and work regularly with a multidisciplinary group of faculty and staff dedicated to conducting research on issues related to health policy and health services. HPI is affiliated with the University's public policy graduate programs at the McCourt School of Public Policy.

2.      If called as a witness, I could and would completely testify to the following.

A.      QUALIFICATIONS

3.      I have worked in health insurance policy for 19 years and worked previously for four years in health insurance benefits administration.

4.      In my three years at CHIR, I analyze state and federal health insurance market reforms, including implementation of the Affordable Care Act ("ACA") and sale of health insurance products that are not covered by the ACA, such as short-term limited duration health insurance ("STLDI"), with an emphasis on insurance benefit design, access to health care, and coverage for chronic health conditions.

5.      I have researched and written extensively about short-term health plans including writing reports, issue briefs, and blog posts on short-term health plans and other alternative coverage arrangements.

6.      My expertise on health insurance issues is frequently sought out by state and national media, including media that focuses on health insurance issues such as Kaiser Health

Page 1 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION

DocuSign Envelope ID: 8AB3ACDB-1527-40E7-9C36-938B3B3F5980

News and Modern Healthcare. My research and advocacy have been cited by or I have been

interviewed by the New York Times, the Los Angeles Times, Washington Post, National Public

Radio, Marketplace, CNBC, Houston Chronicle, Philly Inquirer and other media outlets.

      7.     Before joining CHIR, I was Senior Counsel for Health and Reproductive Rights at

the National Women's Law Center; the Associate Director of Health Policy for the Service

Employees International Union ("SEIU"); and the Deputy Administrator of Health Benefit Funds

for SEIU where I administered health benefit funds for largely low-wage immigrant populations.

      8.     I have additional knowledge of the health insurance exchanges and the ACA as an

unpaid Standing Advisory Board member of the District of Columbia Health Benefits Exchange,

which runs the ACA health insurance marketplace for the District of Columbia. I serve as the

Chair of Plan Standardization Workgroup and have been involved in policy decisions related to

eligibility, enrollment, and sale of STLDI as well as presenting to the Standing Advisory Board

on short-term health plans.

      9.     I have a J.D. from Georgetown University and am a licensed member of the New

York bar. I also have a Masters of Public Policy from Kennedy School of Government at

Harvard University.

      10.    I am familiar with the Presidential Proclamation entitled "Presidential

Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United

States," signed by President Trump on October 4, 2019 (the "Proclamation") having read and

analyzed the Proclamation and the types of insurance that might be available to visa applicants

under the Proclamation.

**B.    MOST OF THE HEALTH INSURANCE OPTIONS THAT ARE SUFFICIENT FOR A VISA UNDER THE PROCLAMATION ARE NOT REALISTICALLY ACCESSIBLE TO MANY INTENDING IMMIGRANTS**

11.    In general, individuals are required to reside within a state before purchasing a health insurance plan. While there have been political discussions and proposals to allow the sale of health insurance across state lines, state regulators have resisted such proposals as they undermine the states' abilities to protect their residents.[1] This is because non-employment based health insurance is primarily regulated by the states. In order for states to have regulatory authority over the product, the plan must be sold and issued within the state. As a result, visa applicants are not actually able to obtain health insurance prior to moving to the United States.

12.    While visa applicants may be able to choose a plan they will apply for, there is no guarantee of coverage before becoming a resident of the United States. In fact, the ACA specifically require that plans sold on the marketplace, even without a subsidy, are only eligible to lawfully present individuals. This means that an individual applying for a visa cannot be found eligible for such coverage. They can be eligible after they move to the United States.

13.    The proclamation does not define "catastrophic plans" but there is a type of catastrophic plan for sale through the marketplaces. These plans are limited to enrollment by people who are under the age of 30 or who qualify for a hardship exemption. They are sold through the health insurance marketplaces so they are only available to people who are legally present and not to visa applicants. It is unclear whether the proclamation, in using the term "catastrophic plan," is referring specifically to these types of plans for sale through the marketplaces, or generically to certain high deductible plans.

