**Stephen Manning** (SBN 013373)
smanning@ilgrp.com
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA  90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK, | Case No.: 3:19-cv-01743-SB |
| Plaintiffs, | |
| v. | **DECLARATION OF LOUISE NORRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA, | |
| Defendants. | |

## DECLARATION OF LOUISE NORRIS

I, Louise Norris, hereby declare:

1.      I am an independent health insurance broker based in Colorado. I have co-owned a health insurance agency, Insurance Shoppers, Inc., since 2003, and I have been researching and writing about health insurance and health care reform since 2006. I specialize in the Affordable Care Act ("ACA") and publish educational articles regularly with healthinsurance.org and medicareresources.org. I am the health insurance expert for Verywell and have written extensively for ADP, HSA Store, and various other outlets. My work has also been published by Health Affairs, and I was a panelist for a health care reform event hosted by the Brookings Institution in 2018.

2.      I have reviewed and am familiar with the October 4, 2019 Presidential Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System (the "Proclamation").

3.      The Proclamation states that noncitizens must either "be covered by approved health insurance" within 30 days of entering the United States, or possess "financial resources to pay for reasonably foreseeable medical costs." The Proclamation identifies eight types of "approved health insurance" plans, including "a short-term limited duration health policy effective for a minimum of 364 days – or until the beginning of planned, extended travel outside the United States;" and "a visitor health insurance plan that provides adequate coverage for medical care for a minimum of 364 days – or until the beginning of planned, extended travel outside the United States."

4.      Visitor health insurance plans are in many ways similar to the sort of coverage that people could buy in the individual market before 2014, when the ACA's insurance market reforms went into effect with specific consumer protections, including essential health benefits requirements and a prohibition against denials based on pre-existing conditions. They are not, however, comparable to ACA-compliant plans (either on-exchange or off-exchange) that are currently available, or to Medicaid. This is because visitor health insurance plans largely do not cover pre-existing conditions and do not cover all of the essential health benefits that would be covered under an ACA-compliant individual market plans.

5.      Visitor plans and short-term limited duration insurance ("STLDI") plans tend to follow the same general business model: providing coverage for a limited amount of time, for medical needs that arise unexpectedly after the person's coverage is in force. The amount of coverage that is actually provided depends in large part on the benefits an individual selects when he or she enrolls.

6.      Visitor plans, however, can place limits on things that would be covered under ACA-compliant plans, such as injuries stemming from participation in "extreme sports" (which can include things like kayaking, martial arts, horseback riding, etc.). Most do not cover maternity care. Some provide limited care for mental health. Prescription drug coverage will vary from one plan to another, but with limited exceptions, they will generally not cover prescriptions that a person is already taking.

7.      Indeed, visitor plans generally do not cover pre-existing conditions, and most will use post-claims underwriting, which means that if a person has a claim once he

Page 3 – DECLARTION OF LOUISE NORRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

or she is in the United States, the insurer will take a very close look to see if the claim

could be related to anything that was pre-existing, and deny the claim if that's the case.

8.      In addition to the challenges presented by visitor plans, there difficulties

for intending immigrants who wish to sign up for an ACA-compliant plan under the

terms of the Proclamation.

9.      First, a person seeking to enroll in a new health insurance plan must

normally do so during the open enrollment period, which runs annually between

November 1 and December 15. Although certain life events can trigger a "special

enrollment period" ("SEP") that enable an individual to enroll in a new health insurance

plan outside the open enrollment period, the SEP for gaining citizenship or lawful

permanent resident status only applies in the State and Federal Exchanges. Off-Exchange

insurers will not recognize an SEP for a newly arrived immigrant and will not accept an

enrollment application outside the standard open enrollment period.

10.     In addition, the SEP for gaining citizenship or lawful permanent resident

status only applies *after the fact*; it is not available in advance. This SEP is also governed

by the standard rules for a policy's "effective date," or when coverage under the policy

actually becomes available. This means that coverage under a policy is available on the

first of the following month as long as the individual applies by the 15th of the current

month. If, however, a person receives their green card on March 20th, for example, and

enrolls the same day, their plan will not take effect until May 1. It will therefore be very

difficult for an intending immigrant to show, under the terms of the Proclamation, that

they will be covered by an approved health insurance plan that complies with the ACA within 30 days of their entry.

11.     Between the terms of the Proclamation and the existing health insurance availability, intending immigrants are in a tough position: They are required to have coverage (potentially before they even arrive in the United States), but it seems that they are largely limited to enrolling in plans that aren't considered minimum essential coverage, unless they have access to a group plan offered by a U.S. employer. Even these types of employer plans are difficult for intending immigrants to acquire within 30 days of entering the United States, given that many employers impose waiting periods before employees can qualify for employer-sponsored health insurance, and the average wait time imposed is 1.9 months.

I hereby declare under penalty of perjury that the foregoing is true and correct.

DATE: November 7, 2019

_____
                                                Louise Norris