**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (*pro hac vice* pending)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (*pro hac vice* pending)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No.: 3:19-cv-01743-SB <br><br><br><br><br> **DECLARATION OF JOAN WATSON-PATKO IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, Joan Watson-Patko, declare as follows:

1.      I am the Executive Director of the Oregon Primary Care Association ("OPCA"),

headquartered in Portland, Oregon. OPCA is a non-profit membership association, founded in 1984, with

a mission of leading the transformation of primary care to achieve health equity for all.

2.      OPCA's members are Oregon's community health centers, also known as Federally

Qualified Health Centers ("FQHCs"), other safety net clinics, and those who support them. These

community health centers and clinics deliver integrated primary care, including dental and behavioral

health services, to over 430,000 Oregonians annually. Our members provide care to some of Oregon's

most vulnerable populations, including one in four Oregon Health Plan (Medicaid) members.

3.      OPCA believes that all individuals should have access to the essentials of life, regardless

of where they were born. As part of this vision, we support access to comprehensive, affordable health

care and provide technical assistance, training, and policy support to our members to achieve this vision.

We also partner with our members to advance the goals of health system transformation: better health,

better care, lower costs, and health equity.

4.      We at OPCA are familiar with the Presidential Proclamation entitled "Presidential

Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the

United States," signed by President Trump on October 4, 2019 (the "Proclamation").

5.      We became aware of an Emergency Notice published by the State Department on

October 29, 2019, concerning a proposed "Methodology" for implementing the Proclamation.

Although the notice-and-comment period for the Notice was less than 48 hours long, we felt

compelled to submit a comment because the Proclamation undermines OPCA's mission to

advance health equity. By mandating that visa applicants abroad buy health insurance, the

Proclamation effectively imposes a single factor wealth test that will disproportionately harm

people of color. The Proclamation also threatens to undermine the nation's health and increase

uncompensated care for hospitals by restricting immigrants' ability to access comprehensive health insurance that is lawfully available to them.

6.      The Proclamation's premise that lawful immigrants strain our nation's healthcare system is deeply mistaken. Lawful immigrants are not a burden to the nation's healthcare system. Indeed, evidence shows that lawful immigrants actually represent a "favorable" insurance risk because they are often younger, healthier, or otherwise lower-than-average users of health care services when compared to the general insured population. Lawful immigrants are also net contributors to private health coverage and Medicare: they pay more in insurance premiums than they receive in benefits. Lawful immigrants thus do not saddle the healthcare system with higher costs.

7.      The Proclamation puts the nation's health at risk by restricting eligible individuals from accessing comprehensive health insurance, in direct violation of Congressional intent.

8.      According to the Proclamation, intending lawful immigrants may not enter the United States unless they demonstrate sufficient "financial resources" to cover their  reasonably foreseeable health care costs, or are "covered by approved health insurance."

9.      The Proclamation's list of "approved health insurance" does not include publicly funded health benefits such as Medicaid, the Children's Health Insurance Program (CHIP), or "subsidized" comprehensive plans offered through the Affordable Care Act (ACA) marketplaces that Congress has explicitly made available to lawful immigrants. Congress's purpose in creating these publicly funded health benefits is to improve the overall health of the country by guaranteeing everyone a minimum level of health care. With this purpose in mind, Congress specifically chose to make lawful immigrants, including new and recently arrived immigrants, eligible for Medicaid, CHIP, and subsidized comprehensive coverage under the

ACA.

10.    The majority of the Proclamation's "approved health insurance" options are not practically available to immigrants, such as Medicare, which requires that an individual be 65 years or older and have lived in the U.S. continuously for at least five years. Similarly, while the Proclamation approves "employer-sponsored plans," coverage under these plans is often not immediately available because employers implement a federally authorized waiting period that can last up to 90 days. Additionally, while the Proclamation lists "family member plans" as an "approved health insurance" option, family member plans only cover spouses and children under the age of 27.

11.    The only "approved health insurance" options in the Proclamation that are practically available to immigrants are short-term limited duration insurance ("STLDI") and other similarly noncomprehensive plans. The Proclamation therefore restricts access to comprehensive health insurance and instead forces immigrants to subscribe to short-term insurance plans that provide minimal coverage.

12.    Pushing immigrants toward these short-term insurance plans fundamentally undermines health equity by depriving individuals of adequate health coverage. It also puts the nation's health at greater risk. STLDI plans are noncomprehensive plans that leave people underinsured or effectively uninsured when medical concerns arise. STLDI plans may not cover routine medical expenses, such as the cost of prescription drugs, and may not cover emergency medical expenses, such as costs associated with hospitalization. Short-term insurance plans are frequently referred to as "junk plans" because they fail to meaningfully provide insurance coverage, including refusing to cover individuals' pre-existing medical conditions. "Visitor health insurance" plans share many of the same characteristics.

Page 3 – DECLARTION OF JOAN WATSON-PATKO IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

13.     Under the ACA, comprehensive health insurance plans must cover a range of "essential health benefits," including coverage of patients' pre-existing medical conditions. The same requirements do not apply to STLDI and visitor insurance plans. Such plans thus regularly fail to provide coverage for prenatal and maternity care, prescription drugs, mental health care, preventive care, and certain types of accidental injury.

14.     Importantly, virtually all STLDI and visitor insurance plans do not cover individuals who have pre-existing medical conditions. This restriction means that a patient with an existing condition is either ineligible for an STLDI plan or will be uninsured for any health services he receives for his pre-existing condition. Similarly, STLDI plans may deny coverage to women if they have been or plan to become pregnant; to individuals who have been diagnosed or treated for conditions such as cancer, diabetes, hepatitis, or HIV/AIDS; and to individuals who have a history of mental health or substance use disorders.

15.     State governments have consistently expressed concerns about short-term health insurance plans. The state of Oregon does not allow STLDI plans to be offered for more than three months because STLDI plans are not comprehensive and do not provide adequate coverage. California, Massachusetts, New Jersey, and New York prohibit the sale of short-term health insurance policies that fail to provide coverage for pre-existing conditions. Other states including Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, New Mexico, Rhode Island, Vermont, and Washington have imposed even tighter restrictions on the sale of short-term health insurance.

16.     The Proclamation claims to be motivated by a concern for uncompensated care costs and the unreimbursed expenses for health services that hospitals provide to their patients. Yet by forcing immigrants to use short-term, non-comprehensive insurance plans rather than the

Page 4 – DECLARTION OF JOAN WATSON-PATKO IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

comprehensive insurance for which they are eligible, the Proclamation actually risks *increasing* these uncompensated care costs to healthcare providers. Moreover, by pushing lawful immigrants to pay for short-term rather than comprehensive insurance, the Proclamation would actually increase the number of individuals who are unable to afford necessary health care costs because their medical needs are not covered by these barebones plans.

17.    OPCA supports a nation where all are truly equal – including in their access to critical health services. The Proclamation undermines our mission to promote health equity for all by imposing an unwarranted barrier to lawful migration that also threatens to jeopardize our nation's overall health.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2019 at Portland, Oregon.