**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA  90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.: 3:19-cv-01743-SB<br><br>**DECLARATION OF STACEY POGUE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

### DECLARATION OF STACEY POGUE, MPAff

I, Stacey Pogue, hereby declare:

1. I am a Senior Policy Analyst with the Center for Public Policy Priorities (CPPP) in Austin, Texas. CPPP was founded by the Benedictine Sisters of Boerne, Texas in 1985 to advance public policy solutions for expanding access to health care for low-income and other disenfranchised Texans. CPPP became an independent, tax-exempt research and policy organization in 1999. Since our founding, CPPP has worked to promote policies that would expand access to affordable and adequate health coverage to improve both health care access for and financial security of Texas families. CPPP's research is frequently cited by policymakers and the media.  Policymakers, the media, and state agency staff often seek out technical assistance or advice from CPPP policy experts.

2. If called as a witness, I could and would competently testify to the following.

    **A.    Qualifications**

3. At CPPP, I work to improve access to health care coverage for low- and moderate-income Texans.  For 11 years with CPPP, I have managed research, policy, and advocacy efforts aimed at making private health insurance coverage more affordable and accessible to lower income Texans and improving consumer protections in health care coverage, so it provides meaningful financial security.

4. I have worked on policies to improve access to health coverage for Texans for 14 years. Before working at CPPP, I worked on health coverage policy in the Medicaid and CHIP Division of the Texas Health and Human Services Commission and

Page 2 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

at the Texas Department of Insurance. I have an undergraduate degree from Texas A&M University and Master's in Public Affairs from LBJ School of Public Affairs at the University of Texas at Austin.

   5.  In 2004-05, I worked with the Texas Department of Insurance to research coverage in and access to student health insurance policies. Before the Affordable Care Act passed, student health insurance policies shared many features with short-term, limited duration health insurance coverage such as limited benefits, broad and numerous exclusions, and policy maximums. As part of my research, I surveyed insurers, colleges, and students, and I also read through every plan brochure or summary of coverage for plans in Texas to catalog benefits and exclusions. That work formed my graduate school thesis which was published in the Innovations in Insurance series by the LBJ School of Public Affairs[1] and also formed the bulk of a report released by the Texas Department of Insurance.[2]

   6.  At CPPP, I have written numerous reports, blog posts, rules comments, and other materials focused on improving access to and adequacy of private health insurance. Attached to this Declaration as Exhibit A is a true and correct copy of my resume, which lists many of my reports.

   7.  I have been selected twice, in 2010 and 2011, by the National Association of Insurance Commissioners to serve as a funded consumer representative. I have also been appointed by the Texas Commissioner of Insurance to serve on the Utilization

---

[1] Pogue, S. "Covering Uninsured College Students in Texas, the Role of Student Health Insurance," Innovations in Insurance, LBJ School of Public Affairs Special Project Report, 2005.

[2] Texas Department of Insurance, "Insurance Options for College Students in Texas: A Study of Student Health Insurance Plans," November 2005.

Page 3 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Review Rule Advisory Committee and the Independent Review Organizations Advisory Group.

8. I frequently give public testimony including invited testimony to the Texas Legislature on private health insurance issues that affect consumers, particularly low-income consumers. I have also provided testimony to the Texas Department of Insurance during rulemaking hearings.

9. My expertise on health insurance issues is frequently sought out by Texas and national media. My research and advocacy have been cited by the New York Times, National Public Radio, the CBS Evening News, the Atlantic, Vox, Houston Chronicle, Dallas Morning News, Austin American Statesman, San Antonio Express News, and other media outlets.

10. As part of my job, I stay up-to-date on federal and state changes that affect the availability, affordability, and adequacy of private health insurance, particularly of plans sold in the individual market and through the Health Insurance Marketplace.

