The Honorable Michael H. Simon

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,<br><br>    Defendants. | NO. 3:19-cv-01743-SB<br><br>DECLARATION OF PAM MACEWAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

DECLARATION OF PAM MACEWAN
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION --
NO. 3:19-CV-01743-SB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

I, Pam MacEwan, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein and make this declaration based on my personal knowledge.

2. I am the Chief Executive Officer (CEO) of the Washington Health Benefit Exchange ("WAHBE" or "the Exchange"). I have held this position since 2015. Before leading the organization as the CEO, I served as Chief of Staff from 2012 to 2015. In that role I served as the principal strategic advisor to the CEO and assumed day-to-day responsibility for operations of the Exchange. I have 25 years of experience in healthcare management.

3. I am submitting this declaration in support of the Plaintiffs' Motion for Preliminary Injunction filed in response to the newly issued "Presidential Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System" ("PP 9945" or "the Proclamation") and "Notice of Information Collection Under OMB Emergency Review: Immigrant Health Insurance Coverage" ("Emergency Notice").

4. As I understand the Proclamation and the Emergency Notice, those seeking visas who are not exempted can have their application denied unless they demonstrate that they "will be covered by approved health insurance" within 30 days of entry into the United States by providing specific plan details, or "possess the financial resources to pay for reasonably foreseeable medical costs." This creates a catch-22 under existing federal law: visa seekers cannot access individual market coverage through Marketplaces (like WAHBE) without verifying residency and lawful presence through a strict eligibility process, however, those seeking to establish residency and lawful presence through proper immigration channels cannot do so without verifying insurance status. As a result, individuals who otherwise could become lawfully-present immigrants and qualify for health insurance through WAHBE will be barred from both aims.

5. WAHBE is Washington State's health insurance exchange, or insurance marketplace. WAHBE was established in 2011 under the Patient Protection and Affordable Care Act (ACA) and state legislation, Wash. Rev. Code § 43.71. WAHBE is a self-sustaining,

DECLARATION OF PAM MACEWAN
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION --
NO. 3:19-CV-01743-SB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

public-private partnership governed by an 11-member bipartisan board. WAHBE operates Washington Healthplanfinder (www.wahealthplanfinder.org), the online portal used by one in four Washington residents to obtain Washington Apple Health (Medicaid) and commercial medical and dental insurance. About 1.5 million Washington residents use Washington Healthplanfinder to obtain Medicaid. Another 200,000 residents use Washington Healthplanfinder to obtain commercial medical and dental insurance in the individual market, which represents about 80% of the total individual market in Washington. About 65% of commercial Exchange enrollees receive premium tax credits.

6. Over 24,000 lawfully-present residents receive commercial coverage through Washington Healthplanfinder, and 84% of those lawfully-present residents receive premium tax credits. Lawfully-present enrollees represent 13% of the total residents receiving commercial coverage through Washington Healthplanfinder.

7. Since implementation of the ACA and formation of the Exchange, the uninsured rate in Washington State has declined from 13.9% in 2012, to 5.5% in 2017.

8. PP 9945 will introduce significant risks to the hard-won progress our state has made to reduce the uninsured rate and ensure all lawfully-present residents have access to affordable health care. It will harm visa-seeking immigrants and their families by precluding them from getting affordable, comprehensive coverage through WAHBE and instead steering them toward coverage that is not ACA-compliant. The Proclamation is therefore likely to harm the Exchange by reducing enrollment and undermining the stability of the commercial health insurance market. The Proclamation is also likely to harm the state by increasing uncompensated care -- for which the state will likely bear the cost -- and adversely impact the broader state economy.

9. The Proclamation contemplates that only certain types of commercial coverage, such as employer-sponsored plans, unsubsidized[1] Exchange marketplace plans, short-term limited

---

[1] "Unsubsidized" is not defined in the Proclamation.

DECLARATION OF PAM MACEWAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION -- NO. 3:19-CV-01743-SB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

duration insurance (STDLI) plans effective for at least 364 days, and catastrophic plans, among others, are qualifying types of coverage. Procuring unsubsidized marketplace plans presents practical challenges, if not the impossibility, of establishing proof of such coverage while abroad. Under federal law and regulations associated with the Affordable Care Act, an individual applying for commercial unsubsidized coverage through a Marketplace must establish residency in that state as well as lawful presence. 42 U.S.C. §18032(f), 45 C.F.R. § 155.305(a)(3). This contradicts the Proclamation's supposition that the individual could have already obtained such coverage or would be able to prove that it is forthcoming in order to obtain a visa to enter the country.

10. Because visa-seeking immigrants residing abroad cannot obtain health insurance through the Exchange, PP 9945 undermines the health of Washington's individual insurance market, potentially impacting the affordability of coverage for lawfully-present residents and citizens alike.

11. Lawfully-present enrollees are more likely to represent 'favorable' insurance risk, because they are often younger, healthier, or lower-than-average utilizers of health care services when compared to the general insured population. Several studies have concluded that immigrants are net contributors to both private coverage and Medicare, paying more in insurance premiums than they receive in benefits.[2] Reduced enrollment among lawfully-present enrollees will result in a sicker risk pool and could increase premium costs for all remaining residents enrolled in commercial insurance coverage through Washington Healthplanfinder. Increased premiums lead to higher rates of uninsurance, which in turn leads to increases in uncompensated care throughout the state.

