JOSEPH H. HUNT
Assistant Attorney General
Civil Division
BILLY J. WILLIAMS
United States Attorney
AUGUST E. FLENTJE
Special Counsel
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
BRIAN C. WARD
Senior Litigation Counsel
COURTNEY E. MORAN
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4587
courtney.e.moran@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA, <br><br> Defendants. | CASE NO. 3:19-cv-01743-SI <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ADMINISTRATIVE RECORD** |

## I.      INTRODUCTION

Defendants submit this opposition to Plaintiffs' motion to compel Defendants to produce an administrative record for Presidential Proclamation No. 9945, "Presidential Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System" ("the Proclamation" or "Proclamation 9945"). Plaintiffs' motion conflates two distinct challenges—one to the Proclamation itself and one to the "implementation" of the Proclamation—but neither requires production of an administrative record under the Administrative Procedure Act ("APA").

First, Plaintiffs challenge the Proclamation and its anticipated application by consular officers. But a Presidential Proclamation does not have an administrative record under the APA because the President is not an agency subject to the APA. Further, the Proclamation was issued under 8 U.S.C. § 1182(f) and establishes inadmissibility for those who fall within its parameters. Accordingly, the Proclamation is "self-executing" in that consular officers are charged with applying it, just as they apply any other statutory ground of inadmissibility. Consular officers must apply the law whether or not additional guidance is issued by the State Department. The only allowable review of a Proclamation issued under § 1182(f) would be to determine if it is facially legitimate and bona fide, not a challenge under the APA. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018).

Second, Plaintiffs challenge actions taken by the State Department to notify the public about the Proclamation and to assist consular officers in applying the Proclamation to immigrant visa applicants. But none of the State Department's actions cited by Plaintiffs constitute "final agency action" because they do not alter legal rights and obligations, and thus the actions are not reviewable under the APA nor subject to its record production requirements.

With respect to the State Department website announcement and the email notification to an immigrant visa applicant, these communications to the public were not final agency actions, but rather administrative steps to ensure that immigrant visa applicants were aware of the new requirements set out in the Proclamation. Instead, a consular official's adjudication of an immigrant visa application would be the relevant agency action. But that action has not yet occurred for the Plaintiffs here, and in any event that adjudication would not be subject to judicial review under the doctrine of consular nonreviewability. That doctrine cannot be evaded by initiating litigation prior to a consular officer's visa adjudication or seeking to challenge guidance before it has been followed in connection with a specific visa application.

Furthermore, with respect to the *Notice of Information Collection Under OMB Emergency Review: Immigrant Health Insurance Coverage* that was published in the Federal Register on October 30, 2019, the instant action is not a challenge to that notice under the Paperwork Reduction Act or its implementing regulations at 5 C.F.R. part 1320. The Paperwork Reduction Act requires the United States Office of Management and Budget ("OMB") to adjudicate all agency requests for collections of information from the public. It is that action—here, the November 1, 2019 approval of the State Department's request for emergency approval of an information collection under 5 C.F.R. § 1320.13—that was completed under the Paperwork Reduction Act, and OMB would compile the record for that action, not the State Department. And the substance of the Proclamation or its implementation is not challengeable in an action under the Paperwork Reduction Act.

Finally, a record is premature at this time. In a case brought under the Administrative Procedure Act, the record is normally provided in conjunction with the answer or a motion for summary judgment. This case has not yet reached those stages of litigation.

Accordingly, Defendants respectfully request that the court deny Plaintiffs' motion to compel Defendants to produce an administrative record for Presidential Proclamation No. 9945.

## II.    STATEMENT OF FACTS

### A.    Presidential Proclamation 9945

This case arises out of Presidential Proclamation 9945, which President Trump signed on October 4, 2019. 84 Fed. Reg. 53991 (Oct. 9, 2019). The President issued Proclamation 9945 to address the "substantial costs" that U.S. healthcare providers and taxpayers bear "in paying for medical expenses incurred by people who lack health insurance or the ability to pay for their healthcare." *Id.* Hospitals and other healthcare providers "often administer care to the uninsured without any hope of receiving reimbursement from them," and these costs are passed on to the American people in the form of higher taxes, higher premiums, and higher fees for medical services. *Id.* Uncompensated healthcare costs have exceeded $35 billion in each of the last 10 years, a burden that can drive hospitals into insolvency. *Id.* The uninsured also strain federal and state government budgets through reliance on publicly funded programs, which are ultimately funded by taxpayers, and by using emergency rooms to seek remedies for a variety of non-emergency conditions. *Id.*

