# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN DOE #1**; *et al.*, | Case No. 3:19-cv-1743-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **DONALD TRUMP**, *et al.*, | |
| Defendants. | |

Stephen Manning, Nadia Dahab, INNOVATION LAW LAB, 333 SW Fifth Avenue #200, Portland, OR 97204; Karen C. Tumlin and Esther H. Sung, JUSTICE ACTION CENTER, PO Box 27280, Los Angeles, CA 90027; Scott D. Stein and Naomi Igra, SIDLEY AUSTIN LLP, One South Dearborn Street, Chicago IL 60603. Of Attorneys for Plaintiffs.

Joseph H. Hunt, Assistant Attorney General, Billy J. Williams, United States Attorney for the District of Oregon, August E. Flentje, Special Counsel, William C. Peachey, Director, Office of Immigration Litigation, Brian C. Ward, Senior Litigation Counsel, Courtney E. Moran, Trial Attorney, U.S. DEPARTMENT OF JUSTICE, PO Box 868, Ben Franklin Station, Washington D.C., 20044. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

On October 4, 2019, the President of the United States issued Proclamation No. 9945, titled "Presidential Proclamation on the Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System" (the "Proclamation"). President Donald J. Trump directed that the Proclamation become effective at 12:01 a.m. eastern daylight

time on November 3, 2019. On November 2, 2019, the Court entered a Temporary Restraining Order, temporarily restraining and enjoining Defendants from taking any action to implement or enforce the Proclamation, and setting a preliminary injunction hearing for November 22, 2019.

Before the Court is Plaintiffs' motion to compel the administrative record. Plaintiffs argue that Defendants U.S. Department of Homeland Security, U.S. Department of Health and Human Services, and U.S. Department of State ("State Department") (collectively, "Agency Defendants") have engaged in final agency actions to implement the Proclamation, such actions are reviewable under the Administrative Procedure Act ("APA"), and the APA and Supreme Court precedent require the full administrative record for the Court to engage in such a review. Defendants respond that the Proclamation is self-executing and does not require agency action, the agencies have not engaged in any final, reviewable, agency action related to the Proclamation, and it is premature to require an administrative record before an answer is filed. For the following reasons, Plaintiffs' motion is granted in part.

**A. Standards**

Under the APA, a court must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2). The APA applies to "agency" action. Because the President is not an agency, a court does not have authority under § 706 to review Presidential actions such as the Proclamation. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018). A court may, however, review under the APA agency actions that implement or incorporate a Presidential proclamation. *Id.* As the Ninth Circuit explained:

> However, we may review the substantive validity of the Rule together with the Proclamation. Our power to review "agency action" under § 706 "includes the whole or part of an agency rule,

> order, license, sanction, relief, or the equivalent . . . thereof." 5
> U.S.C. § 551(13). The Organizations have challenged the Rule as it
> incorporates the President's Proclamation. The Rule does not itself
> provide the criteria for determining when aliens who have entered
> the United States from Mexico will be deemed ineligible for
> asylum because it is contingent on something else—the issuance of
> a presidential proclamation. By itself, the Rule does not affect the
> eligibility of any alien who wishes to apply for asylum. But the
> Rule and the Proclamation together create an operative rule of
> decision for asylum eligibility. It is the substantive rule of decision,
> not the Rule itself, that the Organizations have challenged under
> the APA, and insofar as DOJ and DHS have incorporated the
> Proclamation by reference into the Rule, we may consider the
> validity of the agency's proposed action, including its "rule . . . or
> the equivalent." *Id.*; *see also Chamber of Commerce of the U.S. v.
> Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) (explaining that
> agency regulations that implement an executive order are
> reviewable under the APA). This is consistent with the principle
> that a "'final' agency action" reviewable under the APA is one that
> "determines 'rights or obligations from which legal consequences
> will flow' and marks the 'consummation' of the agency's
> decisionmaking process." *Hyatt v. Office of Mgmt. & Budget*, 908
> F.3d 1165, 1172 (9th Cir. 2018) (internal alterations omitted)
> (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

*Id.* at 770-71.

