**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA  90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; and LATINO NETWORK,<br><br>                              Plaintiffs,<br><br>      v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; CHAD F. WOLF, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,<br><br>                              Defendants. | Case No.: 3:19-cv-01743-SI<br><br><br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.  The Proclamation and its Implementation are Subject to Judicial Review ...................... 1

II.  Plaintiffs are Likely to Succeed on the Merits of their Claims ............................................ 4

    A.  Plaintiffs are Likely to Succeed on the Merits
        of their Separation of Powers Claim ......................................................................... 4

        1.  The Proclamation Conflicts with Congressional Will ............................... 5

        2.  The Proclamation Is Not a Lawful Exercise of
            Any Authority Under the INA ....................................................................... 7

            (a)  The Proclamation Does Not Satisfy the Textual
                    Requirements of Section 212(f) ....................................................... 8

            (b)  Structural Conflicts Invalidate the Challenged Action Here .......... 9

            (c)  Congress Expressed its Intent to Constrain
                    Executive Power In the Relevant Sphere. ....................................... 9

        3.  Defendants' Interpretation of Executive Power Under
            Section 212(f) Raises Grave Constitutional Concerns............................. 10

        4.  The Proclamation Does Not Pass Rational Basis Review ....................... 11

    B.  Plaintiffs are Likely to Succeed on the Merits of their APA Claim .................... 12

        1.  Agency Action to Implement the Proclamation is
            Reviewable Under the APA ........................................................................ 12

        2.  Plaintiffs Challenge Final Agency Action ............................................... 13

    C.  Plaintiffs are Likely to Succeed on the Merits of
        their Due Process Claim ........................................................................................ 15

III.  Plaintiffs will Suffer Irreparable Harm Absent an Injunction ......................................... 18

IV.  The Balance of Hardships and Public Interest Factors Tip Sharply
    in Favor of Granting a Preliminary Injunction ................................................................ 22

V.  Injunctive Relief Should Not Be Limited to the Named Plaintiffs ................................... 23

VI.  Conclusion ........................................................................................................................ 23

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) ................................................................10

*Armstrong v. Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015)..........................................................................1, 4

*Batalla-Vidal v. Nielsen*,
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) ...............................................24, 27

*Boos v. Barry*,
    485 U.S. 312 (1988)..............................................................................5, 11

*Bresgal v. Brock*,
    843 F.2d 1163 (9th Cir. 1987) ...........................................................25, 26

*Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ..................................................................3

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)...................................................................................24

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) .....................................................................27

*Caribbean Soup Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .....................................................................22

*Chamber of Commerce v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ....................................................................4

*Chhoeun v. Marin*,
    306 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................26

*Ching v. Mayorkas*,
    725 F.3d 1149 (9th Cir. 2013) ..............................................................21, 22

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971).....................................................................................4

*City & Cty. of San Francisco*, 897 F.3d 1225 (9th Cir. 2018)....................................26

*Clinton v. City of New York*,
    524 U.S. 417 (1998)....................................................................................11

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981) ................................................................................1

*DeBartolo Corp. v. Fla. Gulf Coast Trades Council,*
    485 U.S. 568 (1988) ..............................................................................11

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019) ..........................................................................17

*East Bay Sanctuary Covenant v. Barr,*
    391 F. Supp. 3d 974 (N.D. Cal. 2019) ..................................................26

*East Bay Sanctuary Covenant v. Barr,*
    934 F.3d 1026 (9th Cir. 2019) ........................................................25, 26

*East Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ................................................................12

*Emami v. Nielsen,*
    365 F. Supp. 3d 1009 (N.D. Cal. 2019) ..............................................3, 4

*Fiallo v. Bell,*
    430 U.S. 787 (1977) ................................................................................2

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ..............................................................................13

*Gebhardt v. Nielsen,*
    879 F.3d 980 (9th Cir. 2018) ................................................................20

*Gundy v. United States,*
    139 S. Ct. 2116 (2019) ..........................................................................11

*Hawai'i v. Trump,*
    878 F.3d 662 (9th Cir. 2017) ................................................................25

*Hurtado v. California,*
    110 U.S. 516 (1884) ........................................................................16, 18

*Hyatt v. Office of Mgmt. & Budget,*
    908 F.3d 1165 (9th Cir. 2018) ..............................................................15

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................................1

*J.L. v. Cissna,*
    341 F. Supp. 3d 1048 (N.D. Cal. 2018) ..............................................26

*Just Film, Inc. v. Merch. Servs., Inc.*,
    474 F. App'x 493 (9th Cir. 2012) ....................................................................26

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) .............................................................................3, 18

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ........................................................................................3

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ........................................................................................4

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ........................................................................22

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ........................................................................25

*Make the Road New York v. McAleenan*,
    No. 19-cv-2369-KBJ, 2019 WL 4738070 (D.D.C. Sept. 27, 2019) ........................24

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ..........................................................................1

*Nishimura Eklu v. United States*,
    142 U.S. 651 (1892) ........................................................................................3

*RadLax Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ......................................................................................10

*Regents of the Univ. of Cali. v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) ....................................................................24, 27

*Sale v. Haitian Centers Council, Inc.*,
    509 U.S. 155 (1993) ....................................................................................2, 3

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ..................................................................................18

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ........................................................................2, 4

*Tcherepnin v. Knight*,
    389 U.S. 332 (1967) ........................................................................................6

*Texas v. United States*,
    340 F. Supp. 3d 579 (N.D. Tex. 2018) ........................................................12

*Trump v. Hawai'i*,
    138 S. Ct. 2392 (2018) ........................................................................................ *passim*

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    136 S. Ct. 1807 (2016) ................................................................................................ 13, 14

*United States v. Lee*,
    106 U.S. 196 (1882) ......................................................................................................... 4

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ................................................................................. 24, 25

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ....................................................................................................... 11

*Yavari v. Pompeo*,
    No. 2:19-cv-02524-SVW-JC, slip op. (C.D. Cal. Oct. 10, 2019) .................................. 4

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) (Jackson, J., concurring) ........................................................ 5, 6

## Statutes & Rules

5 U.S.C. § 706(2) ................................................................................................................ 24

5 U.S.C. § 706(2)(A)-(D) ..................................................................................................... 4

8 U.S.C. § 1182(a)(4) ....................................................................................................... 5, 6

8 U.S.C. § 1182(a)(4)(B)(1) ............................................................................................. 5, 6

8 U.S.C. § 1185(a) ........................................................................................................... 7, 8

42 U.S.C. §212(f) (INA § 212(f)) ............................................................................... *passim*

Fed. R. Civ. P. 23(a) .......................................................................................................... 26

Fed. R. Civ. P. 23(b)(1)(A) ................................................................................................ 26

Fed. R. Civ. P. 23(b)(2) ..................................................................................................... 26

## Other Authorities

U.S. Const. Art. I, Sec. 8 ..................................................................................................... 5

83 Fed Reg. 51,114 ........................................................................................................... 14

84 Fed. Reg. 54,996 .......................................................................................................... 14

Black's Law Dictionary (11th ed. 2019)..........................................................................17

**INTRODUCTION**

Plaintiffs argued from the start that the Proclamation effectively rewrites our immigration laws by Presidential fiat. Defendants see no problem with that result and contend the courts are powerless to stop them. They are wrong. The conduct Plaintiffs challenge is reviewable and unlawful. Defendants cannot use an executive proclamation to contravene Congressional will, act arbitrarily and capriciously, and infringe on individual rights. Defendants say otherwise, primarily citing the consular non-reviewability doctrine, Section 212(f) of the Immigration and Nationality Act ("INA"), and the Supreme Court's decision in *Trump v. Hawai'i*, 138 S. Ct. 2392 (2018). But consular non-reviewability applies to individual consular decisions, not broad policy changes. And Section 212(f) cannot be read as broadly as Defendants claim without raising grave constitutional concerns. In all events, *Hawai'i* does not preclude Plaintiffs' claims and instead provides an analytical framework for showing Plaintiffs' likelihood of success on the merits of their separation-of-powers claim. Plaintiffs are also likely to succeed on their Administrative Procedure Act ("APA") and Due Process claims. Because Plaintiffs also satisfy the other criteria for an injunction, the Court should preliminarily enjoin implementation and enforcement of the Proclamation pending trial on the merits.

