FILED

DEC 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOE #1; et al.,<br><br>               Plaintiffs-Appellees,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br><br>             Defendants-Appellants. | No.   19-36020<br><br>D.C. No. 3:19-cv-01743-SI<br>District of Oregon,<br>Portland<br><br>ORDER |

Before: THOMAS, Chief Judge, BERZON and BRESS, Circuit Judges.

The government requests an emergency temporary stay of the district court's order preliminarily enjoining Presidential Proclamation No. 9945, *Suspension of Entry of Immigrants Who Will Financially Burden the United States Health Care System*, pending consideration of the motion for a stay pending appeal. The government also seeks a stay of the preliminary injunction pending appeal. The plaintiffs oppose both motions.

A temporary stay in this context (sometimes referred to as an administrative stay) is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal.

Here, the status quo would be disrupted by granting the temporary stay request. Therefore, we deny the request for a temporary stay. The Proclamation has not yet gone into effect. The changes it would make to American immigration policy are major and unprecedented; the harms the government alleges it will suffer pending review of the motion for stay pending appeal are long-term rather than immediate. Our ruling is based solely on the absence of a sufficient exigency to justify changing the status quo, particularly during the few weeks before scheduled oral argument on the merits of the emergency motion; we do not consider the merits of the dispute in any respect. By this order we are expediting briefing and oral argument on the emergency motion and anticipate an expeditious issuance of a decision following argument.

Any government reply to plaintiffs' opposition to the motion for stay pending appeal is due December 23, 2019.

The parties are directed to appear for oral argument on the motion for stay pending appeal on Thursday, January 9, 2020, at 10:00 am in San Francisco, California. Each side will be allotted 20 minutes of argument time. The parties are encouraged to appear in person if possible. If any party wishes to appear by video, that party must notify Kwame Copeland, 415.355.7888, no later than Friday, January 3, 2020, and must coordinate with Mr. Copeland in making suitable arrangements for an appearance by video.

The opening brief and excerpts of record are due January 2, 2020; the answering brief is due January 30, 2020 or 28 days after service of the opening brief, whichever is earlier; and the optional reply brief is due within 21 days after service of the answering brief. This case will be assigned to the next available oral argument panel for a decision on the merits of the appeal.

FILED

DEC 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*John Doe #1, et al v. Donald Trump, et al*, No. 19-36020

BRESS, Circuit Judge, dissenting:

Before it could take effect, a district court in Oregon enjoined a Presidential Proclamation that placed a suspension and certain limitations on the entry of immigrants whom the President has determined will burden the American healthcare system. The district court refused to stay its nationwide injunction, and the government has now sought a stay of the district court's order pending appeal, as well as a temporary stay pending this Court's ruling on the underlying stay motion. Only the latter request is before us now. I would grant the temporary stay and so respectfully dissent from its denial.

Whatever one's views on the Presidential Proclamation as a matter of policy, the district court's decision is clearly wrong as a matter of law. In the supposed name of the separation of powers, the district court struck down part of a longstanding congressional statute, invalidated a presidential proclamation, and purported to grant worldwide relief to persons not before the court. And it did so based on the nondelegation doctrine—among the most brittle limbs in American constitutional law—and a reading of 8 U.S.C. § 1182(f) that the Supreme Court expressly rejected in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018). The district court's extraordinary injunction ignores governing precedent, invents unjustified restrictions on the political branches, and inserts the courts into the President's well-

established constitutional and statutory prerogative to place limits on persons entering this country. The Proclamation concerns matters of great consequence and is understandably important to many people, but the law prevented the district court from doing what it did here.

Today's order is not a ruling on the government's underlying motion for a stay pending appeal, which I hope will ultimately be granted. But given the clear error below and irreparable resulting harms, a temporary stay is warranted. *See* 9th Cir. R. 27-3. We have granted such stays before, including in another case today. *E.g.*, *Al Otro Lado, Inc. v. Wolf*, No. 19-56417 (9th Cir. Dec. 20, 2019); *East Bay Sanctuary Covenant v. Barr*, No. 19-16487 (9th Cir. Sept. 10, 2019), ECF No. 45; *Innovation Law Lab v. Nielsen*, No. 19-15716 (9th Cir. Apr. 12, 2019), ECF No. 6. We should have issued a temporary stay here as well. I therefore respectfully dissent.

I

This case arises from Presidential Proclamation No. 9945, entitled *Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System, in Order To Protect the Availability of Healthcare Benefits for Americans*. Pres. Proc. No. 9945, 84 Fed. Reg. 53,991 (2019). Citing 8 U.S.C. § 1182(f) and his authority under the Constitution, the President suspended and limited the entry of certain immigrants who cannot show that, within 30 days of arriving in the United

States, they "will be covered by approved health insurance" or "possess[] the financial resources to pay for reasonably foreseeable medical costs." *Id.* at 53,992.