---

[1] Sabrina Corlette & Kevin Lucia, *Reading The Fine Print: Do ACA Replacement Proposals Give States More Flexibility And Authority?*, Health Affairs Blog (Feb. 23, 2017), https://www.healthaffairs.org/do/10.1377/hblog20170223.058888/full/.

DocuSign Envelope ID: 8AB5ACB6-1327-40E7-9C86-938B5B3F5980

14.     The two main exceptions are employer based coverage, if an applicant knows that they are eligible for coverage through their employer or as a dependent of an employee, and visitors insurance.

15.     There are some potential concerns with timing of employer based coverage that could push applicants to have to purchase travel insurance as the only option. Employers are allowed to have a waiting period of up to 90 days before coverage begins. According to the Kaiser Family Foundation, 71% of covered workers had a waiting period before coverage could begin in 2018 and the average waiting period is 1.9 months.[2] This means that visa applicants with a job providing health insurance in the United States may still not be able to rely on their employer health benefits to meet the requirements of the proclamation and would have a gap in coverage before the 30-day requirement. The gap may be longer if immigrants choose to move to the United States before the start date of a job in order to settle into the new country.

16.     Only some family members are allowed to join health plans under insurance regulations and plan rules. In general, a family member needs to be a spouse or dependent child up to the age of 26. Adult children over 26 cannot be added to most health plans, including employment-based plans, unless there is a rare special eligibility rule by that plan or the adult child is a dependent due to disability. Grandchildren cannot be added to a health plan unless the grandparent is the legal guardian and grandparents, aunts, uncles, siblings and other family members cannot be added to health plans.

17.     STLDI plans are not available in all fifty states. California explicitly bans short-term plans in part because of concerns about the limitations in STLDI plans that were sold in the

---

[2] The Kaiser Family Foundation, *Employer Health Benefits – 2018 Annual Survey*, http://files.kff.org/attachment/Report-Employer-Health-Benefits-Annual-Survey-2018.

state.[3] Four other states prohibit the sale of underwritten STLDI plans, which means no plans are being sold on the market. These states are Massachusetts, New Jersey, New York, and Rhode Island.[4]

18.     Twenty states limit the duration of short-term plans making it impossible for individuals to enroll in one plan for the required time limit in the proclamation. Nineteen of these states limit the initial contract term to 11 months or less.[5] In addition, Maine requires all STLDI plans to have an end date of December 31, making it almost impossible to have a plan for 364 days.

19.     Some STLDI may not even be available to recent immigrants to the United States that are applying for a change in visa status. A part of the application for STLDI for United Health One ask "Has any applicant lived in the 50 states of the USA or the District of Columbia for less than the past 12 months?"

20.     If short-term carriers are able to find a way to sell plan to people before they receive their visa, STLDI are not available to people with many medical conditions, or even symptoms of medical conditions. Applicants can be denied coverage because in the last five

[3] Georgetown Univ., *Short-Term Plans Could Bring Long-Term Risks to California's Individual Market*, CALIFORNIA HEALTH CARE FOUNDATION (Apr. 27, 2018), https://www.chcf.org/publication/short-term-plans-long-term-risk-california/; and

Dania Palanker et al., *States Step Up to Protect Insurance Markets and Consumers from Short-Term Health Plans*, THE COMMONWEALTH FUND (May 2, 2019), https://www.commonwealthfund.org/publications/issue-briefs/2019/may/states-step-up-protect-markets-consumers-short-term-plans.

[4] The Commonwealth Fund, *What Is Your State Doing to Affect Access to Adequate Health Insurance?* (Nov. 4, 2019), https://www.commonwealthfund.org/publications/maps-and-interactives/2019/nov/what-your-state-doing-affect-access-adequate-health.