11. In October 2018, I read through all of the plan brochures for short-term, limited duration health insurance for sale in Houston and Austin, Texas through ehealthinsurance.com, a prominent online "web-broker" that markets both ACA-compliant and short-term, limited duration health plans to individuals. It has been approved by the Center for Medicare and Medicaid Services as a registered web-broker that can offer "direct enrollment" in qualified health plans through a website other than HealthCare.gov.[3] The multiple available plan offerings I reviewed were underwritten by

---

[3] Centers for Medicare and Medicaid Services, "July 2019 Direct Enrollment Web-broker Public List," July 12, 2019, https://www.cms.gov/CCIIO/Programs-and-Initiatives/Health-Insurance-Marketplaces/Downloads/July-2019-Public-WBE-List.pdf.

Page 4 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

five different insurers. I analyzed plan benefits and exclusions to gain an understanding of the scope of and limits to coverage available. I have also researched policies enacted by states that restrict sales of short-term plans beyond what is allowed under federal rule.

12. In preparing to give this declaration, I reviewed the Presidential Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System (the Proclamation) and the Motion for a Temporary Restraining Order. I also reviewed my previous work on short-term, limited duration health plans and information and coverage available on websites that market visitor medical insurance.

### B. Observations and Opinions

13. In my opinion, the limited "approved health insurance" options in the Proclamation are counterproductive to achieving the Proclamation's goal of protecting the health care system and American taxpayers "from the burdens of uncompensated care." The options that would be most available to immigrants seeking entry to the United States, either legally or practically, often have very limited coverage – leaving enrollees underinsured and at risk of generating uncompensated health care. Even these limited-benefit coverage options may not be available for purchase by all immigrants due to health status and other factors.

14. The most effective way of guarding against uncompensated care, by immigrants or any other person, would be to ensure access to affordable and comprehensive health insurance. The Proclamation's exclusion of the most accessible forms of affordable and comprehensive coverage—plans in the Health Insurance Marketplace, for which Advance Premium Tax Credits are available to eligible

Page 5 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

individuals, and Medicaid (allowed under the Proclamation only for children)—is counterproductive to achieving the stated goal of reducing uncompensated care costs.

15.     The most reasonably available plans in the list of eight "approved health insurance" options for immigrants seeking entry to the United States appear to be short-term, limited duration health insurance and visitor health insurance for all of the reasons already articulated in the Motion for Temporary Restraining Order.

16.     Immigrants in less-than-perfect health may be unable to buy short-term, limited duration coverage. These plans are medically underwritten, meaning an applicant has to provide information on his or her health status and can be denied coverage due to pre-existing medical conditions. Even if these plans can be purchased by people outside of the U.S., immigrants who are in less-than-perfect health may be denied a short-term, limited duration health insurance policy due to medical underwriting. Before the Affordable Care Act (ACA), plans in the individual health insurance market in most states including Texas were medically underwritten. More than one-in-four (27 percent) of U.S. adults ages 18-64 have a health condition that would result in a coverage denial under pre-ACA medical underwriting, and nearly half (45 percent) of American non-elderly families include at least one adult with a declinable medical condition.[4] Given the high rates of declinable medical conditions among non-elderly American adults, it is reasonable to assume that medical underwriting used by short-term, limited duration plans would be a significant barrier that would prevent many immigrants from purchasing

---

[4] Claxton, G, Cox, C, Damico, A, Levitt, L, and Pollitz, K, "Pre-Existing Condition Prevalence for Individuals and Families," Kaiser Family Foundation, October 4, 2019, https://www.kff.org/health-reform/issue-brief/pre-existing-condition-prevalence-for-individuals-and-families.

Page 6 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

a short-term coverage. Examples of declinable conditions under pre-ACA medical underwriting include common health conditions like pregnancy, diabetes, heart disease, obesity, and mental health conditions.[5]

17.   If an immigrant is in good health and is able to purchase short-term, limited duration coverage, that policy is unlikely to guard against uncompensated care in the event the immigrant experiences a serious illness or injury. Benefits in these plans are often limited and the plans contain numerous broad and unusual exclusions. None of the plans I have examined cover pre-existing conditions or maternity. Preventive care, such as immunizations, contraception, annual check-ups, is often excluded. If coverage of prescription drugs (outside of hospital confinement), mental health disorders, and substance use disorder is not completely excluded, then it is often limited by caps on the dollar amount of coverage per day or year or the number of visits covered. Short-term policies often include unusual exclusions that are not found in job-based coverage or ACA-compliant coverage. These exclusions are often related to expensive health care services and could lead to uncompensated care costs. Examples of exclusions include, no coverage for: (1) cancer that has symptoms that start between the first and 30th day of the policy; (2) certain surgical procedures during the first 6 months of the policy including hysterectomy, hernia repair, tonsillectomy, ear tubes, sinus surgery, and gall bladder surgery; (3) transplants; (4) pain disorders; (5) immunodeficiency disorders; (6) end-stage renal disease; (7) joint replacement or treatment of joints; (8) conditions of the skin; (9) self-inflicted injuries; and (10) injuries sustained while engaging is a hazardous activity, like rock or mountain climbing, hang gliding, racing any vehicle, flying in an aircraft