12. It is also troubling that the Proclamation seeks to permit STLDI coverage, which does not comply with ACA consumer protections or those codified in Washington state law, to

---

[2] Zallman, L., Woolhandler, S., Touw, S., Himmelstein, D.U., and Finnegan K.E. (2018). Immigrants pay more in private insurance premiums than they receive in benefits. Health Affairs 2018 37:10, 1663-1668.

DECLARATION OF PAM MACEWAN
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION --
NO. 3:19-CV-01743-SB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

qualify as "acceptable" coverage. State law limits the maximum duration of STLDI plans offered in Washington to three months (Wash. Admin. Code 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). This creates a further catch-22 for visa applicants, as the Proclamation recognizes only STLDI plans that are "effective for a minimum of 364 days," but those plans do not, by law, exist in Washington State.

13. STLDI plans have been widely demonstrated to lack critical comprehensive coverage[3] and can be prohibitively expensive for individuals with pre-existing conditions.

14. PP 9945 will divert lawfully-present immigrants from meaningful, comprehensive coverage offered through the Exchange, toward companies that engage in medical under-writing, spend the majority of premium revenue on non-medical expenses, and are known to exclude core benefits like maternity, mental health and substance abuse disorder treatments, which threatens both the health and financial well-being of this population.

15. Diverting consumers to STLDI plans could lead directly to increased uncompensated care costs for the state when the medical care these customers need is not covered or exceeds their coverage limits, not to mention when these customers lose their coverage after only three months (importantly, loss of STLDI coverage is not a qualifying event, so it does not trigger a special enrollment period, which is the mechanism that allows customers to get Exchange commercial coverage mid-year). Without health insurance, residents are less likely to receive the health care services they need to stay healthy. Uninsured individuals have more absences from work and school, and they are more likely to delay preventive or chronic condition care more often, resulting in poorer health outcomes. Foregoing preventative care also results in more emergency room visits and other forms of uncompensated care.

16. General fear and confusion about these new public charge related rules, including

---

[3] A Kaiser Family Foundation analysis of STLDI sold in 2018 shows that 43% did not cover mental health services, 62% did not cover services for substance abuse treatment, and 71% did not cover outpatient prescription drugs. No plans covered maternity care. These policies had out-of-pocket maximums as high as $30,000 and lifetime limits on care ranging from $250,000 to $2 million. *See*: Karen Pollitz *et al*., Understanding Short-Term Limited Duration Insurance, Kaiser Family Foundation (Apr. 2018).

DECLARATION OF PAM MACEWAN
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION --
NO. 3:19-CV-01743-SB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

the Proclamation, could also cause lawfully-present residents, including those sponsoring impacted visa applicants, to drop their current health coverage or choose not to apply for coverage for themselves and their family members through the Exchange. WAHBE contracts with community-based assisters who provide in-person enrollment assistance to health insurance applicants. These assisters report that lawfully-present individuals and families with lawfully-present members are hesitant to apply for coverage or keep their current coverage. One assister organization reported that over 400 of the lawfully-present residents they work with have dropped benefits in 2019 due to public charge fears. From February 2019 to September 2019, Exchange data shows that over 2,000 lawfully-present enrollees have disenrolled from Exchange coverage.

17. The potential loss of Exchange enrollment due to the Proclamation and Emergency Notice also threatens the Exchange's own sustainability. Any loss of enrollees will lower WAHBE's revenues because WAHBE's operations are mostly financed through fees paid by carriers. Federal and state laws authorize user fees on carriers that offer plans on the Exchange. 45 C.F.R. §§ 155.160, 156.50; Wash. Rev. Code §§ 43.71.080, 48.14.020(2)(b), 48.14.0201(5)(b). Carriers are taxed two percent on the value of premiums paid and are charged a flat per-member per-month assessment for enrollees on the Exchange. These premium taxes and assessments are deposited in the state treasurer's health benefit exchange account. Wash. Rev. Code § 43.71.060(2).

18. For state fiscal year 2019 (July 2018 to June 2019), the Exchange revenues related to QHP premiums and assessments were $36.1 million, and projected revenues for state fiscal year 2020 (July 2019 to June 2020) are $31.2 million. Lawfully-present residents represent 13% of the total residents receiving commercial coverage through Washington Healthplanfinder. A 13% reduction in QHP enrollment could decrease state fiscal year 2020 revenues by approximately $4.1 million using 2019 premium tax rates. The exact amount of enrollment loss cannot be precisely calculated, but *any* decline in enrollment will reduce the Exchange revenue.

DECLARATION OF PAM MACEWAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION -- NO. 3:19-CV-01743-SB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470

Further, if premium tax funds are not available as a state Medicaid match, additional state general fund dollars would be needed to replace those premium tax funds to support the Exchange's costs for enrolling Medicaid applicants through the shared on-line portal.

19. In conclusion, the Proclamation and Emergency Notice will likely place many visa applicants in an untenable position in which they may be unable to access *any* coverage sufficient to satisfy the Proclamation's requirements, while any authorized coverage they are able to access will likely be deficient, leading to increases in uncompensated care. The Proclamation will also harm access to healthcare for the lawfully-present population, the stability of the Washington health insurance market, and the Exchange's financial sustainability.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on November 7, 2019, in Olympia, Washington.

*[signature: Pam MacEwan]*

PAM MACEWAN

Chief Executive Officer

Washington Health Benefit Exchange

DECLARATION OF PAM MACEWAN
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION --
NO. 3:19-CV-01743-SB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Tumwater, WA 98501
(360) 709-6470