The challenges caused by uncompensated healthcare are exacerbated by admitting to the United States thousands of immigrants annually who have not demonstrated any ability to pay for their healthcare costs. 84 Fed. Reg. at 53991. Notably, "data show that lawful immigrants are about three times more likely than United States citizens to lack health insurance." *Id.* Continuing to allow entry into the United States of "certain immigrants who lack health insurance or the demonstrated ability to pay for their healthcare" would be detrimental to the interests of the United States, including protecting and addressing the challenges facing our

healthcare system and protecting American taxpayers from the burden of uncompensated healthcare. *Id.*

To address these challenges while still continuing the United States' "long history of welcoming immigrants who come lawfully in search of brighter futures," President Trump issued Proclamation 9945 under 8 U.S.C. §§ 1182(f), 1185(a)(1), and suspended, with certain exceptions, entry into the United States as immigrants of aliens who will financially burden the United States healthcare system. 84 Fed. Reg. at 53991-92. This includes aliens who cannot satisfy a consular officer at a visa interview that they will be covered by qualifying health insurance, as set out in the Proclamation, within 30 days of entering the United States, or that they will have "the financial resources to pay for reasonably foreseeable medical costs." *Id.*

Proclamation 9945 sets out a range of possible healthcare plans that immigrant visa applicants can use to satisfy its requirements. 84 Fed. Reg. at 53992. The Proclamation also provides that the Secretary of State "may establish standards and procedures governing such determinations." 84 Fed. Reg. at 53993. While the Proclamation does not set specific requirements for the format of any guidance relating to these standards and procedures, it notes that a consular officer's review of an immigrant visa applicant's eligibility under the Proclamation "is separate and independent from the review and determination required by other statutes, regulations, or proclamations in determining the admissibility of an alien." *Id.* Proclamation 9945 further provides that it "shall be implemented consistent with applicable law," and that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 84 Fed. Reg. 53993-94.

B.    **Procedural History**

Defendants routinely provide information to the public describing various immigration policies and procedures that immigrant visa applicants must follow. One way the State Department provides such information is to post materials on its website. Prior to the date the Proclamation was set to go into effect, the State Department posted a notification regarding the Proclamation on its website at *https://travel.state.gov/healthcare*. This notification on the State Department's website quoted from the Proclamation and referenced other existing requirements for immigrant visa interviews and adjudications.

On October 30, 2019, the State Department published in the *Federal Register* a notice of request for emergency review and approval by OMB and public comment. 84 Fed. Reg. 58199 ("Notice of Information Collection Under OMB Emergency Review: Immigrant Health Insurance Coverage"). The document first appeared on the *Federal Register* website at 8:45 a.m. ET on October 29, 2019, in an unpublished format for public inspection. The purpose of this request to OMB was to comply with the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq., which requires an agency to obtain OMB approval to ask standardized questions of 10 or more members of the public within a 12-month period, *id.* § 3502(3) (defining "collection of information"). The State Department requested OMB approval for consular officers to ask immigrant visa applicants covered by Proclamation 9945 "whether they will be covered by health insurance in the United States within 30 days of entry," and "if so, for details relating to such insurance." 84 Fed. Reg. 58199. Pursuant to 5 C.F.R. § 1320.13, the State Department requested emergency review of the information collection so that it could satisfy the Paperwork Reduction Act before the effective date of the Proclamation. *See* OMB Office of Information and Regulatory Affairs Information Collection Request number 201910-1405-001, https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201910-1405-001 (accessed Nov. 13,

2019). On November 1, 2019, in "accordance with the Paperwork Reduction Act," OMB

approved the information collection. *See* Notice of OMB Action,

https://www.reginfo.gov/public/do/DownloadNOA?requestID=302106 (accessed Nov. 13,

2019).

The following day, on November 2, 2019, this Court "temporarily restrained and

enjoined" Defendants "from taking any action to implement or enforce Presidential Proclamation

No. 9945." ECF No. 33, Temporary Restraining Order, at 18.

## III.     ARGUMENT

### A.     There is no administrative record under the APA for a Presidential Proclamation because the President is not an agency.