**B.  Whether the Proclamation Was to be Implemented Without Agency Action**

Defendants argue that the Proclamation is self-executing and requires no agency action. Defendants assert that it would have been implemented on November 3, 2019, absent the Court's Temporary Restraining Order, without agency action.

The Proclamation permits the Secretary of State to establish standards and procedures governing consular determinations on whether a visa applicant has satisfied the requirements of the Proclamation, but does not require the Secretary to do so. Defendants assert that when the President suspends entry of certain aliens under 8 U.S.C. §§ 1182(f) and 1185(a)(1) in such a manner, the suspension restrictions go into effect on the date set in the Proclamation and no action is needed by the State Department to effectuate the restrictions. Consular officers would

ask questions of visa applicants the same as with any other statutory visa eligibility requirement, collecting information required to determine whether the applicant fits the class of persons identified by the President as subject to an entry suspension.

The Proclamation includes the following restriction:

> (a) The entry into the United States as immigrants of aliens who will financially burden the United States healthcare system is hereby suspended and limited subject to section 2 of this proclamation. An alien will financially burden the United States healthcare system unless the alien will be covered by approved health insurance, as defined in subsection (b) of this section, within 30 days of the alien's entry into the United States, or unless the alien possesses the financial resources to pay for reasonably foreseeable medical costs.

ECF 45-1 at 3. The Proclamation exempts from the Section 1(a) restriction, among others, "any alien seeking to enter the United States pursuant to an IR-5 visa, provided that the alien or the alien's sponsor demonstrates to the satisfaction of the consular officer that the alien's healthcare will not impose a substantial burden on the United States healthcare system" and "any alien whose entry would further important United States law enforcement objectives, as determined by the Secretary of State or his designee based on a recommendation of the Attorney General or his designee." *Id.* at 5.

The Proclamation does not define "reasonably foreseeable medical costs." It does not provide guidance for what constitutes "financial resources" sufficient to pay for those reasonably foreseeable medical costs (*e.g.*, cash, real property, personal property, access to family resources, employment sufficient to make payments, ability to obtain a loan), how resources would be calculated, whether living expenses would be calculated and then resources available in addition to living expenses would be calculated to determine if resources would be available for healthcare costs, and so forth. The Proclamation does not explain if the "substantial burden on the United States healthcare system" showing required for the exception for IR-5 visa applicants

is the same or different from the definition of "financially burden the United States Healthcare system" as set out in Section 1(a).[1] The Proclamation also does not explain what it means to provide "further important United States law enforcement objectives" to be eligible for that exception.

There are numerous vague and undefined terms and requirements in the Proclamation. Defendants do not explain how consular officers could have implemented the Proclamation without agency action providing instruction on the meaning of the vague terms contained in the Proclamation. Additionally, the "Notice of Information Collection Under OMB Emergency Review: Immigrant Health Insurance Coverage" (the "Emergency Notice"), published in the *Federal Register* on October 30, 2019, further describes the "methodology" that the State Department intends to use to implement the Proclamation. This includes having consular officers "verbally ask immigrant visa applicants" if they will be covered by health insurance within 30 days of entry into the United States and details regarding that insurance. ECF 45-26 at 2. It also provides the State Department's definition of "reasonably foreseeable medical expenses" as "those expenses related to existing medical conditions, relating to health issues existing at the time of visa adjudication." *Id.* at 3. This shows that the State Department had taken action to create a methodology and define reasonably foreseeable medical expenses, which was undefined in the Proclamation.

Defendants additionally note that the State Department had issued a cable to consular officers to be prepared for amendments to the Foreign Affairs Manual "providing guidance on

---

[1] If it is the same, the exception would be illusory. If it is different, there is no guidance as to what "substantial burden" means in this context.

implementing the Proclamation."[2] Sending the cable and preparing amendments to the Foreign Affairs Manual are actions taken by the State Department to implement the Proclamation.