**ARGUMENT**

**I.      The Proclamation and its Implementation are Subject to Judicial Review**

Courts have the power to enjoin "violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015), and to intervene when "the President [has] act[ed] in contravention of the will of Congress." *Dames & Moore v. Regan*, 453 U.S. 654, 668-69 (1981) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 (1952) (Jackson, J., concurring)). "Executive action under legislatively delegated authority . . . is always subject to check by the terms of the legislation . . . and if that authority is exceeded it is open to judicial review." *INS v. Chadha*, 462 U.S. 919, 953 n.16 (1983). It "is emphatically the province and duty of the judicial department to say what the law is." *Marbury v.*

*Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  That duty does not evaporate when the court is presented with a challenge to a broad executive directive on an immigration matter. *See, e.g., Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 160 (1993) (reviewing challenge to President's use of Section 212(f) to "suspend[] the entry of undocumented aliens from the high seas"); *Hawai'i*, 138 S. Ct. at 2407-08 (reviewing challenge to President's use of Section 212(f) to suspend entry of nationals from six countries).

Nevertheless, Defendants go to great lengths to create the illusion this Court cannot review Plaintiffs' "non-constitutional challenges" either as a violation of the separation of powers, or under the APA. Opp. at 11-13, 20-28. [1] They do so with two fundamentally flawed arguments.

First, Defendants suggest *Fiallo* renders challenges to executive action on immigration unreviewable. Opp. at 11-12. It does not. In *Fiallo*, the Supreme Court evaluated whether duly enacted provisions of the INA were unconstitutional because they failed to give preferential status to the relationship between "illegitimate children" and their natural fathers. 430 U.S. 787 (1977).  The Court did not consider the issue unreviewable. Instead, it "underscore[d] the limited scope of judicial inquiry into immigration *legislation*," noting the Court had "repeatedly emphasized that 'over no conceivable subject is the *legislative* power of Congress more complete than it is over' the admission of aliens." *Id.* at 792 (emphases added) (citation omitted). To the extent the Court commented on "decisions made by the Congress *or the President*" it suggested a "narrow standard of review" might apply because immigration policy choices "may implicate our relations with foreign powers." *Id.* at 796 (emphasis added) (quoting *Matthews v. Diaz*, 426 U.S. 67, 81-82 (1976)). This case, however, does not implicate relations with foreign powers. And nothing in *Fiallo* supports the proposition that executive action on immigration is inherently

---

[1] Plaintiffs' separation of powers claim is "fundamentally a constitutional one" alleging the President "acted in violation of constitutional separation of powers principles because [he] lack[s] any background constitutional authority" to address a purported risk to the domestic healthcare system by Presidential proclamation.  *Sierra Club v. Trump*, 929 F.3d 670, 696-97 (9th Cir. 2019); *id.* at 689-90 (a claim may be "at its core, one alleging a constitutional violation" even where the "constitutional issue turns on a question of statutory interpretation").

PAGE 2 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION

unreviewable.

Second, Defendants cite cases that invoke the consular non-reviewability doctrine. Opp. at 28-29. Those cases hold that individual exclusion decisions made pursuant to specific statutory criteria for admission are unreviewable.[2] But not one of those cases establishes blanket non-reviewability for broad executive action on immigration. And despite multiple attempts, the government has never convinced the Supreme Court that statutory challenges to broad executive exclusion policies are unreviewable. *See, e.g., Sale*, 509 U.S. at 160 (reaching the merits of a statutory claim against a Section 212(f) suspension despite the government's extensive briefing on purported non-reviewability); *Hawai'i*, 138 S. Ct. at 2407-08 (same); *Kleindienst*, 408 U.S. at 769-70 (declining the government's request for a "broad decision that Congress [had] delegated" to the executive the power to issue waivers "in its sole and unfettered discretion," and instead finding that Congress had "delegated [a] conditional exercise of [its] power"). There is good reason for that.  Under the Government's proposed rule of non-reviewability, the Executive Branch could simply ignore the immigration laws made by the Congress, establish policies that are contrary to the nation's laws, and individuals adversely affected would have no recourse in the courts.

In fact, courts routinely review executive immigration policies that apply to broad categories of people, as distinct from individual visa decisions. *Compare Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1018-19 (N.D. Cal. 2019) (challenges to "systemic practices with respect to [Proclamation No. 9645's] waiver program . . . do not require review of an individual consular officer's decision") *with Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, slip op. at 3, 13 (C.D.

---

[2] *Nishimura Eklu v. United States*, 142 U.S. 651, 660-62 (1892) (explaining the case "turn[s] on the validity and effect of the action of [the] inspector of immigration" at the port of San Francisco where he was "acting within powers expressly conferred by congress"); *Kleindienst v. Mandel*, 408 U.S. 753, 767 (1972) (addressing "implementation of [a] congressional mandate" in an "individual case"); *Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (explaining "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise"); *Kerry v. Din*, 135 S. Ct. 2128, 2132 (2015) (concluding a "consular officer" did not violate the due process rights of an American citizen by informing her husband he was "inadmissible under § 1182(a)(3)(B) [without] further explanation").

PAGE 3 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Cal. Oct. 10, 2019) (distinguishing plaintiffs' mandamus-based claims "contesting the lack of any decision" on their visa applications from the policy-based challenge in *Emami* "contes[ing] the entirety of the government's waiver program rather than any individual decision or indecision").

In all events, labeling Plaintiffs' claims "non-constitutional" is a misnomer. Plaintiffs' claim is fundamentally a Constitutional challenge to a separation-of-powers violation resulting from Defendants' use of authority they do not possess, in a manner that also implicates individual rights.[3] *See generally* PI Mot. (ECF No. 46); Complaint (ECF No. 1) ¶¶ 226-236, 242-246. Plaintiffs' APA claims are reviewable under ordinary principles that permit actions to enjoin the actions of executive officers, as well as the judicial review provisions of the APA itself.[4] PI. Mot. at 20, 29-31. Labels aside, Defendants cannot evade judicial review of Plaintiffs' constitutional separation-of-powers claim under any theory they espouse, and Plaintiffs' claims under the APA and the Due Process clause are reviewable too.

## II.    Plaintiffs are Likely to Succeed on the Merits of their Claims

### A.    <u>Plaintiffs are Likely to Succeed on the Merits of their Separation of Powers Claim</u>

The Proclamation includes boilerplate language invoking the "authority vested" in the President "by the Constitution" but Defendants do not seriously argue that the executive action here is a direct exercise of Article II power. Nor could they given the Proclamation only

---

[3] *See, e.g., Sierra Club*, 929 F.3d at 696-97; *id.* at 694 (finding likelihood of success as to plaintiffs' "equitable action to enjoin unconstitutional official conduct"); *Armstrong*, 135 S. Ct. at 1384 (acknowledging long history of nonstatutory review of executive officers' actions); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) (suits for official action exceeding powers granted in statute lie notwithstanding sovereign immunity because actions are *ultra vires*); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (reviewing conduct under executive order through action against those executing it); *see also United States v. Lee*, 106 U.S. 196, 220 (1882) (noting "highest" government officers are "bound to obey" law).