The Proclamation references data "show[ing] that lawful immigrants are about three times more likely than United States citizens to lack health insurance." *Id.* at 53,991. And it finds that healthcare providers and taxpayers bear a "substantial" burden on behalf of those "who lack health insurance or the ability to pay," so that "[c]ontinuing to allow entry into the United States of certain immigrants who lack health insurance or the demonstrated ability to pay for their healthcare would be detrimental" to the national interest. *Id.* The President also noted other financial and public health burdens that the uninsured can impose, including reliance on publicly funded benefit programs and overreliance on emergency room care, which in turn results in "delays for those who truly need emergency services." *Id.*

To remedy these problems, the Proclamation requires visa applicants to show that they will have healthcare coverage that would satisfy the Proclamation or show they are otherwise able to afford reasonably foreseeable medical expenses. *Id.* at 53,992. Under the Proclamation, an immigrant must "establish that he or she meets its requirements, to the satisfaction of a consular officer, before the adjudication and issuance of an immigrant visa." *Id.* at 53,993. It also provides that the "[t]he Secretary of State may establish standards and procedures governing such determinations." *Id.* By its terms, the Proclamation does not apply to immigrants

who have already entered the United States pursuant to a visa or those "entering the United States through means other than immigrant visas." *Id.* at 53,992–93.  The Proclamation thus does not apply to "lawful permanent residents." *Id.* at 53,993.  It also makes clear that "nothing in this proclamation shall be construed to affect any individual's eligibility for asylum, refugee status, withholding of removal, or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment." *Id.*

The Proclamation requires the preparation of an inter-agency report "within 180 days of [its] effective date"—and each year thereafter—on "the continued necessity of and any adjustments that may be warranted to the suspension and limitation on entry" imposed. *Id.*  In the event "circumstances no longer warrant the continued effectiveness of the suspension and limitation on entry," the President is to be "immediately" advised. *Id.*

The Proclamation was set to take effect on November 3, 2019, *id.* at 53,994, but two days before, plaintiffs—a Multnomah County, Oregon advocacy organization and several United States citizens with family members who will allegedly be seeking immigrant visas—requested and received a temporary restraining order blocking enforcement of the Proclamation nationwide.  On November 26, 2019, the district court granted plaintiffs' request for a nationwide preliminary injunction.  *Doe #1 v. Trump*, 2019 WL 6324560 (D. Or. Nov. 26, 2019).

The district court held that the statutory basis for the Proclamation—8 U.S.C. § 1182(f)—was an unconstitutional delegation of legislative power because it "provides no guidance whatsoever for the exercise of discretion by the President." *Doe #1*, 2019 WL 6324560 at *10. The district court also held that the Proclamation was "unconstitutional under separation of powers," because it "contravenes" the public charge provisions of the Immigration and Nationality Act. *Id.* at *12, 15–16. The district court declined to stay its order pending appeal. The government filed an emergency motion with this Court, seeking an immediate temporary stay of the district court's injunction and a stay pending appeal by December 27, 2019.

II

This Court has the power to issue temporary stays pending appeal in cases of immediate irreparable harm. *See* 9th Cir. R. 27-3. These are sometimes called administrative stays or emergency stays. The name is less important than the standards that govern the request. The backdrop for the government's motion for a temporary stay is necessarily the ultimate relief it is requesting, which is a complete stay pending appeal. That request is governed by the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injur[e] the other parties interested in the proceeding; and (4) where the public interest lies.

*City and Cty. of S.F. v. USCIS*, 2019 WL 6726131, at *10 (9th Cir. Dec. 5, 2019)

(quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).  As we have explained, "'[l]ikelihood of success on the merits is the most important factor.'"  *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 n.3 (9th Cir. 2019) (quoting *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)).

The Court appears to suggest, without citation, that when it comes to a request for a temporary stay, the merits are not to be considered.  But the instant request for a temporary stay is part of the request for a stay pending appeal, and the Court cites no authority for why the usual stay factors—including likelihood of success on the merits—would not apply.  In this case, moreover, the government filed its emergency motion and motion for stay pending appeal on December 4, 2019, and the plaintiffs have filed oppositions to both motions.  We have had more than enough time to consider the merits, and under the circumstances, not considering the likelihood of success has the undesired effect of allowing a demonstrably incorrect injunction to remain in place without justification.

Because the only question currently before us is whether to grant a temporary stay, my analysis here is necessarily abbreviated.  But it does not take much to show that the district court's order is clearly wrong and produces irreparable harm every day it persists.