[5] The Commonwealth Fund, *What Is Your State Doing to Affect Access to Adequate Health Insurance?* (Nov. 4, 2019), https://www.commonwealthfund.org/publications/maps-and-interactives/2019/nov/what-your-state-doing-affect-access-adequate-health.

years they showed signs or symptoms of a variety of health conditions. For example, one carrier

lists among many other conditions: chest pain, degenerative joint disease, diabetes, or any

neurological disorder. I note that "chest pain" is not limited in this application to heart disease

related "chest pain" and could therefore include one instance of heart burn, a pulled muscle in

the chest, or an engorged nipple when breast feeding. Symptoms of diabetes are broad and can

include symptoms that do not mean an individual is sick, let alone has diabetes. Technically, a

person should answer that they did have signs of diabetes if they had some nausea and weight

loss and that would trigger denial of coverage.

        21.     STLDI are also unavailable to individuals starting or trying to start a family. The

first question on applications is often whether the applicant is pregnant, undergoing fertility

treatment, in the process of adoption, or an expectant father. An answer of yes typically results in

denial of coverage.

        22.     I am aware of one carrier that offers coverage in multiple states on a guaranteed

basis, but preexisting conditions are still excluded from coverage and total covered benefits are

limited to $100,000, compared to limits of $250,000 to $1 million in the insurers' other STLDI.[6]

        23.     If a visa applicant cannot satisfy the Proclamation's health insurance requirement,

they may still receive a visa if they can show, to a consular officer's satisfaction, that they have

sufficient "financial resources to pay for reasonably foreseeable medical costs" out of pocket.

The Proclamation does not define "reasonably foreseeable medical costs," however, and it is

unclear when a visa applicant will be able to meet this standard, especially in light of the fact that

consular officers likely do not have serious medical training to assess an applicant's medical

---

[6] National General, *Short Term Medical Brochure* (May 25, 2018),
https://www.ehealthinsurance.com/ehealthinsurance/benefits/st/NationalGeneralAccidentandHea
lth/NGAH-STMASSOCIATIONBRO-2.05.25.18.pdf.

Page 6 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS
MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION

condition. The State Department's October 29, 2019 Emergency Notice requesting approval for a new information collection required to implement the Proclamation's requirements defines "reasonably foreseeable medical costs" as "those expenses related to existing medical conditions, relating to health issues existing at the time of visa adjudication," but this Notice provides no information, guidance, standards, or procedures on how consular officers would go about interpreting or applying that definition, or how they would assess an applicant's financial resources under that definition. Nor does the Notice provide guidance on the scope of what "medical conditions" or "health issues" may be relevant.

## C.   SHORT-TERM LIMITED DURATION INSURANCE DOES NOT PROVIDE COVERAGE FOR FORSEEABLE HEALTH NEEDS OR PROTECT AGAINST UNCOMPENSATED CARE

23.     STLDI are plans that were initially designed for brief gaps in coverage. These are insurance plans that are not designed to be comprehensive in nature or to meet all foreseeable medical expenses. Individuals enrolled in such plans are likely to face significant uncompensated care costs if they have an unexpected health event.

24.     Health questionnaires on the applications are also used for post claims underwriting. A review of case law and media accounts find multiple instances of enrollees having coverage rescinded after filing a high cost claim, such as for cancer. In such instances, the insurers look back to the initial health questionnaire and assert that the enrollee should never have been issued the plan because the questionnaire was answered incorrectly. The so-called incorrect answer could be a result of the enrollee not being aware of a sign or symptom of a condition or not aware of all the details written in their medical record.