---

[5] Ibid.

Page 7 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

(other than commercial airlines), scuba diving, riding in all-terrain vehicles, playing in interscholastic or organized competitive sports league.

18. Despite coverage in a short-term, limited duration plan, an individual could still generate uncompensated care costs in the event of serious illness or injury because of the common use "policy maximums," dollar amounts over which the health insurance will cover no additional costs, in short-term plans. Every plan I examined had one, with maximums ranging from $500,000 to $5,000,000 for the policy term. Put another way, short-term plans are designed to limit the financial exposure of the *insurer* to the detriment of the policy holder, health care providers, and taxpayers who would be on the hook to cover costs above the maximum. This structure is essentially the reverse of ACA-compliant plans and employer-sponsored plans, which cap the exposure of the *policy holder* to protect against medical bankruptcy and uncompensated care. The Affordable Care Act prohibits lifetime and annual limits in most health coverage. The ACA also requires most plans to have an out-of-pocket maximum after which *the plan* must cover 100% of covered, in-network benefits.

19. If an immigrant is in good health and is able to purchase short-term, limited duration coverage, that does not guarantee that the immigrant will be able to maintain the policy for the full contract term. The Affordable Care Act prohibits rescission (retroactive cancelation of a policy back to the date of enrollment); but that protection does not extend to short-term, limited duration coverage. Before the ACA, insurers used rescission as a strategy to avoid paying for expensive health care by alleging—after the diagnosis with a serious condition or pre-approval for an expensive procedure—that the enrollee omitted information on his/her application, even if the

Page 8 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

omission was inadvertent.[6] When a policy is rescinded, that leaves the former policyholder liable for all costs incurred during the policy term, creating the potential for significant uncompensated care costs. From recent news stories, it appears that short-term, limited duration insurers are using rescission as a tool to limit their exposure to high-cost claims,[7] a practice that will likely only increase now that short-term policies can be sold with a term of up to a year due to a 2018 federal rule change.

20.    There is not, to my knowledge, a body of research on coverage in or limits to "visitor health insurance plans," the same way there is a developed body of knowledge on short-term, limited duration insurance, for example. To the degree that they are similar to short-term, limited duration health insurance, they would often have limited coverage; a policy maximum; broad exclusions including for pre-existing conditions, maternity, mental health disorders, and preventive care. These plans are not subject to the Affordable Care Act's requirements to ensure coverage is comprehensive and guards against medical bankruptcy and uncompensated care costs including: (1) coverage of Essential Health Benefits; (2) no discrimination against pre-existing conditions; (3) no lifetime, annual, or policy maximum limits to coverage; and (4) required out-of-pocket maximums to limit an enrollee's financial exposure. Given that, these plans are unlikely to be designed to provide comprehensive coverage that guards against medical bankruptcy and uncompensated care costs.

I hereby declare under penalty of perjury that the foregoing is true and correct.

---

[6] NPR, "Insurers Revoke Policies to Avoid Paying High Costs," June 22, 2009, https://www.npr.org/templates/story/story.php?storyId=105680875

[7] Levy, N., "Skimpy health plans touted by Trump bring back familiar woes for consumers," *Los Angeles Times*, April 2, 2019, https://www.latimes.com/politics/la-na-pol-trump-shortterm-health-insurance-consumer-problems-20190402-story.html.

Page 9 – DECLARTION OF STACEY POGUE, MPAff, IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

DATE: November 6, 2019

_____
Stacey Pogue, MPAff