The APA provides a cause of action for a "person suffering a legal wrong because of

agency action." 5 U.S.C. § 702. But it is well-established that the President is not an agency and

his actions are not subject to APA review. *See Franklin v. Massachusetts*, 505 U.S. 788, 801

(1992) (holding that Congress did not expressly allow for review of the President's actions in the

APA and thus "his actions are not subject to its requirements"); *East Bay Sanctuary Covenant v.

Trump*, 932 F.3d 742, 770 (9th Cir. 2018) (stating that the President is not an agency and his

actions are not subject to APA requirements). An action by the President in the form of a

Proclamation issued under 8 U.S.C. § 1182(f) is not agency action that is reviewable under the

APA. *See East Bay Sanctuary Covenant*, 932 F.3d at 770. Plaintiffs appear to challenge the

effect they speculate Proclamation 9945 will have on immigrant visa adjudications by consular

officers, but because those adjudications are governed by the Proclamation—a Presidential

action—they too may not be challenged under the APA. *See id*.

Contrary to Plaintiffs' assertions, *see* Motion at 2-3, the Proclamation is "self-executing,"

as consular officers are charged with applying the Proclamation just as they apply the many

statutory grounds of inadmissibility. *See* 8 U.S.C. § 1182(a). The Proclamation permits, but does not require, the Secretary of State to establish standards and procedures governing consular determinations on whether an alien has satisfied the requirements of Proclamation 9945. 84 Fed. Reg. 53993, § 3. It contains no mandatory language requiring the Secretary to issue regulations or take any other action before the Proclamation takes effect. *Id*. When the President suspends entry of certain aliens under § 1182(f) and § 1185(a)(1) in this manner, the suspension of entry restrictions go into effect on the date set out in the Proclamation, and the State Department does not need to take additional steps to effectuate the restrictions. Thus, if consular officers were to ask immigrant visa applicants questions to determine their eligibility for entry under the Proclamation—as the officers would do during the consular interviews for any other immigrant visa eligibility requirement, *see* 8 U.S.C. § 1202(h); 22 C.F.R. §§ 42.62, 42.65—they merely would be collecting the information necessary to determine whether an immigrant visa applicant fits the class of aliens identified by the President as subject to an entry suspension that already has taken place.

Accordingly, there is no final agency action by the State Department that could be subject to review under the APA. The only action and source of law here is the Presidential Proclamation issued pursuant to § 1182(f) and § 1185(a)(1). Of the many proclamations suspending entry of aliens abroad that were issued by past Presidents, *see generally Trump v. Hawaii*, 138 S. Ct. 2392, 2409-15 (2018), Plaintiffs have not identified a single case where any court found that a Presidential entry-suspension order is subject to production of an administrative record under the APA. *See generally* Motion. Accordingly, there is no APA administrative record for Proclamation 9945.

**B.    The State Department has not taken any final agency action that could be reviewed under the APA.**

It would not be appropriate to require the production of an administrative record of any of the State Department actions cited by Plaintiffs because these actions do not constitute final agency actions under the APA.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). "[T]wo conditions . . . generally must be satisfied for agency action to be 'final' under the APA. 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Hawkes Co.*, 136 S. Ct. at 1813 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

First, neither the "Announcement" on the State Department's website nor the email message to a visa applicant, *see* Motion at 4-6, constitute a final agency action. The Announcement was a notice to the public of the Proclamation, and the email message to the visa applicant was a notice to a specific applicant of the Proclamation. These notifications do not alter legal rights and obligations and therefore are not final agency actions. A consular officer's adjudication of an immigrant visa application would be the relevant agency action, but that action has not yet occurred for the Plaintiffs here, and in any event, that adjudication would not be subject to judicial review pursuant to the doctrine of consular nonreviewability. That doctrine cannot be evaded by initiating litigation prior to the issuance of a visa adjudication or seeking to challenge guidance before it has been followed in connection with a specific visa application.

Because the website posting and email do not have any independent legal effect, they do not qualify as "final agency actions" under the APA and therefore are not reviewable under the APA.