Defendants generally argue that proclamations under § 1182(f) are self-executing without agency action and that Plaintiffs provide no case in which an administrative record was lodged. In their reply, Plaintiffs assert that a previous Presidential Proclamation under § 1182(f), Proclamation No. 9645, the "travel ban" or "Muslim ban," which on its face would appear to more easily be implemented by consular officers without specific agency action (applicants from certain countries were subject to certain restrictions), required significant agency action to implement. *See Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1020 (N.D. Cal. 2019) ("The State Department created rules and procedures for the waiver program, as detailed in plaintiffs' exhibits, and recognized the materials it promulgated as such. *See, e.g.*, Dkt. No. 68 at 9:5-7 (State Department's online postings were its "outward facing guidance" for waivers)."). Plaintiffs note that when the waiver process under Proclamation No. 9645 was challenged, the administrative record of the agency's actions to implement the travel ban was lodged. *See Emami*, Case No. 3:18-cv-01587 (N.D. Cal) and *Pars v. Pompeo*, Case No. 3:18-cv-07818-JD (N.D. Cal.). The administrative record included State Department cables and amendments to the Foreign Affairs Manual, among other things, which provided definitions of eligibility criteria and other instructions and guidance for consular officers to implement Proclamation No. 9645. These are the same types of agency actions that Defendants note that the State Department has taken to implement the Proclamation.

---

[2] Defendants note that this cable will be an exhibit to their response to Plaintiffs' motion for Preliminary Injunction, and thus Plaintiffs will have a copy.

For purposes of resolving the pending motion, the Court is not persuaded by Defendants' argument that the Proclamation was to be implemented without agency action. The State Department engaged in agency action to implement the Proclamation, including providing methodology and definitions that the Proclamation did not contain.

**C. Whether the Agency Defendants Engaged in Final Agency Action**

Plaintiffs assert generally that the Agency Defendants engaged in final agency action. Plaintiffs, however, only discuss the agency action of the State Department. There is no evidence before the Court of agency action by the Department of Homeland Security or the Department of Health and Human Services. Plaintiffs state generally that the State Department's actions "demonstrate that the Defendant agencies and government officials had made decisions on how to implement the Proclamation and had set those decisions in motion." Plaintiffs appear to argue that if the State Department has engaged in conduct showing that it has made final implementation decisions, then the other agencies must similarly have made final implementation decisions. This is not persuasive, and Plaintiffs' motion is denied with respect to the Department of Homeland Security and the Department of Health and Human Services.

With regard to the State Department, to resolve Plaintiffs' APA claim the Court must determine whether that agency has engaged in final agency action. "To determine when an agency action is final, [courts] have looked to, among other things, whether its impact is sufficiently direct and immediate and has a direct effect on day-to-day business." *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992) (quotation marks and alteration omitted) (alteration added). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.*; *see also U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (noting "two conditions that generally must be satisfied for agency action to be 'final' under the APA. First, the action

must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." (quotation marks omitted)). Courts "have long taken" a "pragmatic approach" to finality. *Hawkes*, 136 S. Ct. at 1815. In so doing, courts can look to the "practical effects" of agency action, and "agency action can be final even if its legal or practical effects are contingent on a future event." *Gill v. United States Dep't of Justice*, 913 F.3d 1179, 1185 (9th Cir. 2019).

The Court rejects Defendants' argument that there could not be final agency action because the Proclamation left to the discretion of the Secretary of State whether to set additional guidelines. Regardless of whether the State Department was *required* to engage in any conduct to implement the Proclamation, it is the conduct in which the State Department actually engaged that is potentially subject to the APA. Agencies are routinely given discretion to engage in conduct, but if they choose to engage in conduct covered by the APA, that conduct is subject to review.

At this stage of the litigation, it appears that the State Department's decisionmaking with respect to implementing the Proclamation is direct and immediate and has a direct effect on day-to-day business. These effects are demonstrated by the cable sent to consular officers, the amendments to the Foreign Affairs Manual that were going to be implemented absent this Court's temporary injunction, the notice published in the *Federal Register*, and the email sent to immigration attorneys instructing them about the new requirements and effect on their clients. The State Department's decision with respect to what constitutes "reasonably foreseeable medical expenses," what would be a "substantial burden" for the IR-5 visa applicants, what it would mean to "further important United States law enforcement objectives," and the like will

directly affect the parties and their rights and legal consequences will flow from these decisions. These decisions affect visa applicants' ability to either obtain a visa under the Proclamation or be subject to an exemption from the Proclamation.