[4] 5 U.S.C. § 706(2)(A)-(D); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971).

addresses areas of legislative power allocated to Congress in Article I.[5] Instead, Defendants try to avoid this separation of power problem by advancing an unbounded interpretation of Section 212(f) under the Supreme Court's decision in *Trump v. Hawai'i.* Their strategy fails for four reasons. First, it glosses over the direct conflict between the Proclamation and expressed congressional will. Second, it misapplies *Hawai'i* to justify the unprecedented use of Section 212(f) in this case. Third, it advances an interpretation of Section 212(f) that is so expansive the court could not adopt it without raising grave constitutional concerns, notwithstanding the fact that courts "have the power," and indeed "the duty," to adopt "narrowing constructions . . . to avoid constitutional difficulties." *Boos v. Barry*, 485 U.S. 312, 330-31 (1988). Fourth, it fails to address the Proclamation's constitutional infirmities under rational basis review. For all these reasons, Defendants' attempts to save the Proclamation from Plaintiffs' separation of powers challenge must fail.

### 1.    The Proclamation Conflicts with Congressional Will

The Proclamation cannot stand because it "takes measures incompatible with the expressed or implied will of Congress." *Youngstown*, 343 U.S. at 637. It is plain from the face of the INA that Congress has spoken on how to determine whether an individual will likely financially burden the United States such that they may be deemed inadmissible. 8 U.S.C. § 1182(a)(4); PI Mot. at 13-20. Defendants do not deny Congress has expressly addressed the issue but characterize the Proclamation as merely "adding restrictions" that "are similar" to those Congress already specified. Opp. at 17. That is not credible.

The Proclamation does not simply add another factor to those Congress said should be considered under its multi-factor analysis. *See* 8 U.S.C. § 1182(a)(4)(B)(1). Instead, the Proclamation replaces a totality of the circumstances test that requires "at a minimum"

---

[5] *Compare* U.S. Const. Art. I, Sec. 8 (reserving to Congress the power to set naturalization laws, collect taxes for the general welfare, regulate commerce, and make laws necessary and proper to carry out its enumerated powers) *with* Proclamation (ECF No. 45-1) ("suspending entry of immigrants" in response to "challenges to our healthcare system" and strain on "government budgets" that "ultimately are financed by taxpayers").

consideration of five specific considerations with a single-factor dipositive test to determine whether an individual will "financially burden" the United States. *See id.*; PI Mot. at 16. And the test it requires is one Congress has considered and rejected. *Id.* at 17-18. Far from simply adding a "similar" restriction to those Congress has approved in 8. U.S.C. §1182(a)(4), the Proclamation effectively erases from INA a test for financial burden that Congress duly enacted. It thus "supplants" and does not "support" determinations made by Congress.[6] *Hawai'i*, 138 S. Ct. at 2411; *Youngstown*, 343 U.S. at 587-88 ("[T]he President's order does not direct that a congressional policy be executed in a manner prescribed by Congress – it directs that a presidential policy be executed in a manner prescribed by the President.").

The Proclamation also contravenes the family unification objectives of our immigration laws, as well as various duly-enacted health care laws designed to promote quality comprehensive and affordable insurance coverage and public health. PI Mot. at 3-4, 24-29. As to immigration laws, the Proclamation rewrites statutory provisions that prioritize family-based migration and set mandatory minimum numbers for the issuance of immigrant visas. *Id.* at 14-19. It also directly conflicts with the goals of the Violence Against Women Act.[7] As to our healthcare laws, the Proclamation is inconsistent with legislative will as to Medicaid eligibility, access to and eligibility for premium tax credits for the Affordable Care Act ("ACA")

---

[6] The relationship between the Proclamation and 8 U.S.C. § 1182(a)(4) is thus nothing like the relationship between the proclamations Defendants cite and their corresponding statutory provisions.  In Defendants' examples the Proclamation and the corresponding statutory provision advance similar objectives; they do not work at cross-purposes like the Proclamation and 8 USC § 1182(a)(4). *See* Opp. at 17-18.

[7] Defendants concede Congress intended to exempt certain classes of non-citizens from any test of financial sufficiency. Opp. at 19-20.  Imposing "additional requirements" them conflicts nwith Congress' intent to remove burdens on the admission of these individuals. *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (noting the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"). Defendants note in passing that no plaintiff falls within the scope of VAWA.  Opp at 19.  But that does not suggest a standing problem; Plaintiffs do not seek any separate form of relief under VAWA and Defendants do not challenge Plaintiffs' standing to seek injunctive relief.

PAGE 6 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Marketplace plans, and nondiscrimination in healthcare programs.[8] *Id.* at 5, 24-29. It also

undermines the ACA's objectives because it steers immigrants to non-comprehensive plans that

actually increase uncompensated care costs and other economic burdens on the healthcare

system. *Id.* at 25-27, 39. Some states have even outlawed certain types of coverage that is

"approved" under the Proclamation, or have limited its availability to no more than 90 days

(without renewals) for these very reasons. *See* Amicus PI Br. of States and Cities (ECF No. 88)

at 21.

  The sheer enormity of the Proclamation's anticipated impact belies Defendants' claim

that the Proclamation is like others courts have not disturbed. The Proclamation could affect

nearly two-thirds of those seeking immigrant visas.[9] It will likely bar entry for more prospective

immigrants than any executive order in the past, and it would do so without any national security

or foreign relations justification.[10] The Proclamation's profound impact conflicts with the

implied will of Congress that issuance of immigrant visas continue according to the plans it laid

in the INA instead of being cut by nearly 60% overnight. Against this backdrop, Defendants'

claim that there is no conflict between the Proclamation and Congressional will is not credible.

   **2. The Proclamation Is Not a Lawful Exercise of Any Authority Under the INA**

  Defendants hope they can save the Proclamation by characterizing it as a valid exercise

of delegated authority on the INA. Opp. at 13-19.[11] For that proposition, they rely primarily on

---

[8] The Proclamation is inconsistent with Medicaid provisions and coverage options for immigrants. *See Health Coverage for Lawfully Present Immigrants—Immigrants and Medicaid & CHIP*, HEALTHCARE.GOV, https://www.healthcare.gov/immigrants/lawfully-present-immigrants/; *Medicaid and CHIP Coverage of Lawfully Residing Children and Pregnant Women*, MEDICAID.GOV, https://www.medicaid.gov/medicaid/outreach-and-enrollment/lawfully-residing/index.html.

[9] *See* Comment Letter from Latino Network (ECF No. 45-14) at 5; Declaration of Leighton Ku (ECF No. 54) at ¶¶ 9, 21. *See also* OMB Notice (ECF No. 45-27) at 2 (estimating 450,500 subject to new information collection).

[10] *See Hawai'i*, 138 S. Ct. at 2410, 2413.

[11] Defendants cite 8 U.S.C. § 1185(a), which states that aliens cannot "depart from or enter . . . the United States except under such reasonable rules . . . . as the President may prescribe," but

the Supreme Court's analysis of Section 212(f) in *Hawai'i. Id.* But in *Hawai'i*, the Court did not

assume any purported exercise of Section 212(f) will be valid or that Presidential power is at its

peak in immigration matters. Instead, the Court took three analytical steps before concluding the

executive order in that case was "within the scope of Presidential authority under the INA."

*Hawai'i*, 138 S. Ct. at 2415. First, the Court tested the proclamation against the "textual limits"

of Section 212(f) itself. *Id.* at 2409-10. Second, the Court checked for any structural conflicts

between the proclamation and other statutory provisions that might "implicitly bar" the executive

action. *Id.* at 2410-13. Third, the Court considered whether a particular provision of the INA

showed that Congress "intended to constrain the President's power" in the particular "sphere" at

issue. *Id.* at 2413-15. Those same three steps lead to invalidation of the Proclamation at issue

here.

(a)    The Proclamation Does Not Satisfy the Textual Requirements of
Section 212(f)

The Court's statutory analysis in *Hawai'i* began with the "textual limits" written into

Section 212(f) itself. *Id.* at 2409. Any exercise of Section 212(f) requires the President to "find"

that entry of covered aliens "would be detrimental to the interests of the United States." *Id.*

According to the Court, the President satisfied that requirement by instructing multiple agencies

to perform a "comprehensive evaluation" of country-by-country security and visa issuance

practices, then "set[ting] forth extensive findings" describing the problems identified, and

concluding it was in the national interest to issue the order "both to protect national security and

public safety, and to induce improvement" in specific countries' vetting and information sharing

practices. *Id.*[12] The Court declined to engage in a more "searching inquiry" because "in the

---

they argue their case under Section 212(f).  The Proclamation here is not "reasonable," *see*
Sections II.A.4, but there is otherwise substantial overlap between § 1885(a) and INA Section
212(f). *Hawai'i*, 138 S. Ct. at 2408 n.1; it is therefore not necessary to resolve "the precise
relationship between the two statutes." *Id.* (quoting the government's brief).

[12] The Court in *Hawai'i* took no fewer than five paragraphs to describe the process and data that
supported the President's findings.  In its view, the 12-page Proclamation "thoroughly" described

context of international affairs and national security" the Court will "grant weight to [the President's] conclusions." *Id.* In contrast, there is no indication here that the President conducted anything like the "interagency review" in *Hawai'i*, or made any findings based on data provided by any agency, much less any findings as to why the Proclamation's restrictions are necessary to further the interests of the United States.[13] In fact, Defendants appear to have ignored their own data.[14] These deficiencies are far more problematic in this case than they would have been in *Hawai'i* because executive expertise in "international affairs and national security" cannot fill gaps in the Presidential findings here. *Id.* at 2409. Therefore, the Proclamation cannot survive even this first step in the *Hawai'i* analysis.

(b)    Structural Conflicts Invalidate the Challenged Action Here

After satisfying itself that the President adhered to the textual limits of Section 212(f), the Court went on to check whether the particular exercise of delegated authority was consistent with other provisions of the INA. *Id.* at 2409-10. In particular, the Court examined provisions for individualized vetting and information sharing and found those provisions were "support[ed]" by the Proclamation, which "promot[ed]" the same Congressional goals. *Id.* at 2420-21. In contrast, the Proclamation here conflicts with multiple provisions of the INA and their underlying legislative objectives. PI Mot. at 13-20, 24-29. As described above, the Proclamation undermines and does not "promote" Congressional goals.

(c)    Congress Expressed its Intent to Constrain Executive Power In the Relevant Sphere.

In the final step of its statutory analysis, the Court determined that no other provisions of

---

"the process, agency evaluations, and recommendations underlying the President's chosen restrictions." *Hawai'i*, 138 S. Ct. at 2409.

[13] Defendants merely posted the Proclamation on their website and went about implementing it without any further explanation. *See* PI Mot. at 25-26. They also posted a notice of information collection on October 30, 2019, closed comments on October 31, 2019, and approved the State Department's plan on November 1, 2019, with only a cursory reply to over 300 comments they received  *Id.*; *see also* ECF Nos. 45-26, 45-27, 45-28.

[14] *See* PI Mot. at 25-29.

the INA reflected a Congressional intent to "constrain the President's power" within the same "sphere" as the Proclamation in that case. *Hawai'i*, 138 S. Ct. at 2409, 2414. In particular, the Court determined a prohibition on nationality-based discrimination in the "issuance of visas" codified in a separate section of the INA did not constrain the President's power to "suspend entry" in the "different sphere" of delegated authority under Section 212(f). *Id.* at 2414. Again, the same inquiry leads to a different conclusion here. In this case, the most direct constraint on the executive comes from the provision addressing the "public charge" determination, which Congress addressed in the very same section of the INA as the purported grant of delegated authority. PI Mot. at 24-29. By all ordinary tools of statutory interpretation, Section 212(f) is a residual clause that can only grant authority to the president to make findings about those whose entry are detrimental to the "national interest" in ways not already covered by the preceding clauses.[15] The way the "public charge" provision is situated in the statute with respect to Section 212(f) confirms Congress has expressed its intent to constrain executive power in the same sphere where the Proclamation purports to operate.

At every step in the analysis, the result is different in this case than it was in *Hawai'i*. Therefore, the Court should not read Section 212(f) as authority for Defendants' actions.

### 3.    Defendants' Unbounded Interpretation of Executive Power Under Section 212(f) Raises Grave Constitutional Concerns

Defendants seem to suggest that the analytical steps the Supreme Court took in *Hawai'i* were unnecessary because the delegation of power in Section 212(f) is so broad that it will cover any exercise of exclusion power as long as the President says the excluded aliens are detrimental to any "national interest," even if protection of that interest falls exclusively to Congress under

---

[15] *See Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (Ginsburg, J.) ("The President's sweeping proclamation power thus provides a safeguard against the danger posed by any particular case or class of cases that *is not covered* by one of the categories in section 1182(a).") (emphasis added); *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)); *see also Hawai'i*, 138 S. Ct. at 2411 ("We may assume that § 1182(f) does not allow the President to expressly override particular provisions of the INA.").

PAGE 10 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Article I. Opp at. 15. But if Section 212(f) is such a broad delegation of legislative authority it constitutes a wholesale "[a]bdication" of legislative power to the President and must be struck down. *Clinton v. City of New York*, 524 U.S. 417, 452 (1998) (Kennedy, J, concurring). It would give the President discretion to rewrite immigration law with the stroke of a pen, with "literally no guidance for the exercise of [that] discretion" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001). By Defendants' reading, the Court should invalidate the Proclamation and also Section 212(f) along with it.[16] Instead, the Court has the power to avoid that drastic result by imposing a narrowing construction that is "fairly possible" and not "plainly contrary to the intent of Congress." *Boos*, 485 U.S. at 331; *DeBartolo Corp. v. Fla. Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988). Because Congress did not intend Section 212(f) to supply Defendants with *carte blanche* over naturalization and the nation's health care system, this Court can conclude that Defendants' issuance and implementation of the Proclamation is unlawful under the INA.

### 4.    The Proclamation Does Not Pass Rational Basis Review

Even if this Court were to credit Defendants' arguments that Plaintiffs' non-constitutional claims are unreviewable or that Section 212(f) grants the executive the authority to act as it has in this case, Defendants would still be required to show the Proclamation passes rational basis review because Defendants' actions infringe on individual rights. For all the reasons Defendants' implementation of the Proclamation would be arbitrary and capricious under the APA, PI Mot. at 20-24, it is also not rationally related to its stated purpose and should be struck down on that

---

[16] *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (interpreting a federal statute narrowly to avoid a nondelegation problem and noting that "[t]his Court has long refused to construe words 'in a vacuum'"); *see also id.* at 2131 (Gorsuch, J., dissenting) ("The Constitution promises that only the people's elected representatives may adopt new federal laws restricting liberty" and decrying the "extraconstitutional arrangement" created by the statute's vast delegation to the Executive Branch).

basis too.[17]

### B.    Plaintiffs Are Likely to Succeed on the Merits of their APA Claim

Defendants do not even attempt to argue that their actions to implement the Proclamation have comported with the APA's standards for agency conduct. Opp. at 20-27. Instead, they assert the APA cannot apply here because the President enjoys unreviewable power over immigration and, in any event, they argue, the State Department has yet to make any final decision "because implementation of the Proclamation has been enjoined." *Id.* at 1; *see also* Order on Motion to Compel Admin. Record (ECF No. 83) ("MTC Order") at 3 ("Defendants assert that [the Proclamation] would have been implemented on November 3, 2019, absent the Court's Temporary Restraining Order, without agency action.").  But Defendants mischaracterize both the scope of the President's power and the nature of the State Department's actions to implement the Proclamation. *See* Section II.A, *supra*; PI Mot. 20-24. And because Defendants have not responded to Plaintiffs' substantive arguments that agency action at issue here is arbitrary and capricious, not in accordance with law, in excess of statutory authority, and contrary to Constitutional rights, they effectively concede Plaintiffs are likely to succeed on the merits of their APA claims.

### 1.    Agency Action to Implement the Proclamation is Reviewable Under the APA

As this Court has held, Plaintiffs' challenge to implementation of the Proclamation is cognizable under the APA. MTC Order at 7. Although the President is not an "agency," entities within the executive branch that implement Presidential directives fall within the APA's broad ambit. *Id.* at 2-3; *see also East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770-71 (9th Cir.

---

[17] Defendants have also failed to provide any bona fide justification for the Proclamation's terms. *See infra* Part II.C. It is also worth noting that the current Administration has declined to defend the ACA's individual mandate, arguing that it is "unconstitutional" (and "inseverable") under Congress's Article I powers. *See Texas v. United States*, 340 F. Supp. 3d 579, 591 (N.D. Tex. 2018). Yet, here, the same Administration claims that the Executive can use delegated congressional authority to impose an individual insurance mandate under 212(f). The incongruity is too stark to ignore.

2018). Moreover, Defendants cannot credibly claim Plaintiffs challenge agency action "committed to agency discretion by law," Opp. at 22. Plaintiffs explicitly challenge action that conflicts with the law and exceed the limits of the agency's statutory authority. PI Mot. at 24-29. And for reasons explained above, the consular non-reviewability doctrine does not apply because Plaintiffs challenge broad policymaking and not individual visa decisions.

### 2.    Plaintiffs Challenge Final Agency Action

This Court has acknowledged that Plaintiffs challenge Defendants' actions to implement the Proclamation, not just the Proclamation itself. *See* MTC Order at 7-9. This Court also has noted that "Defendants, and specifically the State Department, have repeatedly represented that they were prepared to implement the Proclamation on November 3, 2019," and that "[t]his supports the conclusion that the State Department's decisionmaking was final before that date." MTC Order at 9; *see also id.* at 8 ("At this stage of the litigation, it appears that the State Department's decisionmaking with respect to implementing the Proclamation is direct and immediate and has a direct effect on day-to-day business."). Although Defendants assert that no final agency action has been taken, the State Department's conduct demonstrates otherwise.

The APA's test for finality is a "pragmatic" one, *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016), that considers whether the agency action "is sufficiently direct and immediate and has a direct effect on day-to-day business." *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992) (citation and alterations omitted). Here, the State Department "completed its decisionmaking process" and set about implementing the Proclamation in a manner that "directly affect[ed] the parties." *Id.* Defendants' recently-revealed evidence confirms this fact. The State Department's cable of October 30, 2019, instructed consular officers "to begin implementation of P.P. 9945 on November 3, 2019." ECF No. 84-1 at 9. The cable also made clear the only outstanding issue was "approval from the Office of Management and Budget (OMB), under the Paperwork Reduction Act," *id.*, which OMB supplied on November 1, 2019. *See* ECF No. 45-27. Before this Court issued a temporary restraining order, there was nothing

standing in the way of the State Department's implementation of the Proclamation. This is textbook final agency action subject to APA review. MTC Order at 9.

Defendants' claim that Plaintiffs challenge only internal guidance is wrong.[18] Opp. at 26. Plaintiffs challenge actions taken to "give notice" to the public of the agency's new enforcement plans. *Hawkes*, 136 S. Ct. at 1815. The agency must understand that its implementing announcement demanded compliance from regulated parties and reversed policy course in a way that required rulemaking. The Administration's "Public Charge" rule is a case in point. *See* 83 Fed Reg. 51,114. The proposed rule, which attempts to redefine "public charge" and create a new "totality of the circumstances test" that includes the lack of health insurance as a negatively weighted factor, was proposed on October 10, 2018, and open to a 60-day notice-and-comment period. After that comment period closed, DHS finalized and issued the Rule on August 14, 2019, with an effective date of October 15, 2019. *See* 84 Fed. Reg. 54,996. The effect of the Proclamation, which focuses on health insurance as the single outcome-determinative factor for admissibility, is as drastic, if not more so, than that of the proposed Public Charge rule. The rulemaking process undertaken for the Public Charge rule shows that Defendants were well aware that formal rulemaking was necessary for such a substantive change in the nation's immigration system.

Defendants' actions to implement the Proclamation did not simply clarify existing rules. Opp. at 26. The announcement on the State Department's website informed the public of substantive changes to the interview process that were not mentioned in the Proclamation but were established to implement its requirements. And the "notice of information collection" was plainly an attempt to let substantive changes to the rights of regulated parties in through the backdoor. Defendants say that the notice was only a "first step" to solicit information from the

---

[18] Defendants also appear to argue that Plaintiffs' APA claim is doomed because "private parties may not privately enforce compliance with a Presidential Proclamation or executive order." Opp. at 23-24. Defendants misstate the case. Plaintiffs do not challenge a consular action as inconsistent with the Proclamation, Plaintiffs challenge the agency's implementation of the Proclamation.  *See* Sections I, II.A, *supra*.

PAGE 14 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

public but there was no time for any other steps required under the PRA before the effective date. In all events, the only bar to review of agency action in connection with an information collection applies to collections that are "within an agency rule." *Hyatt v. Office of Mgmt. & Budget*, 908 F.3d 1165, 1171-72 (9th Cir. 2018). Here, the agency did not issue a rule before announcing the information collection; rather, it attempted to establish a new rule and implement a new policy *through* an information collection. The Court can properly consider whether Defendants misused the information collection process to implement a substantive rule without required procedures.

Finally, there is ample authority that announcement of a definitive policy in an email to a regulated party can constitute final agency action.[19] Emails informing visa applicants they must appear at their interviews with evidence that they satisfy new admissibility requirements compel compliance and are further evidence of final agency action taken to implement the Proclamation.

Because Plaintiffs challenge reviewable final agency action and Defendants have effectively conceded their violations of the APA, Plaintiffs are likely to succeed on the merits of the APA claims.  PI Mot. at 24-31.

**C.**     **Plaintiffs are Likely to Succeed on the Merits of their Due Process Claim**

Plaintiffs are also likely to succeed on their due process claims. Defendants' opposition boils down to three premises: (1) the Fifth Amendment does not apply in the immigration context, but (2) even if it does, it sets such a low bar that Defendants can easily clear, and (3) Plaintiffs are not due more than perfunctory notice. Opp. at 28-34. All of these premises are faulty. The Fifth Amendment's Due Process Clause applies in the immigration context, Defendants have not advanced bona fide justifications for the Proclamation, and both the Proclamation and the State Department's implementation will deprive Plaintiffs of liberty and property without due process of law. The Proclamation and its implementation offend the Due Process Clause, and the Court should enjoin Defendants on that basis.

---

[19] *See* Butte Decl. (ECF No. 62) at ¶¶ 3-4.

PAGE 15 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants first suggest the Fifth Amendment does not apply in the immigration context. Opp. at 29-30. This argument rehashes Defendants' claim that the President enjoys virtually unfettered and absolute power over immigration.[20] Opp. at 13-19, 28-29. As discussed above, this bold assertion is wholly inconsistent with the constitutional structure of our government and outside the powers granted to the President by the INA. *See* Section II.A, *supra*. What's more, the Framers understood the Fifth Amendment's Due Process Clause "to secure the individual from the arbitrary exercise of the powers of government." *See Hurtado v. California*, 110 U.S. 516, 527 (1884). To that end, the Supreme Court recently reaffirmed that the Due Process Clause plays a role in immigration cases. *See Hawai'i*, 138 S. Ct. at 2419. Defendants' argument that the Fifth Amendment is eclipsed by the President's virtually limitless power to exclude whomever he pleases is without merit.

Defendants next claim that, to the extent the Due Process Clause applies, it erects a low bar, which Defendants easily clear. Opp. at 30-32. While it is true that due process plays only a "circumscribed" role in review of executive immigration actions authorized by statute,[21] it still requires Defendants to provide a "facially legitimate and bona fide reason" for the Proclamation and its implementation. *Hawai'i*, 138 S. Ct. at 2419 (quoting *Kleindienst*, 408 U.S. at 756-57).

Defendants do not meet this standard. Defendants claim that the Proclamation and its implementation serve to "reduce 'substantial costs' U.S. healthcare providers and taxpayers bear 'in paying for medical expenses incurred by people who lack health insurance or the ability to pay for their healthcare.'" Opp. at 32. But neither the Proclamation, nor the implementation efforts that Defendants have disclosed thus far, serve these ends. As explained in Plaintiffs'

---

[20] Defendants also appear to be trying to move the goal posts by framing Plaintiffs' case as a dispute over "adjudication of visa applications." Opp. at 28. This case is not about the denial of individual visa applications; it is a dispute over Defendants' power to enact law without constitutional power or congressional authorization, and thereby deprive Plaintiffs of their individual constitutional rights.

[21] As discussed above, Defendants have exceeded their constitutional powers and statutory authorizations so the deferential "facially legitimate and bona fide reason" standard is inapplicable. *See* PI Mot. at 33. But as described, Defendants have failed to meet even the low "facially legitimate and bona fide reason" burden.

PAGE 16 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

motion, the Proclamation and its implementation are likely to *increase* uncompensated care costs, decrease access to affordable insurance, encourage underinsurance, and exclude healthy lawful immigrants who represent a favorable insurance risk. *See* PI Mot. at 38-39. Simply put, the eligible insurance plans are too arbitrarily and narrowly drawn to serve Defendants' stated aims. That being the case, Defendants' reason for the Proclamation fall far short of "bona fide."[22]

In unusual cases like this one, where there is an irreconcilable mismatch between the Executive Branch's stated reasons and means of accomplishing those ends, the Supreme Court has provided a framework for analysis. To prevent judicial review from becoming "an empty ritual," the Court should look behind the stated reasons to determine whether they are merely pretext for other purposes. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574-76 (2019). At this early stage of the litigation, it appears that Defendants' rationalizations are merely pretext for other motives because the policy the Proclamation adopts would only make the problem of uncompensated care worse.[23] The inference from this discrepancy weighs in favor of preliminary injunctive relief here.

Finally, Defendants claim that Plaintiffs received all the notice they are due because Defendants "need provide only a statutory citation to explain a visa denial." Opp. at 34 (citing *Hawai'i*, 138 S. Ct. at 2419). Defendants miss the point. First, there is no *statute* permitting putative class members' exclusion. *See supra* Part II.A. Second, Plaintiffs have not challenged individual visa denials; Plaintiffs challenge Defendants' lawful power to make and implement the Proclamation. *Id.* Third, Defendants fail to square the Proclamation with the text and history of the Due Process Clause. *See* PI Mot. at 34-35. Plaintiffs—and U.S. Petitioner Subclass members in particular—will be deprived of property if forced to comply with the Proclamation's

---

[22] That is, "made in good faith . . . without fraud or deceit;" "sincere[,] genuine." BONA FIDE, Black's Law Dictionary (11th ed. 2019).

[23] *See* Comment Letter from DC Health Benefit Exchange Authority (ECF No. 45-10) at 2; Comment Letter from Commonwealth of Massachusetts Health Insurance Connecter Authority (ECF No. 45-14) at 2-3; *see also* MacEwan Decl. (ECF No. 65) ¶ 8; Pogue Decl. (ECF No. 64) ¶¶ 17-20; Palanker Decl. (ECF No. 57)  ¶¶ 23-34; Lueck Decl. (ECF No. 56) ¶¶ 15-16

vague, unknowable standards and the State Department's opaque implementation efforts. The Founders understood "due process of law" to "secure the individual from the arbitrary exercise of the powers of government." *Hurtado*, 110 U.S. at 527; *see also Kerry*, 135 S. Ct. at 2132 (plurality op.). At minimum, that required the government to provide "fair notice" of how to comply with the law before seeking to deprive a person of property in consequence of noncompliance. *Kerry*, 135 S. Ct. at 2132; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1224-25 (2018) (Gorsuch, J., concurring). Defendants have not provided fair and meaningful notice here. Nor is it likely that the Proclamation falls within what the Founders would have considered "the law of the land." *See Kerry*, 135 S. Ct. at 2132. For those reasons, Plaintiffs are likely to succeed on their claim that Proclamation and its implementation run afoul of the Due Process Clause.

## III.    Plaintiffs will Suffer Irreparable Harm Absent an Injunction

Defendants fail to rebut Plaintiffs showing of irreparable harm. PI Mot. at 35-38. As an initial matter, Defendants fail to address the irreparable harm to the organizational plaintiff, Latino Network. Plaintiff Latino Network is already diverting significant resources to address the Presidential Proclamation.[24] Defendants ignore the damage to Latino Network's ability to carry out its organizational purpose.[25]

Plaintiffs have also demonstrated that they face imminent, indefinite family separation as a result of the Proclamation.[26] In attempting to minimize the impact of the Proclamation on families, Defendants fail to address or even acknowledge visa applicants with I-601A waivers,

---

[24] Rubio Decl. (ECF No. 59) ¶ 15.

[25] Rubio Decl. ¶ 30; ECF No. 73 at 23-31 (describing damage to various nonprofit organizations that serve immigrants).

[26] Defendants suggest that family separation is only harmful if minor children are separated from their parents. Opp. at 3.  This cramped view does not comport with the reality Plaintiffs live. *See* Castro Decl. (ECF No. 51) ¶¶ 10-13 (describing Plaintiff's unemployment due to child's illness and need for husband to live in the United States to alleviate her financial situation and assist with her pregnancy); John Doe #1 Decl. (ECF No. 28) ¶ 10 (describing Plaintiff's heart surgery and inability to work due to disability and need for wife's income to support his family); Morales Declr. (ECF No. 53) ¶ 20 (describing the heartbreak and worry to Plaintiff if his wife, who suffers from epilepsy, cannot return from Mexico if her visa is denied).

like the family members of Plaintiffs John Doe and Juan Ramon Morales. Although Defendants suggest that a visa applicant can simply seek reconsideration within a year if the consular officer initially refuses a visa based on the Proclamation, Defendants' do not account for the fact that such a visa refusal also requires "automatic revocation of the waiver, even if the refusal is subsequently overcome."[27] ECF No. 84-1 at 8. As a practical matter, the revocation of the waiver "will result in significant, if not permanent, delay in returning to the United States."[28] Although Defendants contend that delays in *processing* immigrant visas of three to five years are reasonable, Defendants make no effort to address the "significant, if not permanent, delay" in reuniting families that the Proclamation would impose by automatically revoking I-601A waivers.

The irreparable harm to Plaintiffs caused by family separation is not speculative or hypothetical. Indeed, Plaintiffs John Doe and Juan Ramon Morales obtained I-601A waivers because they demonstrated the extreme hardship they would suffer without their wives.[29] The Plaintiffs, including John Doe and Mr. Morales, have declared that their family members will be unable to prove at the time of the consular interview that they will be covered by approved health insurance within thirty days of entry or have sufficient financial resources to cover all reasonably foreseeable medical expenses.[30] Far from speculative, these declarations are based on their knowledge of their own health and financial situations. And the State Department's instructions make clear that consular officers have no discretion with respect to I-601A waivers. The waivers are automatically revoked, even if the visa refusal is subsequently overcome. Enforcement of the Proclamation would irreparably harm these individual plaintiffs by imposing and prolonging

---

[27] Seeking reconsideration is far more complex than Defendants suggest. Kuck Decl. (ECF No. 48) ¶ 6.

[28] *Id.* at ¶ 5.

[29] Morales Decl. ¶ 11; John Doe Decl. (ECF No. 55) ¶ 7.

[30] Morales Decl. ¶¶ 7, 14-15; John Doe Decl. ¶¶ 9-10.

separation from their spouses, notwithstanding that these spouses have satisfied the necessary criteria for an immigrant visa.

Defendants further suggest that Plaintiffs cannot demonstrate irreparable harm because all they need to do to cure their asserted harm is to "mak[e] plans to obtain health insurance within thirty days of their arrival in the United States." Opp. at 35. Defendants presuppose the Proclamation is a lawful exercise of power. This is not the case. PI Mot. at 35-38. In any event, Defendants fail to acknowledge that at least some of the approved health insurance coverage options in the Proclamation are legally impossible, even though Defendants' own Ex. 1 concedes this point.[31] Likewise, as the States' and Cities' Amicus Brief explains, short-term, limited duration insurance is banned in several states, including California and New York, and restricted in a manner that does not meet the Proclamation's 364 day coverage requirement in many other states, including Oregon, Colorado, Maryland, and New Mexico and the District of Columbia. ECF No. 88 at 21, 26. The harm's irreparability is amply evident, as is the pretextual nature of Defendants' assertions to the contrary.

Defendants also claim that family separation is not an irreparable harm because there is "no right to reside in the United States with non-citizen family members." Opp. at 34. But even the case cited by Defendants, *Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018), "acknowledge[s], of course, that individuals have a strong interest in living with their family members." *Id.* at 988. In *Gebhardt*, the court merely found that the interest was not so fundamental as to avoid application of the Adam Walsh Act, which bars the approval of I-130 petitions where the petitioner has been convicted of certain sex offenses against a child. As Plaintiffs explained, the Ninth Circuit has repeatedly found that separation from family members and the mental damage concomitant with such separation constitutes irreparable harm. PI Mot. at

---

[31] ECF No. 84-1 at 6: "Non-U.S. citizens are only eligible for Medicare after five years in LPR status; therefore, immigrant applicants may not be able to rely on the Medicare program as viable coverage to meet the requirements under P.P. 9945, even though it is an approved program."

PAGE 20 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

35-36 (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011); *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013)).

Defendants also fail to address the impracticability of the approved health insurance options in the Proclamation. Several of the options are medically underwritten. That means that, even if a person is presently healthy, that person may be denied coverage due to pre-existing conditions.[32] Even if visa applicants are eligible for plans, they also must also demonstrate they "have the means to pay for premiums." Opp. at 36. By excluding subsidized ACA plans and Medicaid (allowed only for children under the Proclamation), the Proclamation puts out of reach affordable, comprehensive coverage for which these visa applicants might otherwise qualify, but for the Proclamation.[33]

Moreover, Defendants make assertions about how a visa applicant may satisfy her burden that are without basis in the Proclamation itself.[34] For example, as Defendants acknowledge, a person must be a resident of a state and "lawfully present" to enroll in an unsubsidized ACA plan.[35] However, Defendants suggest that it is sufficient to demonstrate "the intent to enroll within 30 days of entry." Opp. 36.[36] But the Proclamation does not merely require enrollment

---

[32] Pogue Decl. (ECF No. 64) ¶ 16 (describing that STLDI plans are medically underwritten and applicants can be denied coverage due to pre-existing conditions); Palanker Decl. (ECF No. 57) ¶ 20 (STLDI plans not available to people with many medical conditions or even symptoms of medical conditions).

[33] Pogue Decl. ¶ 14 (most effective way to reduce uncompensated care is affordable, comprehensive coverage, and ACA plans, for which Advanced Premium Tax Credits are available, are the most accessible forms of affordable, comprehensive coverage); Watson-Patko Decl. ¶ 9 (Congress has explicitly made "subsidized" ACA plans available to lawful immigrants).

[34] Defendants contend that "the health insurance provider does not necessarily even need to be a U.S.-based company," Opp. at 37, but their citation to the Marwaha declaration does not support that assertion. In any event, that contention ignores the concern that foreign companies, which are not subject to the consumer protections of any state, would take advantage of visa applicants. Palanker Decl. ¶¶ 35-37; Comment Letter from Asian and Pacific Islander American Health Forum at 4.

[35] ECF No. 84-1 at 6, ¶ 7.

[36] Defendants go so far as to suggest that the Proclamation does not preclude Plaintiffs from applying from switching to a different plan once they arrive in the United States. Opp. 39. According to Defendants, a visa applicant would be required to show an intent to purchase an

PAGE 21 -- PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

within 30 days; it requires that the visa applicant "will be covered by approved health insurance . . . within 30 days of the alien's entry into the United States." Neither the intent to enroll nor enrollment itself is the same as the effective date of coverage.[37]

Plaintiffs have demonstrated harm that is imminent and likely irreparable. Plaintiffs have attested that their family members cannot afford and/or are not eligible for the approved health insurance plans in the Proclamation. And they cannot afford reasonably foreseeable medical costs, particularly due to their financial straits and/or preexisting conditions. The Proclamation would thus bar the entry (or re-entry) of Plaintiffs' loved ones. Moreover, Latino Network has demonstrated disruption of its organizational mission that it has already suffered. The harm to Plaintiffs is not just a possibility of harm,[38] it is "immediate threatened injury." *Caribbean Soup Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

## IV.   The Balance of Hardships and Public Interest Factors Tip Sharply in Favor of Granting a Preliminary Injunction

Defendants offer no credible response to Plaintiffs arguments that the balance of hardships and public interest factors tip sharply in their favor. *Compare* Opp. at 41-42 *with* PI Mot. at 38-40. They merely label all the harms Plaintiffs identified as "speculative" and recite from the Proclamation in an attempt to show the public will suffer harm from uncompensated care costs absent an injunction. But the Proclamation will contribute to this problem, not ameliorate it. PI Mot. at 38-41. Defendants' cursory argument cannot overcome Plaintiffs' strong

---

[37] approved plan, but could actually purchase a different plan when she arrives in the United States. It is unclear whether Defendants' position would allow the purchase of a subsidized ACA plan after arrival.

[37] Norris Decl. (ECF No. 61) ¶ 10 (explaining that "coverage under a policy is available on the first of the following month as long as the individual applies by the 15th of the current month" and how timing of receipt of green card might delay coverage).

[38] *See Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011); *see also Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013) ("The right to live with and not be separated from one's immediate family is 'a right that ranks high among the interests of the individual' and that cannot be taken away without procedural due process." (quoting *Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982))).

showing.

There is no basis for Defendants' claim that the individual Plaintiffs allege only speculative harm. Instead, they toss the word "speculative" into the balance of hardships analysis without reference to any cases or declarations to support their view. Opp. at 39-40. In contrast, Plaintiffs have explained in detail why the harm to them is real, immediate, and irreparable. Section III, *supra*. They also explain the harm families could suffer from prolonged separation if the Proclamation goes into effect. *Id.*; PI Mot. at 40. Defendants' attempt to wave away these arguments and hide behind the Proclamation's questionable assertions must fail.

Defendants' recitation of purported public interest concerns stated in the Proclamation is also no help. As Plaintiffs explained, the public interest goal of reducing uncompensated healthcare costs is best served by granting an injunction. PI Mot. at 38-39. The Proclamation's arbitrary limits on approved options would only decrease access to affordable comprehensive insurance, encourage underinsurance, and undermine the commercial market by eliminating lawfully present immigrants who represent favorable insurance risk. *Id.* Because Defendants have no response to these arguments, the Court should conclude that the balance of hardships and public interest factors tip sharply in Plaintiffs' favor.

## V.    Injunctive Relief Should Not Be Limited to the Named Plaintiffs

Defendants ask this Court to limit injunctive relief "to specific individuals named in the complaint or actual clients of Plaintiff Latino Network who can show that they will be affected by the Proclamation." Opp. at 45. Such a limited injunction, however, would not fully address the harm inflicted by the Proclamation, a singular policy that plainly impacts a broad population of immigrants and their families. Allowing the government to launch a policy that upends the lives of thousands of these people—while suspending it for a select group of others—is no solution; indeed, it would confuse national immigration policy and create more problems than it would solve. An injunction blocking enforcement of the Proclamation in its entirety is the appropriate remedy here.

As an initial matter, this Court should enjoin enforcement of the Proclamation in its entirety because of its effect on this nation's immigration system and the scope of the APA violation it represents. As the Supreme Court has noted, "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Where, as here, a challenged policy has a "systemwide impact," a "systemwide remedy" is appropriate. *Batalla-Vidal v. Nielsen*, 279 F. Supp. 3d 401, 438 (E.D.N.Y. 2018) (granting nationwide injunction of DACA rescission) (quoting *Lewis v. Casey*, 518 U.S. 343, 359 (1996)). This is because, as the Ninth Circuit has repeatedly recognized, "the Constitution requires a *uniform* Rule of Naturalization; Congress has instructed that the immigration laws of the United States should be enforced vigorously and *uniformly*, and the Supreme Court has described immigration policy as a comprehensive and *unified* system." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511-12 (9th Cir. 2018), *cert. granted* 139 S. Ct. 2779 (2019) (emphases in original) (quoting *Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015)); *see also Washington v. Trump*, 847 F.3d 1151, 1166-67 (9th Cir. 2017). An injunction limited only to the named Plaintiffs, which would "appl[y] that [challenged] policy to some individuals while rescinding it as to others is inimical to the principle of uniformity." *Regents*, 908 F.3d at 512. The APA commands a similarly uniform result. In the context of a challenge under the APA, "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Id.* at 511 (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)); *see also* 5 U.S.C. § 706(2). Anything less would require the federal courts to "stand impotently by while the agency acts in direct defiance of [a] court's legal determination by continuing to apply the invalid rule with respect to any person who is not the individual who filed the legal action that is before the Court." *Make the Road N.Y. v. McAleenan*, No. 19-cv-2369-KBJ, 2019 WL 4738070, at *48 (D.D.C. Sept. 27, 2019).

The Plaintiffs in this case themselves demonstrate the broad reach of the Proclamation and the necessity of an injunction that suspends it entirely. They are individuals and clients of Latino Network whose loved ones are subject to the Proclamation in Oregon, California, New York, Massachusetts, and Illinois. The record contains declarations from individuals from other states and outside the United States as well.[39] While Plaintiffs' geographic locations and family situations differ, the devastating impact the Proclamation will have on their lives is the same. Moreover, an amicus brief from 21 states and the District of Columbia confirms that the Proclamation will similarly harm putative class members who are residents of those states—as well as the states themselves.[40] Broad injunctive relief is appropriate to address a policy with such demonstrably national impact. *See, e.g.*, *Hawai'i v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017) ("Because this case implicates immigration policy, a nationwide injunction was necessary to give Plaintiffs a full expression of their rights."), *rev'd on other grounds,* 138 S. Ct. 2392 (2018); *Washington*, 847 F.3d at 1166-67 (declining to limit the geographic scope of a TRO, noting that "[t]he Fifth Circuit has held that such a fragmented immigration policy would run afoul of the constitutional and statutory requirement for uniform immigration law and policy") (citing *Texas*, 809 F.3d at 187-88); *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987) ("The district court has the power to order nationwide relief where it is required.").

The cases Defendants cite do not prevent this Court from suspending the Proclamation in its entirety. For example, Defendants' concerns about interfering with parallel proceedings in other forums is unfounded, and the authority they cite in support of that concern inapposite. To date, well over a month since the Proclamation's issuance, there are no other lawsuits in the country challenging it. *Cf. E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1030 & n.6 (9th Cir. 2019) (involving six such parallel challenges); *L.A. Haven Hospice, Inc. v. Sebelius*, 638

---

[39] *See* Ramos Decl. (ECF No. 52); Rhoads Decl. (ECF No. 50).

[40] *See* ECF No. 88, States' Amicus Brief at p. 25 ("The Proclamation will likely harm Amici States' health insurance markets, increase [Amici States'] administrative and regulatory burdens, and impose uncompensated care costs on [Amici States'] fiscs.").

F.3d 644, 665 (9th Cir. 2011) ("[S]everal other courts of appeals are currently reviewing decisions of other district courts" regarding the regulation at issue).

The cases Defendants cite in support of a narrow injunction also do not involve class allegations, and while class claims are not required for this Court to issue an injunction like the one proposed here, *see Bresgal*, 843 F.2d at 1170, briefing on Plaintiffs' motion to certify a nationwide class of affected individuals and entities under Federal Rule of Civil Procedure 23(a), 23(b)(1)(A), and 23(b)(2) will soon be completed, providing another ground for nationwide relief. *See* ECF No. 44. Defendants do not dispute that the Proclamation would apply to the members of the putative class. Under these circumstances, a preliminary injunction extending relief to the putative class is warranted to "maintain the status quo where class certification is pending," especially where "a class-wide injunction is necessary to remedy the alleged class-wide harm."[41] *Just Film, Inc. v. Merch. Servs., Inc.*, 474 F. App'x 493, 495 (9th Cir. 2012).[42]

Finally, the cases Defendants cite involved policies that were not similar in scope to the Proclamation (which lacks any geographic limitation and stands to impact two-thirds of immigrants) or had records that lacked the evidence of nationwide harm Plaintiffs have provided. *Compare E. Bay*, 934 F.3d at 1029-30 (limiting to 9th Circuit injunction suspending policy limited to southern border crossings), *with E. Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974, 976-77 (N.D. Cal. 2019) (granting nationwide injunction based on expanded record); *cf. City & Cty. of San Francisco*, 897 F.3d 1225, 1244 (9th Cir. 2018) (limiting injunction on sanctuary cities executive order because "tendered evidence is limited to the effect of the Order

---

[41] As the Ninth Circuit has noted, moreover, the district court may "review the continued existence and the scope of the preliminary injunction, if and when a class is certified." *Just Film*, 474 F. App'x at 495.

[42] *See also J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1070 (N.D. Cal. 2018) ("Although a class has not yet been certified, California-wide preliminary injunctive relief is necessary to preserve the status quo and to prevent irreparable harm for all Plaintiffs and the putative class."); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) ("[A]n injunction is necessary to forestall harm to putative class members that is likely to transpire before the parties can litigate a motion for class certification.").

on their governments and the State of California"); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (limiting injunction because record was not developed on harm outside California).

Defendants have not provided any reason "to deviate from the normal rule in APA cases," nor any reason "to disregard the need for uniformity in national immigration policy." *Regents*, 908 F.3d at 512. Nor do Defendants dispute that the Proclamation's impact would be "systemwide," affecting up to two-thirds of all prospective immigrants each year and harming individuals across the country and around the globe in the putative class. *Batalla-Vidal*, 279 F. Supp. 3d at 438. An injunction preventing enforcement of the Proclamation in its entirety is warranted to remedy these harms.

## VI.    Conclusion

For the foregoing reasons, the Court should preliminarily enjoin Defendants from implementing and enforcing the Proclamation.

DATED this 19th day of November, 2019

INNOVATION LAW LAB

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA  90027
Telephone: +1 323 316-0944

*s/Stephen W Manning*
Stephen Manning **(SBN 013373)**
**stephen@innovationlawlab.org**
Nadia Dahab **(SBN 125630)**
**nadia@innovationlawlab.org**
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

-and-

**Jesse Bless** (admitted *pro hac vice*)
jbless@aila.org
AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1301 G. Street, Ste. 300
Washington, D.C. 20005

**Scott D. Stein** (admitted *pro hac vice*)
sstein@sidley.com
**Kevin M. Fee** (admitted *pro hac vice)*
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL  60603