A

Section 1182(f) of the Immigration and Nationality Act (INA) provides:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). As the Supreme Court explained in *Trump v. Hawaii*, this provision "exudes deference to the President in every clause" and "grants the President sweeping authority to decide whether to suspend entry, whose entry to suspend, and for how long." 138 S. Ct. at 2408, 2413. In combination with the President's own inherent constitutional authority in this space, Proclamation No. 9945 was plainly authorized under § 1182(f).

The district court nevertheless concluded that § 1182(f) was unconstitutional under the nondelegation doctrine because "[t]here is no 'intelligible principle' provided as to what it means to be 'detrimental,' what the 'interests' of the United States are, what degree of finding is required, or what degree of detriment is required." *Doe #1*, 2019 WL 6324560, at *10. That holding is unprecedented.

The nondelegation doctrine is one of the most infrequently applied doctrines in constitutional law. Just last Term, the Supreme Court reiterated that "[w]e have almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (quotations omitted). That

7

reticence explains why "only twice in this country's history (and that in a single year) ha[s] [the Supreme Court] found a delegation excessive." *Id.* In the context of immigration—in which the President's authority is based on both statutory and constitutional powers—it cannot be that this case now presents just the third instance in our Nation's history in which the nondelegation doctrine should apply.

Section 1182(f), which was enacted in 1952, has for decades been the noted source of statutory authority for presidential proclamations involving immigration matters. *See Hawaii*, 138 S. Ct. at 2409–10, 2412. The sudden discovery that this longstanding statute is an unconstitutional delegation of legislative power would therefore be surprising, to say the least. But it is of course no such thing. Less than two years ago, and in the course of upholding a presidential proclamation issued pursuant to § 1182(f), the Supreme Court in *Trump v. Hawaii* held that § 1182(f) was a "comprehensive delegation" of authority to the President, explaining that "the language of § 1182(f) is clear." *Id.* at 2408, 2410. That is the opposite of an unconstitutional delegation lacking any intelligible principle, as the district court erroneously held.

The district court's analysis also proceeded from the mistaken assumption that that the President's authority in this area is entirely delegated. It is not. In *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), the Supreme Court rejected a nondelegation challenge to a precursor to § 1182(f). In so doing, it held

8

that "[t]here is no question of inappropriate delegation of legislative power involved here," because "[t]he exclusion of aliens is a fundamental act of sovereignty" and "[t]he right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *Id.* at 542; *see also Hawaii*, 138 S. Ct. at 2418. All of this explains why "the strict limitation upon congressional delegations of power to the President over internal affairs does not apply with respect to delegations of power in external affairs." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 636 n.2 (1952) (Jackson, J., concurring). The district court's novel decision ignores this well-settled law and fails to accord the political branches the deference they are understandably due in this area.

The district court's separation of powers analysis fares no better. The district court also enjoined the Proclamation as "unconstitutional under separation of powers," on the theory that the Proclamation contravenes the public charge provision of the INA, *Doe #1*, 2019 WL 6324560, at *12–16, which renders inadmissible an immigrant who "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). In making that public charge determination, the INA lists a series of non-exhaustive factors to be considered "at a minimum," including "assets, resources, and financial status." *Id.* § 1182(a)(4)(B). In the district court's view, the Proclamation is inconsistent with the "totality of the circumstances" approach in § 1182(a)(4)(B) because "it makes ability to pay for anticipated care . . . [the] single,

9

dispositive factor." *Doe #1*, 2019 WL 6324560, at *14.

Once again, the district court seriously erred in failing to follow Supreme Court precedent. In *Trump v. Hawaii*, the Supreme Court rejected the very sort of argument that the district court accepted here. There, the plaintiffs claimed that a different presidential proclamation supplanted the INA because Congress had already legislated in the area that the proclamation covered. 138 S. Ct. at 2410–12. The Supreme Court disagreed because § 1182(f) "vests authority in the President to impose *additional limitations* on entry *beyond the grounds* for exclusion set forth in the INA." *Id.* at 2412 (emphasis added). Indeed, the Supreme Court viewed it as "unsurprising" that "§ 1182(f) vests the President with 'ample power' to impose entry restrictions *in addition to* those elsewhere enumerated in the INA." *Id.* at 2408 (quoting *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 187 (1993)) (emphasis added).

That is all the President did here, and there is thus no basis for the district court's determination that the Proclamation is somehow "executive lawmaking in a manner that Congress expressly rejected in the public charge provision." *Doe #1*, 2019 WL 6324560, at *14. As we recently explained in granting a stay pending appeal of a different challenge to Executive action, the "public charge" provision recites "factors [that] are to be considered 'at a minimum,'" but "[o]ther factors may be considered as well, giving officials considerable discretion in their decisions."

10

*City and Cty. of S.F.*, 2019 WL 6726131, at *13; *see also id.* ("Congress set out five factors to be taken into account by immigration officials, but expressly did not limit the discretion of officials to those factors.").

The district court nonetheless found it relevant that, in its view, the Proclamation "is unlikely to make any meaningful difference to address the problem" of our country's overburdened healthcare system, and that the Proclamation's "implementation will not result in a reduction to the problem that would then, in turn, result in the restriction no longer being necessary." *Doe #1*, 2019 WL 6324560, at *15. Reasoning such as this improperly supplanted the district court's view for that of the President, to whom the Constitution and Congress through § 1182(f) have accorded great discretion. *See Hawaii*, 138 S. Ct. at 2409.

B

The government will also suffer immediate irreparable harm in the absence of a temporary stay. The district court's order blocks the President from carrying out responsibilities that Congress entrusted to him under § 1182(f), in an area in which the President has his own powers under the Constitution. In the President's judgment, immigrants "who have not demonstrated any ability to pay for their" medical care impose substantial burdens on the American healthcare system, requiring the immediate suspension and limitations that the Proclamation sets forth. Pres. Proc. No. 9945, 84 Fed. Reg. at 53,991. The Proclamation does not apply once

11

an immigrant has been admitted to the United States, *id.* at 53,992–93; Emergency Mot. at 19, so the government can never recover health care costs incurred by individuals admitted during the period that the district court's injunction remains in place. "[S]uch harm is irreparable here because" the government "will not be able to recover monetary damages." *Azar*, 911 F.3d at 581. Nor can the government avoid other associated harms that the Proclamation identifies, such as disruption in the provision of emergency services.

In addition, plaintiffs' claim that the Proclamation will affect substantial numbers of immigrants "seems to prove [the government's] point" on immediate irreparable harm. *City and Cty. of S.F.*, 2019 WL 6726131, at *24. In seeking a preliminary injunction, plaintiffs represented that the Proclamation would "affect[] an estimated two-thirds of all legal immigrants, or 375,000 people" and that its impact would be "immediate." Mot. For Prelim. Inj. at 2, 40, *Doe #1 v. Trump*, Case No. 3:19-cv-01743-SB (D. Or.), ECF No. 46. As we have recognized, assertions like this are "double-edged," because if the Proclamation would prevent the admission of many immigrants unable to pay for their own medical costs, "the harm cited by [the government] is not only irreparable, but significant." *City and Cty. of S.F.*, 2019 WL 6726131, at *24.

That immediate harm is only magnified by the extraordinary scope of the district court's injunction, which short-circuits the procedures for class certification

12

by giving thousands of persons not before the court the relief that the class certification process is designed to evaluate. We have cautioned against the use of nationwide injunctions like the one that the district court issued here. *See East Bay Sanctuary Covenant*, 934 F.3d at 1030 (citing *Azar*, 911 F.3d at 583). We have also made clear that nationwide injunctions must be "necessary to remedy a plaintiff's harm." *Id.* at 1029. The district court did not undertake this analysis, holding that mere "alleged classwide harm" could justify a universal injunction. *Doe #1*, 2019 WL 6324560, at *21. That too was error and would justify nationwide injunctions in every putative class action, contrary to law. *See East Bay Sanctuary Covenant*, 934 F.3d at 1029; *Azar*, 911 F.3d at 582.

It is no answer that an administrative stay would upset the status quo. In the case of stay requests, "[m]aintaining the status quo is not a talisman." *Golden Gate Rest. Ass'n v. City and Cty. of S.F.*, 512 F.3d 1112, 1116 (9th Cir. 2008). And as we have explained, "the Supreme Court . . . did not include preservation of the status quo among the factors regulating the issuance of a stay." *Id.* (quotations omitted). Moreover, while the plaintiffs assume that the status quo is a world without the Presidential Proclamation, for the reasons explained above, the actual status quo is a legal environment in which the President possesses "sweeping proclamation power in § 1182(f)," *Hawaii*, 138 S. Ct. at 2408 (quotations omitted), and in which Proclamation No. 9945 is therefore authorized. As a result, "granting a stay in this

13

case would, in a real sense, preserve rather than change the status quo" because "[i]n the absence of the district court injunction," the Proclamation that was scheduled to take effect on November 3, 2019 "would now be part of the status quo." *Golden Gate Rest. Ass'n*, 512 F.3d at 1116. Plaintiffs' argument therefore has it backwards: "[a] stay simply suspend[s] judicial alteration of the status quo," while the injunctive relief granted below constitutes "judicial intervention" upending it. *Nken*, 556 U.S. at 429 (quotations omitted).

While the Court notes that "[t]he Proclamation has not yet gone into effect," that is only because the district court enjoined it. It should not be that a district court order enjoining a lawful presidential proclamation is immune from a stay simply because it blocked the Proclamation before it could take effect. And I do not think that a district court order that unduly constrains the powers of the people's elected representatives without basis in law should govern for any longer than it already has.

I respectfully dissent.