25.     STLDI plans routinely exclude coverage for preexisting health conditions. Definitions vary by insurer, but multiple carriers include not only conditions for which an individual received medical care or diagnosis, but also conditions for which an ordinarily prudent

Page 7 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION

DocuSign Envelope ID: 8AB5ACD6-1327-40E7-9C86-938B3B3F5980

person would have sought medical advice, diagnosis, care, or treatment within a specified time period. Insurers routinely consider a pregnancy preexisting if the enrollee was pregnant on the coverage start date, regardless of whether the enrollee was aware she was pregnant. The plans therefore exclude services related to complications of the pregnancy that otherwise would have been covered. There is one insurer that recently introduced a product to cover some preexisting conditions, but applicants must still pass underwriting and the maximum covered for preexisting conditions per contract term is $25,000.[7] Given that the average cost of a three-day hospital stay is about $30,000, enrollees with this type of coverage can quickly find it insufficient to meet their needs.[8]

26.     In general, STLDI benefits are well below the benefits provided in individual market health insurance. A study by the Kaiser Family Foundation found no STLDI plans available in 2018 covered maternity (except for complications of pregnancy), 71 percent did not cover outpatient prescription drugs, 62 percent did not cover substance use treatment, and 43 percent did not cover mental health services.[9]

27.     While STLDI plans may not limit enrollees to a network, they often set the amount they will pay at an amount below the typical cost of services. Some STLDI plans have very low limits for certain services. For example, two STLDI carriers offer plans that limit

---

[7] The IHC Group, *Connect Plus Brochure* (Aug. 2018), https://www.ihcmarketplace.com/ViewApp/GetBrochure/STI/FL/Connect%20STM/15.

[8] U.S. Dept. of Health and Human Services, Centers for Medicare and Medicaid Services, Center for Consumer Information and Insurance Oversight, *Why Health Insurance is Important*, https://www.healthcare.gov/why-coverage-is-important/protection-from-high-medical-costs/ (last visited Nov. 8, 2019).

[9] Karen Pollitz et al., *Understanding Short-Term Limited Duration Health Insurance*, THE KAISER FAMILY FOUNDATION (Apr. 23, 2018), https://www.kff.org/health-reform/issue-brief/understanding-short-term-limited-duration-health-insurance/.

DocuSign Envelope ID: 8AB3ACD6-1527-40EF-9C56-938B3B3F5980

inpatient hospital room and board to $1,000 and ICU room and board to $1,250 and one places a $5,000 limit on surgeon and anesthesiologist fees for a surgery. Other dollar value limits in STLDI plans are a $250 limit on ambulance services (the fee for ambulance transports in Houston, TX begin at $1,876.40)[10], $10,000 limit on HIV or AIDS related services (the estimated the annual cost of HIV treatment was $23,000 in 2010)[11], and $150,000 limit on transplant related services (estimated average billed charges for a kidney transplant in 2017 was $414,800 and estimated average billed charges for a liver transplant in 2017 was $812,500).[12]

28.    In addition to dollar limits, plans limit the maximum allowable amount that is reimbursable to a reasonable and customary charge that is determined by the insurer. When there are no networks, and therefore no contracts between providers and the insurer, the provider can balance bill the enrollee for the difference between the total bill and the amount covered by the plan. I am aware of one instance in which a plan paid only $11,780 of $211,690 in charges following heart surgery because charges exceeded maximum allowable amounts and benefit limits.[13]

---

[10] City of Houston, *City Fee* Schedule, http://cohweb.houstontx.gov/FIN_FeeSchedule/default.aspx (last visited Nov. 8, 2019).

[11] Kelly Gebo et al., *Contemporary Costs of HIV Health Care in the HAART Era*, NATIONAL INSTITUTE OF HEALTH, 24 AIDS 2705 (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3551268/pdf/nihms244848.pdf.

[12] T. Scott Bentley and Steven Phillips, *2017 U.S. Organ and Tissue Transplant Cost Estimates and Discussion*, Milliman Research Report (Aug. 2017), http://us.milliman.com/uploadedFiles/insight/2017/2017-Transplant-Report.pdf.

[13] Cheryl Fish-Parcham, Comments Submitted to Short-Term, Limited-Duration Insurance, 83 Fed. Reg. 7437 (proposed Feb. 21, 2018), https://www.regulations.gov/document?D=CMS-2018-0015-8801; and

Email from Cardiss Jacobs, Associate Health Care Ombudsman, Office of the Health Care Ombudsman and Bill of Rights, District of Columbia Government (May 22, 2018, 11:20 EDT) (on file with author).

29.     STLDI plans are often sold through associations or "discretionary group trusts." A "discretionary group trust" is a legal structure that allows for the sale of insurance to individuals as a group policy. In these instances, the master contract is held by the association or trust and issued in the state in which the association or trust is situated, rather than where the enrollee resides. Regulators in the state in which the enrollee resides may not have the authority to enforce law if the plan improperly denies a claim or otherwise violates state law. In some instances, plan documents may not be filed with the state in which the enrollee resides and state regulators may be unaware the plan is being sold within their state.

30.     One plan I analyzed for sale in Texas has numerous coverage limitations. Plans offered by this insurer include a $1,000 limit on a standard hospital room, $1,250 limit on an intensive care unit hospital room, $50 per day limit on inpatient doctor visits, and $250 limit per ambulance transport. These plans only cover three office visits per contract term and also have no coverage for maternity or outpatient prescription drugs. While these plans do cover mental health and substance use services, the reimbursement amounts are well below the cost of services and not in parity with other coverage. Outpatient mental health and substance use services are reimbursed at a maximum of $50 per visit and inpatient services at a maximum of only $100 per day.[14]

---

[14] LifeShield National Insurance Co., *Smart Term Health Lite Short Term Medical Brochure* (Mar. 9, 2018), https://www.ehealthinsurance.com/ehealthinsurance/benefits/st/LifeShield/Brochure_w_association_06_18.pdf.

DocuSign Envelope ID: 8AB3ACD6-1527-40EF-9C56-938B3B3F5980

**D.    VISITORS INSURANCE DOES NOT PROVIDE COVERAGE FOR FORSEEABLE HEALTH NEEDS OR PROTECT AGAINST UNCOMPENSATEDCARE**

31.    Visitors insurance is primarily designed for people visiting the United States and not for people expecting to be long term residents. These plans generally have various limits that may not be easily understood to people unfamiliar with health costs in the United States. For example, a brochure for one carrier appears to offer very comprehensive coverage, but the summary of benefits is not clear if it pays for inpatient hospital services not specifically listed.[15] While the summary of benefits does list a maximum reimbursement for hospital room and board and information on surgeon fees, it is not clear if all inpatient hospital services that would traditionally be covered by an insurance plan on the individual market in the United States are covered. This could potentially leave enrollees with tens of thousands in uncovered costs. This plan also has a $50,000 lifetime maximum on preexisting conditions which means an individual that has a very high cost surgery, such as a ten-hour heart surgery, could face tens of thousands of dollars in uncovered costs if the heart condition is determined to be a preexisting condition.

32.    The plans appear to be what is known as fixed indemnity coverage, which is insurance that pays a fixed dollar amount for every covered service which can be well below the actual cost of service. For example, this carrier limits surgeon fees to between $4,000 and $7,500 per surgical session, which could be well below the cost of surgeon fees for a very long, complicated surgery. This insurer also only covers between $400 and $800 per emergency room visit, even though emergency room visits can cost thousands of dollars. Finally, the plans only cover $350 towards prescriptions during the coverage period, which would effectively leave any

---

[15] IMG, *Global Medical Insurance Plan Brochure* (2019), https://www.imglobal.com/docs/library/forms-library/gmi-brochure.pdf?Status=Master.

Page 11 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION

enrollee on a high cost medication without prescription drug coverage. These plans also exclude

preexisting conditions, allowing applicants to purchase a rider that covers only three physician

visits for the preexisting condition and limiting reimbursement for medications for preexisting

conditions to $100 and limiting reimbursement or for emergency room or inpatient services to

$1000 for preexisting conditions, therefore effectively not covering hospitalization for

preexisting conditions.

33.     Visitors insurance plans either exclude coverage for preexisting conditions or

significantly limit coverage for preexisting conditions. For example, one plan covers acute onset

of preexisting conditions with a maximum covered up to $125,000, but only $36,000 for cardiac

or stroke.

34.     In addition, if an individual is hospitalized and the term of their travel insurance

expires during the hospitalization, they may be left with uncompensated care if they are unable to

renew the policy. This is the situation that left a Canadian woman with almost $1 million in

medical costs not covered by visitors insurance when she went into preterm labor with

complications while visiting the United States.[16]

**E.     THE PROCLAMATION ALLOWS FOR INSURANCE THAT IS NOT SUBJECT
TO JURISDICTION OF THE UNITED STATES**

35.     Immigrants shopping for health insurance outside of the United States are

shopping outside of the jurisdiction of the United States federal government and state

governments (states). The states' consumer protection laws, including laws protecting consumers

from misleading or false advertising by insurance brokers and agents, requirements that agents

---

[16] CBC News, *Jennifer Huculak-Kimmel billed $950K US after giving birth in U.S.* (Nov. 19, 2014), https://www.cbc.ca/news/canada/saskatoon/jennifer-huculak-kimmel-billed-950k-us-after-giving-birth-in-u-s-1.2839319.

Page 12 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF
PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS
CERTIFICATION

DocuSign Envelope ID: 8AB3ACD6-7527-40EF-9C56-938B3B3F5980

and brokers selling insurance be licensed by the states, and requirements that insurance products being marketed as insurance be licensed by the states do not reach the sale of insurance in different countries.

36.     States are already expressing concern about misleading or fraudulent sale of health insurance within the United States.[17] For individuals shopping for coverage online, if marketing practices are similar to within the United States it will make it very difficult for many visa applicants to make an informed choice. To begin with, health insurance in the United States is very complicated. There are many terms that even Americans are not always familiar with that would be foreign concepts to many visa applicants, such as "deductible," "coinsurance," "copayments," "out of pocket maximum," and "formularies." This makes the process for shopping for travel insurance online extremely difficult for visa applicants.

37.     Based on my experience with the United States insurance market, I would expect to see this proclamation as an opportunity for those looking to prey on people applying for visas by either fraudulently selling what they claim to be is an insurance product or by selling subpar insurance products without disclosing the limitations of the plan or explaining how the limitations in comparison to costs of health care in the United States, which is significantly higher than the cost of care from where many individuals will be applying for visas.

---

[17] Dania Palanker, JoAnn Volk, Maanasa Kona, *Seeing Fraud and Misleading Marketing, States Warn Consumers About Alternative Health Insurance Products*, THE COMMONWEALTH FUND: TO THE POINT BLOG (Oct. 30, 2019), https://www.commonwealthfund.org/blog/2019/seeing-fraud-and-misleading-marketing-states-warn-consumers-about-alternative-health.

Page 13 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION

DocuSign Envelope ID: 8AB3ACD6-1527-40EF-9C56-938B3B3F5980

38.     I have reviewed plan documents of visitor insurance plans sold to individuals visiting the United States that lists the policy holder as being a company based on the Cayman Islands and specifically noting the plan does not fall under the jurisdiction of the United States.[18]

39.     State insurance regulators do not have the authority to regulate insurance that is sold outside of their state and not regulated by their state, such as a plan sold by a company based in the Cayman Islands. This means that if there is a dispute in coverage by the insured they will not be able to turn to a regulator in the state where the reside for enforcement of the insurance contract if enrolled in a visitors insurance plan not licensed and regulated by a state.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of November, 2019 in Washington, D.C.

DocuSigned by:

*Dania Palanker*

0386E790575D4DE

Dania Palanker, JD, MPP

---

[18] Crum & Forster, *Cover America$^{SM}$ – Gold Program Summary* (2019-2020), https://www.visitorscoverage.com/policydoc/coveramerica-gold-insurance-policy-document.pdf.

Page 14 – DECLARATION OF DANIA PALANKER, JD, MPP IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINRY INJUNCTION AND MOTION FOR CLASS CERTIFICATION