Further, the Proclamation leaves it entirely to the discretion of the Secretary of State to decide whether to set out additional guidelines on how the Proclamation should be implemented. 84 Fed. Reg. 53993, § 3.[1] Any agency guidance the State Department might issue related to the Proclamation would not give rise to any "legal consequences"—it would only assist with the individual consular officer's determination rendered pursuant to the Proclamation. *See Bennett*, 520 U.S. at 177-78. If the State Department issued guidance for consular officers, those officers would still be required to make individual, fact-specific determinations in individual cases, so any guidance would simply inform the deliberative process that precedes a consular officer's final adjudication of a visa application. Moreover, the Ninth Circuit has held that when an agency adopts a "general statement of policy" to guide adjudicators in making decisions on a case-by-case basis, such guidance documents "are exempted from the notice-and-comment requirement." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019). Accordingly, no final agency action has occurred.[2]

---

[1] The agency functions Plaintiffs identify in footnote 4 of their brief are all either tangential to the issues in this case or not required by the Proclamation. *See* § 1(ix) (Secretary of Health and Human Services may "determine[]" that another type of health plan "provides adequate coverage"); § 2(b)(vii) (exempting aliens who "would further important . . . law enforcement objectives" as determined by Secretary of State based on a recommendation of the Attorney General); § 2(b)(viii) ("national interest" exception); § 4 (providing for a report on the "continued necessity of and any adjustments that may be warranted" to the proclamation).

[2] The State Department issued a cable to consular officers to be prepared for new Foreign Affairs Manual ("FAM") amendments providing guidance on implementing the Proclamation once the FAM was finalized. That cable, however, was not independently operative, but rather dependent and contingent upon the final issuance of the FAM update, which was halted by this Court's injunction. In any event, the cable did not reflect a final agency action. Nonetheless, Defendants intend to produce the cable in conjunction with their opposition to Plaintiffs' motion for a preliminary injunction.

The Supreme Court has recognized two types of agency rules: "substantive" or "legislative" rules that shift legal rights and duties, and "interpretive" or "interpretative" rules that merely clarify or explain the operation of existing rules. *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203–04 (2015); *see also Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018) (explaining that interpretive rules "simply state what the administrative agency thinks the statute means" or provide "clarification or explanation of an *existing statute or rule*" (citation omitted)). Interpretive rules, because they do not determine rights or obligations, do not qualify as final agency action and therefore are not subject to judicial review under the APA or, in turn, the APA's record production requirements. *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (recognizing that "interpretative rules or statements of policy generally do not qualify" as final agency action and are not subject to judicial review under the APA "because they are not finally determinative of . . . issues or rights").

Even if Plaintiffs had identified a final agency action, the doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the authority to decide an application for a visa made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), (g). A "'consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review.'" *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) (quoting *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)). This rule is rooted in "'the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government.'" *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (quoting *Ventura-Escamilla v. Immigration & Naturalization Serv.*, 647 F.2d 28, 30 (9th Cir. 1981)). Judicial intervention in decisions to exclude aliens "has been restricted to those matters the review of which has been authorized by

treaty or by statute, or is required by the paramount law of the Constitution." *Ventura-Escamilla*, 647 F.2d at 30 (internal quotation omitted). "[W]here Congress entrusts discretionary visa-processing . . . in a consular officer . . . the courts cannot substitute their judgments for those of the Executive." *Allen*, 896 F.3d 1094, 1105 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972)).

Thus, in *Allen*, the Ninth Circuit determined that because "review is not required by some other provision of law, such as the Constitution, the APA, or the INA, the long-standing rule foreclosing review of the merits of consular visa decisions is precisely the kind of" limitation "that forms an exception to the APA's cause of action and review provisions." *Allen*, 896 F.3d at 1105. The APA thus provides no avenue for review of consular officers' visa adjudications, including visas for Plaintiffs' family members. *Id.* at 1108 (citing *Saavedra Bruno*, 197 F.3d at 1164). For the same reason, it would not be appropriate to produce a record of those consular determinations. Yet, Plaintiffs request review of how these consular officers will apply the terms of the Proclamation and seek a record to evaluate those decisions that ultimately are not reviewable. *See* Motion at 7-8.

C.    **OMB's approval of the State Department's request to collect information may be a final agency action subject to APA review only pursuant to the Paperwork Reduction Act.**

Plaintiffs also argue that the State Department's Notice of Information Collection is a final agency action subject to APA review. *See* Motion at 5. But the purpose of this notice was to comply with the Paperwork Reduction Act before consular officers were to begin asking immigrant visa applicants covered by Proclamation 9945 questions relating to Proclamation during visa interviews. 84 Fed. Reg. 58199. The Paperwork Reduction Act provides that any federal agency wishing to collect information in specific ways from the public must follow a set of procedures to obtain approval for that information collection from OMB. *See* 44 U.S.C.

§§ 3506(c), 3507(a)(1). The Paperwork Reduction Act "does not authorize a private right of action" against the government. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999). Persons subject to collections of information may not use the Act to launch collateral attacks on agency rules or policies; instead, the Act "authorizes its protections to be used as a defense" when an agency seeks to apply an allegedly invalid collection of information. *Sutton*, 192 F.3d at 844.

Here, the State Department's Notice of Information Collection required by the Paperwork Reduction Act does not implement the Proclamation or provide any guidance to consular officers on how to follow the Proclamation. Rather, the Notice of Information Collection is required by the Paperwork Reduction Act to advance the separate purpose of that Act, which is, for example, to encourage federal agencies to "minimize the paperwork burden" on individuals or groups of individuals and promote efficient and cost-effective information management policies and practices. *See generally* 44 U.S.C. § 3501; *United States v. Hatch*, 919 F.2d 1394, 1396 (9th Cir. 1990). The only possible final agency action here is OMB's approval of the information collection. But Plaintiffs have not sued OMB, the agency that made that decision, nor are they bringing a challenge under the Paperwork Reduction Act.[3]  In any event, the Paperwork Reduction Act record is publicly available at

https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201910-1405-001# (accessed Nov. 13, 2019).

---

[3] As the Court correctly noted during the hearing on Plaintiffs' motion for a temporary restraining order, Plaintiffs' argument about the Notice of Information Collection is merely an indirect attempt to seek APA review of the Proclamation itself through an unrelated action by a separate agency: "I'm tending to agree with the defendants that the administrative action in the Notice for Information Collection may be a tail wagging the dog; that the real challenge that you are making is to the October 4th Proclamation." ECF No. 34, Hearing Tr. 39:13-17.

### D.  It is premature to require production of a record.

It is premature to require the production of an administrative record at this time. Normally, the agency record is provided in conjunction with answering the complaint. This Court does not have a local rule governing when an administrative record would be filed, but fellow district courts provide for filing a record in conjunction with an answer. *See*, *e.g.*, N.D. Cal. Local Rule 16-5 (in cases seeking "District Court review on an administrative record, the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint"). This makes sense, given that a motion to dismiss as a matter of law must be made prior to making a factual answer to a complaint. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed"); *see also* Fed. R. Civ. P. 26(a)(1)(B) (party exempt from mandatory disclosures in "an action for review on an administrative record"). Nor have Plaintiffs made any special "good cause" showing to support early production of the record. *Cf. Am. LegalNet., Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (discussing good cause standard in the context of early discovery); *Gale v. O'Donohue*, No. 17-cv-12172, 2018 WL 618739, at *5 (E.D. Mich. Jan. 30, 2018) (declining to order expedited discovery simply because plaintiff had filed a complaint and an accompanying request for injunctive relief), *aff'd* 751 F. App'x 876 (6th Cir. 2018).

Importantly, while a preliminary injunction motion is pending here, that motion seeks to halt operation of a Presidential Proclamation. But the Proclamation does not have an APA record and any other "record" would not assist the Court in assessing the legality of the Proclamation. In any event, as the Court recognized during the hearing on Plaintiffs' motion for a temporary

restraining order, it would not be viable to produce a record in advance of the hearing on Plaintiffs' motion for a preliminary injunction.[4]

## IV.    CONCLUSION

Given that there is no administrative record under the APA for Presidential Proclamations, the lack of a final agency action in this matter, and the parameters set forth by the doctrine of consular nonreviewability, Plaintiffs' motion to compel production of an administrative record under the APA is inappropriate and should be denied.

/

/

/

/

/

/

/

/

/

/

/

/

/

---

[4] "THE COURT: The one thing I would like to hear everybody's view on is what do we do about an administrative record? I don't know how it can be done in 28 days. I'm not quite sure that we need an administrative record for a portion of plaintiffs' position challenging the Proclamation . . . ." ECF No. 34, Hearing Tr. 39:13-17.

DATED: November 13, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General
                                            Civil Division

                                            BILLY J. WILLIAMS
                                            United States Attorney

                                            AUGUST E. FLENTJE
                                            Special Counsel
                                            Civil Division

                                            WILLIAM C. PEACHEY
                                            Director
                                            Office of Immigration Litigation
                                            District Court Section

                                            BRIAN C. WARD
                                            Senior Litigation Counsel

                                            */s/ Courtney E. Moran*
                                            COURTNEY E. MORAN
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, D.C. 20044
                                            (202) 514-4587
                                            courtney.e.moran@usdoj.gov

                                            *Attorneys for Defendants*