Defendants, and specifically the State Department, have repeatedly represented that they were prepared to implement the Proclamation on November 3, 2019. This supports the conclusion that the State Department's decisionmaking was final before that date. In this litigation, however, Defendants contend that the State Department has not engaged in any final agency action. The Court is unable to determine whether, for example, the amendments to the Foreign Affairs Manual were fully drafted or only partially drafted. Defendants note that the "final issuance" of the revised Foreign Affairs Manual was "halted" because of the temporary injunction, but that does not answer the question of whether the amendments had already been finalized. Without production of the administrative record, it will be difficult conclusively to determine whether the agency action was final. *See, e.g.*, *Friends of the River v. U.S. Army Corps of Engineers*, 870 F. Supp. 2d 966, 976-77 (E.D. Cal. 2012) ("Determining whether the ETL, PGL, and White Paper are final agency actions in the instant case requires a review of the full administrative record because, as discussed supra, 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of [the] action.' *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004). Therefore, because the Court requires the entire administrative record, it cannot, at this juncture, determine whether there has been final agency action." (alteration in original)). Thus, production of the administrative record is appropriate in this case.

**D. Whether it is Premature to Order Production of the Administrative Record**

Defendants argue that the administrative record should not be ordered until after Defendants have filed their answer. The Supreme Court, however, has noted that the

administrative record may be necessary in the context of a preliminary injunction. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). As explained by the D.C. Circuit Court of Appeals:

> As *Overton Park* tells us, judicial review nevertheless must proceed, but not by trial *de novo*. The review must "be based on the full administrative record that was before the [FDA] at the time [it] made its decision." 401 U.S. at 420. *Overton Park* arose on a motion for a preliminary injunction (to halt construction of a highway); this case too comes to us upon the denial of a preliminary injunction. Here, as in *Overton Park*, the administrative record was never filed, despite APA § 706's direction that judicial review shall be performed by "review[ing] the whole record or those parts of it cited by a party. . . ." 5 U.S.C. § 706; *see Overton Park*, 401 U.S. at 419. Rather than calling for the administrative record, the district court appears to have relied on the parties' written or oral representations to discern the basis on which the FDA acted. Surely that was not sufficient. For all we know, the attorneys were merely speculating. In any event, the Supreme Court in *Overton Park* held that even sworn affidavits filed during the litigation would not suffice to explain the action of the Secretary of Transportation. *Id.* at 419.
>
> As in *Overton Park*, we leave to the district court the determination of how best to proceed on remand in light of what the administrative record reveals. We hold only that the court, before assessing American Bioscience's probability of success on the merits, should have required the FDA to file the administrative record and should have determined the grounds on which the FDA granted Baker Norton's application.

*Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (alterations in original) (citations omitted).

Plaintiffs request that the administrative record be produced before Plaintiffs' deadline to file their reply, November 19, 2019. The preliminary injunction hearing is November 22, 2019. The Court recognizes the difficulties in preparing the full administrative record in the time requested. The Court also notes that a primary argument raised by Plaintiffs is the direct challenge to the Proclamation, which does not involve the requested administrative record.

Further, some of the challenges to the Agency Defendants' implementation of the Proclamation also do not rely on the requested administrative record. What is most important at this stage of the litigation is the jurisdictional portion of the record, relating to possible final agency action, and the State Department's creation of its "methodology" and definitions such as "reasonably foreseeable conduct," which relate to Plaintiffs' allegations of arbitrary and capricious conduct.

Defendants shall produce, before noon November 20, 2019, documents from the State Department's administrative record relating to the amendments to the Foreign Affairs Manual and the State Department's "methodology" and other definitions implementing the Proclamation. If Plaintiffs believe that additional documents from the administrative record are necessary at this stage of the litigation, Plaintiffs may contact the Courtroom Deputy with their request. If Defendants cannot feasibly produce all of the documents as ordered, Defendants may contact the Court and provide an explanation. Plaintiffs may file a supplemental brief of no more than 10 pages addressing new arguments raised by the produced documents, if any, on or before 3:00 p.m. on November 21, 2019. The parties shall confer on a date for the lodging of the full administrative record.

**IT IS SO ORDERED.**

DATED this 15th day of November, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge