# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN DOE #1**; *et al.*, | Case No. 3:19-cv-1743-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **DONALD TRUMP**, *et al.*, | |
| Defendants. | |

Stephen Manning and Nadia Dahab, INNOVATION LAW LAB, 333 SW Fifth Avenue, Suite 200, Portland, OR 97204; Karen C. Tumlin and Esther H. Sung, JUSTICE ACTION CENTER, PO Box 27280, Los Angeles, CA 90027; Scott D. Stein and Kevin M. Fee, SIDLEY AUSTIN LLP, One South Dearborn Street, Chicago IL 60603; and Jesse Bless, AMERICAN IMMIGRATION LAWYERS ASSOCIATION, 1301 G. Street, Suite 300, Washington D.C. 20005. Of Attorneys for Plaintiffs.

Joseph H. Hunt, Assistant Attorney General; Billy J. Williams, United States Attorney for the District of Oregon; August E. Flentje, Special Counsel; William C. Peachey, Director, Office of Immigration Litigation; Brian C. Ward, Senior Litigation Counsel; Courtney E. Moran, Trial Attorney; U.S. DEPARTMENT OF JUSTICE, Office of Immigration Litigation, District Court Section, PO Box 868, Ben Franklin Station, Washington D.C., 20044. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

On October 4, 2019, the President of the United States issued Proclamation No. 9945,

titled "Presidential Proclamation on the Suspension of Entry of Immigrants Who Will

Financially Burden the United States Healthcare System" (the "Proclamation"). The

Proclamation requires certain immigrants to show proof of health insurance or sufficient

financial resources to pay for the costs of anticipated health care before those immigrants may

qualify for immigrant visas. On October 30, 2019, Plaintiffs filed their putative class action complaint, alleging that: (1) Defendants violated the Administrative Procedure Act ("APA"); (2) Defendants violated the Fifth Amendment Due Process clause's requirement of equal protection based on race, ethnicity, and national origin; (3) Defendants' actions are *ultra vires*, including that the President's issuance of the Proclamation violates the separation of powers doctrine and is outside the authority delegated to him in 8 U.S.C. § 1182(f); and (4) Defendants violated the Fifth Amendment Due Process clause's procedural due process guarantee.

On November 2, 2019, the Court entered a Temporary Restraining Order, temporarily enjoining Defendants from taking any action to implement or enforce the Proclamation through November 30, 2019. On November 26, 2019, the Court entered a preliminary injunction order, enjoining Defendants from taking any action to implement or enforce the Proclamation until the Court resolves this case on the merits. On April 7, 2020, the Court granted Plaintiffs' motion for class certification, certifying two subclasses. Plaintiffs' motion to compel completion of the administration record and production of a privilege log is before the Court. For the reasons discussed below, Plaintiffs' motion is GRANTED IN PART.

## STANDARDS

### A. Review of Agency Action Incorporating an Executive Order

Under the APA, a court must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2). The APA applies to "agency" action. Because the President is not an agency, a court does not have authority under § 706 to review in isolation Presidential actions such as the Proclamation. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018). A court may, however, review under the APA agency actions that implement or incorporate a Presidential proclamation. *Id.* As the

Ninth Circuit explained:

> However, we may review the substantive validity of the Rule together with the Proclamation. Our power to review "agency action" under § 706 "includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent . . . thereof." 5 U.S.C. § 551(13). The Organizations have challenged the Rule as it incorporates the President's Proclamation. The Rule does not itself provide the criteria for determining when aliens who have entered the United States from Mexico will be deemed ineligible for asylum because it is contingent on something else—the issuance of a presidential proclamation. By itself, the Rule does not affect the eligibility of any alien who wishes to apply for asylum. But the Rule and the Proclamation together create an operative rule of decision for asylum eligibility. It is the substantive rule of decision, not the Rule itself, that the Organizations have challenged under the APA, and insofar as DOJ and DHS have incorporated the Proclamation by reference into the Rule, we may consider the validity of the agency's proposed action, including its "rule . . . or the equivalent." *Id.*; *see also Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) (explaining that agency regulations that implement an executive order are reviewable under the APA). This is consistent with the principle that a "'final' agency action" reviewable under the APA is one that "determines 'rights or obligations from which legal consequences will flow' and marks the 'consummation' of the agency's decisionmaking process." *Hyatt v. Office of Mgmt. & Budget*, 908 F.3d 1165, 1172 (9th Cir. 2018) (internal alterations omitted) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

*Id.* at 770-71.

## B. Considering Documents Outside the Submitted Administrative Record

The APA provides that a court's review under the standard of arbitrary and capricious shall be based on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The whole administrative record "includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). "The whole administrative record, however, is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record. The 'whole' administrative record, therefore, consists of all documents and materials directly or

*indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original) (quotation marks and citations omitted).[1]

"In general, a court reviewing agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). This is to ensure that the reviewing court affords the agency sufficient deference. *Id.* Under the APA, an agency has substantial discretion "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Courts are limited from considering extra-record materials because doing so "inevitably leads the reviewing court to substitute its judgment for that of the agency." *Locke*, 776 F.3d at 992 (quoting *Asarco, Inc. v.*

---

[1] Defendants argue that the administrative record they submitted is entitled to a presumption of completeness, citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977), and *In re United States*, 875 F.3d 1200 (9th Cir.), *vacated by*, 138 S. Ct. 443 (2017) (per curiam). Neither case is persuasive authority supporting Defendants' position. The cited section of *Overton Park* merely states that generally a decision (not the submitted administrative record) of an agency is entitled to a presumption of regularity, but nonetheless is subject to a "thorough, probing, in-depth review." *Id.* at 415. Indeed, in *Overton Park*, the Supreme Court remanded the case so that the district court could consider it on the "full administrative record that was before [the agency]," potentially including testimony by agency officials. *Id.* at 419-20. The Ninth Circuit noted in *In re United States* that the administrative record submitted by the government is entitled to a presumption of completeness, but that opinion was vacated by the Supreme Court. The Court has found no other Ninth Circuit authority so holding. Without more recent authority, the Court follows the Ninth Circuit's statement in *Thompson* about the government's submission of the administrative record.

Even if the presumption applies, however, it can be overcome by clear evidence. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993). A plaintiff can overcome the presumption by identifying the allegedly omitted materials with specificity, as opposed to broad categories, and by providing reasonable, non-speculative grounds for arguing that the agency directly or indirectly considered the materials. *See, e.g.*, *Audubon Soc'y of Portland v. Zinke*, 2017 WL 6376464, at *4 (D. Or. Dec. 12, 2017). The Court finds that those requirements are met for the categories of documents in which the Court grants Plaintiffs' motion.

*E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980)). A reviewing court may not perform a *de novo* review of the agency's action and must "limit[ ] itself to the deferential procedural review that the APA's arbitrary or capricious standard permits." *Id.*

Courts may, however, review extra-record material when:

> (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith.

*City of Las Vegas v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). These exceptions are widely accepted, but are to be "narrowly construed and applied" to ensure that they do not undermine the general rule limiting review to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004). The party seeking admission of the extra-record material "initially bears the burden of demonstrating that a relevant exception applies." *Locke*, 776 F.3d at 993.

## BACKGROUND

On November 15, 2019, the Court issued its Opinion and Order resolving Plaintiffs' motion to compel the administrative record before the preliminary injunction hearing ("PI AR Opinion"). ECF 83. The Court ordered Defendants to produce a partial administrative record relating to the U.S. Department of State ("State Department"), with enough information so that the Court could consider the then-pending motion for preliminary injunction. ECF 83. The Court ordered the filing of the portion of the administrative record that it found to be "most important at this stage of the litigation," recognizing the limited time before the scheduled hearing. ECF 83 at 11. The Court further ordered the parties to "confer on a date for the lodging of the *full* administrative record." *Id.* (emphasis added).

On January 24, 2020, Plaintiffs filed the pending motion. Plaintiffs asserted that the certified administrative record contains only eight additional pages from the partial record produced before the preliminary injunction. Plaintiffs identify five categories of documents they request the Court order be included in the record, with some of those categories including additional subcategories. Defendants responded mainly by arguing that they need only include in the certified administrative record the documents specifically identified by the Court in its PI AR Opinion that were the subject of the partial administrative order requested by the Court before the preliminary injunction, which Defendants asserted they had done. The Court issued an Order clarifying that in its PI AR Opinion the Court required only a partial administrative record sufficient to consider the most critical issues before the preliminary injunction motion, but that the Court expected a full administrative record after it resolved the preliminary injunction motion. ECF 125. The Court set a deadline for Defendants to supplement the administrative record and also established a supplemental briefing schedule for this motion. *Id.*

Defendants did not supplement the administrative record. Instead, Defendants responded in supplemental briefing that no additional documents existed because the State Department had not engaged in any final agency action such as issuing a rule or engaging in other regulatory action. Defendants contend that the documents produced in the certified administrative record are "'all documents the State Department considered, either directly or indirectly' in preparing to implement the Proclamation, including documents related to any definitions or methodology, and related to the amendments to the [Foreign Affairs Manual]."

## DISCUSSION

Plaintiffs move under the APA that the Court order Defendants to complete the administrative record.[2] In disputing Plaintiffs' original motion to compel the lodging of an administrative record, Defendants' primary arguments were that they did not engage in any final agency action and the Proclamation is self-executing without final agency action. The Court found for purposes of compelling the administrative record that the Proclamation was not self-executing and that, at this stage of the litigation, it appeared that the State Department had engaged in final agency action. *Doe #1 v. Trump*, --- F. Supp. 3d ---, 2019 WL 6050111, at *2-4 (D. Or. Nov. 15, 2019). Thus, Defendants must produce the "whole record."

In response to Plaintiffs' motion to complete the administrative record, Defendants repeat their argument that, because the State Department has not engaged in any final agency action, it need not provide additional documents. The Court rejects Defendants' argument for the same reasons the Court rejected it before. Defendants also argue that the Court should deny the motion until it decides a motion to dismiss Plaintiffs' APA claims. The Court also rejects this argument. Defendants argue that Plaintiffs' APA claims should be dismissed because no final agency action has occurred. A complete administrative record is required for the Court to evaluate whether final agency action has occurred. The Court, therefore, considers whether Plaintiffs have met their burden to show whether the requested categories of documents each falls within one or more of the four exceptions.

---

[2] Plaintiffs do not separately move for discovery under their constitutional claims against the agency, as discussed in *California v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2020 WL 1557424 (N.D. Cal. Apr. 1, 2020).

## A. Documents relating to the request for emergency review by the Office of Management and Budget

On October 29, 2019, the State Department issued a "Notice of Information Collection" for "Emergency Review" (the "Emergency Notice"), which was published in the *Federal Register* on October 30, 2019, and provided a comment period of less than 48 hours. The Emergency Notice states that "to implement [the Proclamation] when it goes into effect on November 3, 2019," consular officers "will verbally ask immigrant visa applicants covered by [the Proclamation] whether they will be covered by health insurance in the United States within 30 days of entry to the United States and, if so, for details relating to such insurance." If the applicant says yes, "consular officers will ask for applicants to identify the specific health insurance plan, the date coverage will begin, and such other information related to the insurance plan as the consular officer deems necessary." The Emergency Notice further adds that visa applicants will not be suspended "if they do not have coverage but possess financial resources to pay for reasonably foreseeable medical expenses." It defines "reasonably foreseeable medical expenses" as "those expenses related to existing medical conditions, relating to health issues existing at the time of visa adjudication." The Emergency Notice also states that the State Department "has submitted the information collection request" for "review and approval in accordance with the Paperwork Reduction Act of 1995."

Plaintiffs move to supplement the administrative record with the more than 300 public comments received in response to the Emergency Notice. Plaintiffs note that in the administrative record it states that the State Department was reviewing all the comments received relating to the Emergency Notice and that it would respond to those comments as appropriate. AR 131. This statement, argue Plaintiffs, shows that the comments were materials directly or indirectly considered by agency decisionmakers. Plaintiffs also note that public

comments generally are a standard part of an administrative record. Defendants respond that there is no evidence that the State Department considered the comments before deciding on its methodology, definitions, or implementation of the Proclamation, and that the Emergency Notice was simply a requirement under the Paperwork Reduction Act.

The Court notes that without reviewing the public comments, the State Department's response to those comments (if there are any), and the rest of the administrative record, it is difficult to determine whether the State Department considered those public comments, or even incorporated any of them, in its decisionmaking. Furthermore, although a court "must not substitute its own judgment for that of the [a]gency," it must "engage in a substantial inquiry" of the agency's action. *Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993) (quotation marks omitted). This may include reviewing extra-record material, because, as explained by the U.S. Court of Appeals for the Ninth Circuit:

> It will often be impossible . . . for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not. The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required to take the agency's word that it considered all relevant matters.

*Asarco*, 616 F.2d at 1160. Thus, a court may look to extra-record material "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Id.*

The Emergency Notice was the first time public comments were received on something related to the Proclamation. It was the first time public comments were received relating to the State Department's proposed methodology for considering immigrant visa applicants under the Proclamation and definitions filling in some of the gaps where the Proclamation offered no guidance or included vague terms. Public comments relating to the Emergency Notice, therefore,

may well have provided to the State Department relevant and important information for the State Department to consider in implementing the Proclamation. The contents of the Emergency Notice directly relates to Plaintiffs' allegations. Simply because the State Department promulgated the Emergency Notice under the Paperwork Reduction Act does not insulate public comments received in response to the Emergency Notice, or any response by the State Department to those public comments, from being included in the administrative record. The Court finds that these documents fall within both the first and second exceptions for adding materials to the record. Plaintiffs' motion in this category is granted, and Defendants shall supplement the record with the public comments to the Emergency Notice and any response by the State Department.[3]

## B. Documents relating to the public charge rule

Plaintiffs move to include in the administrative record documents relating to the public charge rule and questionnaire, and redacted portions of documents relating to the interim public

---

[3] Some district courts have distinguished "supplementing" from "completing" the record. *See, e.g.*, *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019) (noting that "supplementing" and "completing" the administrative record "are two distinct concepts: 'completing the record' refers to including 'materials which were actually considered by the agency, yet omitted from the administrative record,' whereas 'supplementing the record' refers to including 'materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry'" (quoting *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010)). The Ninth Circuit, however, has discussed including documents that an agency has relied on as "supplementing" the record. *See Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("When it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate. The government relies on cases denying supplementation of the record with information on the merits that was *never* presented to the agency. Here, however, the material the environmental groups seek to have included in the record is material that allegedly *was* before the agency. Therefore, supplementation is proper." (emphasis in original) (citations omitted)). The Court, therefore, does not treat "supplementing" and "completing" the record as different concepts. The Court notes, however, that Plaintiffs argue that all the documents they request the Court require Defendants add to the administrative record were directly or indirectly considered by the State Department.

charge final rule. Plaintiffs assert that the record shows that Defendants have instructed consular

officers that determinations under the public charge rule and the Proclamation are "related" and

that the public charge questionnaire "will also be useful to posts in adjudicating both Public

Charge and the Proclamation." AR 118, 120. Plaintiffs also contend that the record shows that

Defendants have instructed consular officers that immigrant visa decisions under the public

charge rule and the Proclamation overlap in several ways. AR 118. Plaintiffs argue that for

Defendants to make these statements and provide this guidance to consular officers, agency

officials must have directly or indirectly considered public charge materials in making decisions

to implement the Proclamation. Plaintiffs also argue that the public charge related redactions

should be removed because other public charge related information is included in those

documents and "[i]t is difficult to justify redacting a portion of a document as a being non-

responsive . . . while the other portion was indeed considered and has been provided. At the very

least, . . . these portions would be a part of the record based on indirect consideration . . . ." *City

of Laguna Niguel v. Fed. Emergency Mgmt. Ag.*, 2009 WL 10687971, at *6 (C.D. Cal. Nov. 20,

2009).

       Defendants respond that the redacted document relates to a webinar training provided to

consular officers that the State Department provided on two different topics—the Proclamation

and the new public charge rule. Defendants redacted the portion of the training relating to the

public charge rule and included in the record the portion relating to the Proclamation. Defendants

argue that the portion relating to the public charge rule, and the separate public comments and

other documents relating to the public charge rule, are not properly included in the administrative

record. Defendants assert that there is no evidence that the State Department relied on these

documents in implementing the Proclamation.

The exceptions to reviewing the certified administrative record are to be narrowly construed and applied. *Lands Council*, 395 F.3d at 1030. The mere fact that the State Department discussed in one webinar two separate upcoming changes affecting immigrant adjudications—the new public charge rule and the Proclamation—does not mean that both must be included in the same administrative record. Additionally, the public charge questionnaire, which requests information about health insurance and financial resources, logically will provide some information that is relevant to the determination under the Proclamation. This fact does not, however, mean that information relating to the public charge rule was directly or indirectly considered by the State Department in making decisions implementing the Proclamation. Plaintiffs have not met their burden to show that documents relating to the public charge rule should be part of the administrative record. Plaintiffs' motion is denied on this category of documents.

## C. Documents relating to agency decisions implementing the Proclamation

Plaintiffs argue that the record of litigation in this case shows that Defendants have made decisions for which there are no documents in the administrative record. Plaintiffs note that Defendants have asserted before this Court and the Ninth Circuit that an immigrant visa applicant may switch to a non-"approved" health insurance plan after entry into the United States. *See, e.g.*, ECF 84 at 16. Plaintiffs argue that nothing in the administrative record reflects or supports how Defendants construed the Proclamation in such a manner. Plaintiffs further argue that nothing in the record shows how such an interpretation aligns with the Proclamation's express penalties for "circumvent[ing] the application of th[e] proclamation through fraud [or] willful misrepresentation of a material fact," AR 5, which itself is a lifetime bar to admission under the INA. *See* 8 U.S.C. § 1182(a)(6)(C)(i).

Plaintiffs also argue that the Proclamation states that certain actions lead to an immigrant becoming a priority for removal by the Department of Homeland Security ("DHS"), but the record does not have any communications between the State Department and DHS. Plaintiffs further note that the State Department provided guidance that consular officers need not consider whether the "approved health insurance plan" that the individual has bought will actually cover the immigrant's preexisting medical conditions. AR 115. Similarly, the State Department provided guidance to consular officers that "coverage by a family member's health plan qualifies as approved health insurance. This is true even if the coverage is a subsidized health plan on a state's individual market." AR 94. Plaintiffs assert that such a plan is not approved under the Proclamation because only unsubsidized plans are approved plans. Plaintiffs argue that the administrative record does not show how the State Department made these various decisions.

Defendants respond to each argument by Plaintiffs: (1) Defendants' statement about switching plans was that an immigrant can first buy an approved plan and then switch to a different plan, and that merely "references the terms of the Proclamation"; (2) records relating to DHS are not relevant because the Court only ordered records from the State Department; and (3) The Proclamation specifically allows for a family's member plan as an approved plan. Defendants did not respond to Plaintiffs' argument about the State Department's guidance that consular officers need not consider whether approved health insurance plans will actually cover preexisting conditions.

The Court agrees with Defendants' last argument. The Proclamation specifically lists a family member's plan as a separate type of approved plan, in addition to unsubsidized plans. Plaintiffs' motion is denied with respect to documents relating to this alleged "decision."

As for Defendants' first argument, relating to the first subset of documents requested by Plaintiffs, Defendants have not cited what statement in the Proclamation supports the conclusion that an immigrant visa applicant can purchase an approved plan before entry into the United States and then switch plans after entry, either in their briefs related to this motion or in their original assertion of this argument in the brief in opposition to Plaintiffs' motion for preliminary injunction. The State Department may have made this interpretation to implement the Proclamation for considering immigrant visa adjudication. The State Department also may have interpreted the Proclamation in this way solely for litigation purposes, perhaps even solely through counsel. Even so, "[a] relationship between an attorney and a client is one of agent and principal. And [a]n agent's knowledge acquired within the scope of the agency is imputed to the principal, regardless of whether the agent actually communicates that knowledge to the principal." *Westerlund Log Handlers, LLC v. Esler*, 2018 WL 614706, at *9 (D. Or. Jan. 29, 2018) (quoting *Atkeson v. T & K Lands, LLC*, 258 Or. App. 373, 382 (2013)). Thus, regardless of the impetus for this interpretation of the Proclamation, it is an interpretation made by the State Department.

The Court noted before that final agency action is decisionmaking that is final, direct, immediate, and has a direct effect on day-to-day business. *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992). Courts "have long taken" a "pragmatic approach" to finality. *U.S. Army Corps of Engineers v. Hawkes Co.,* 136 S. Ct. 1807, 1815 (2016); *see also Gill v. United States Dep't of Justice*, 913 F.3d 1179, 1185 (9th Cir. 2019) (noting that courts can look to the "practical effects" of agency action and "agency action can be final even if its legal or practical effects are contingent on a future event"). Thus, various types of agency action can be considered final action. The contours of the decision by the agency relating to the allowance of immigrant

visa applicants to switch plans after entry is unknown because no records have been produced. Plaintiffs' motion is granted relating to these documents. For the same reasons, Plaintiffs' motion is granted with for documents relating to the State Department's interpretation that consular officer need not consider whether the immigrant's health insurance plan will actual cover preexisting medical conditions.

Regarding Plaintiffs' second requested category, State Department communications with DHS, Defendants' argument is unavailing. Defendants argue that the Court did not order that DHS needs to produce documents. Plaintiffs, however, are asking for State Department documents that reflect communications with DHS. That they reflect communications with DHS as opposed to some other agency does not render them outside the Court's order. To the extent there are communications between the State Department and DHS relating to implementing this aspect of the Proclamation, those documents must be in the administrative record. Plaintiffs' motion is granted relating to these documents.

**D.  Names of agency officials**

Defendants redacted in the administrative record the names of all State Department officials below the Deputy Assistant Secretary level. Plaintiffs argue that Defendants provide no legal authority for this redaction. Defendants respond that they redacted these names to avoid the need to file the record under seal. Defendants also argue that it is Plaintiffs' burden to show that names of agency officials are materials directly or indirectly relied on by the State Department to compel their production.

The Court disagrees with how Defendants frame the question. For this category of information, Plaintiffs are arguing that Defendants failed to comply with their original burden of producing the documents in an unredacted form. The Court agrees. Defendants' assertion that they did not want to file the administrative record under seal is not a legitimate basis on which

Defendants may avoid their legal obligations to lodge a complete administrative record. There are other options, such as filing under seal only those affected pages of the record. Plaintiffs' motion is granted for this category, and Defendants must provide unredacted documents

**E.  Documents referenced in the record or supporting data considered by the agencies**

Plaintiffs request several items that are either referenced in the record, or that are statements in the record that imply that there should be supporting data or additional records directly or indirectly considered by the State Department. The Court addresses each in turn.

**1.  Documents relating to changes to the Foreign Affairs Manual**

The first subcategory of documents requested by Plaintiffs includes U.S. Secretary of State Mike Pompeo's approval of changes to the Foreign Affairs Manual and a Declaration by Rachel Sunden, Special Assistant in the Visa Office of the Bureau of Consular Affairs, that was signed on November 20, 2019, and filed with the partial administrative record that Defendants previously lodged. The Court disagrees that Ms. Sunden's Declaration represents a document directly or indirectly relied on by the State Department in engaging in final agency action related to the Proclamation. The Court agrees, however, that the record shows that on October 28, 2019, Secretary Pompeo approved changes to the Foreign Affairs Manual. Plaintiffs' assertion that the State Department would directly or indirectly consider this approval in engaging in final agency action related to the Proclamation is reasonable. Plaintiffs' motion is granted with respect to documents relating to Secretary Pompeo's approval of the changes to the Foreign Affairs Manual and denied for Ms. Sunden's Declaration.

**2.  Data relating to health care costs**

Plaintiffs move to compel completion of the administrative record with information from the Centers for Disease Control and Prevention ("CDC") and the U.S. Department of Health and Human Services ("HHS") relating to the care costs of certain medical conditions and chronic

diseases. Plaintiffs note that the "record" cites information from both sources on "costs associated with certain chronic diseases," which "can be costly to treat" and suggest that "an alien is a high risk of incurring significant medical costs if he or she has such a condition." AR 47. This citation to the record is from the October 11, 2019, Federal Register publication of the notice relating to the new public charge rule. As discussed above, the new public charge rule was issued at about the same time as the Proclamation and the State Department provided guidance regarding the relationship between the two. Issues relating to health insurance and costs of medical are areas of significant overlap.

Defendants argue that there is no information in the record to support the conclusion that the State Department considered the CDC or HHS documents relating to costs of medical treatment in implementing the Proclamation. The record shows, however, that: (1) the State Department must consider the costs of treatment in implementing the Proclamation; (2) the State Department did not provide documents relating to how it considered costs of treatment related to the Proclamation; (3) the State Department specifically referenced CDC and HHS documents with respect to how the State Department considered costs of treatment relating to the public charge rule; (4) the new public charge rule and Proclamation were being implemented at around the same time and with significant overlap; and (5) the State Department specifically referenced the new public charge rule and the Proclamation as having overlap, being related, and having certain determinations that would relate to the adjudication of both issues. As a result, it is a reasonable and non-speculative assertion by Plaintiffs that the HHS and CDC documents cited by the State Department relating to the costs of health care treatment for the public charge rule were considered by the State Department with respect to the Proclamation. Plaintiffs' motion is granted for this subcategory.

### 3. Income survey

Plaintiffs request inclusion of "DHS's analysis of Survey of Income and Program Participation," referred to several times in the administrative record. *See, e.g.*, AR 45, 47, 48. Defendants did not respond to Plaintiffs' argument with respect to this request.

In the notice published in the *Federal Register* on the public charge rule, the State Department stated that

> consular officers will consider as a heavily weighted positive factor that an alien is covered by private health insurance (other than health insurance obtained with premium tax credits under the Affordable Care Act) that can be used in the United States during the entire period of the alien's anticipated stay in the United States. This approach is supported by DHS's analysis of Survey of Income and Program Participation data, which indicates that the fact that an alien has health insurance is indicative of the alien's ability to be self-sufficient. In excluding health insurance obtained with premium tax credits under the Affordable Care Act from the category of heavily weighted positive factors, though not from consideration as a positive factor, the Department observes that DHS adopted this approach in its final rule.

AR 48. This same approach, emphasizing private health insurance and excluding subsidized plans under the Affordable Care Act, is in the Proclamation, which is incorporated into the alleged agency action and together form the rule of decision. *E. Bay Sanctuary*, 932 F.3d at 770-71. Thus, this it is reasonable that this document was directly or indirectly considered by decisionmakers. Plaintiffs' motion is granted for this document.

### 4. Documents supporting estimates in the record

Plaintiffs request the inclusion in the administrative record of documents that support numerical estimates in the record. As reflected in the Emergency Notice, the State Department estimated that information would need to be gathered from 450,500 immigrant visa applicants. As stated in the webinar training, the State Department estimated that the lifetime cost to treat diabetes is $85,000. As stated in the Proclamation, which is necessarily incorporated into final

agency action implementing the Proclamation, it was estimated that uncompensated care costs have exceeded $35 billion in each of the last 10 years and stated that "data show[s] that lawful immigrants are about three times more likely than United States citizens to lack health insurance." Plaintiffs argue that there must be some basis for these estimates and those would have been directly or indirectly considered.

Defendants respond that the 450,500 figure was calculated by estimating the number of immigrant applications received annually and there is no associated document that could be produced. The Court accepts this response and denies Plaintiffs' motion for this subcategory.

Defendants also respond that the information relating to the cost to treat diabetes was information given in response to a question by a webinar participant, was information not specifically known, and that the webinar respondent noted that consular officers should consider such cases on a case-by-case basis. A review of the transcript, however, shows that when asked about how to determine costs of medical treatment, the general response was that some medical costs would be provided by "panel physicians." AR 114. When asked specifically about diabetes, at first the response was that the responder did not "believe" he had that information and that consular officers would have to review applicants with diabetes case-by-case. AR 115. Soon after, however, the responder stated: "Okay, so how much does [it] cost to treat diabetes? 85,000 over a lifetime. Um, so that is, um, that is something to take into consideration and you do want to talk with the applicant about how they plan to cover those costs." AR 116. Thus, the information changed from the original answer.

The State Department provided a specific answer to its consular officers and had some basis to provide that answer. The basis for that answer, and similar types of decisions, may well

have a direct and immediate effect on immigrant visa applicants, affecting their day-to-day rights. Thus, that basis must be part of the administrative record.

Finally, Defendants argue that Plaintiffs cannot directly challenge the Proclamation under the APA and thus Plaintiffs cannot challenge any statements in the Proclamation and request supporting documentation. The Ninth Circuit, however, has clarified that agency action that implements and incorporates a Presidential proclamation allows court review of the proclamation and agency action together as an inclusive, whole agency action. *E. Bay Sanctuary*, 932 F.3d at 770-71. That is what Plaintiffs' allege. Any final agency action here would necessarily incorporate the Proclamation to determine much of the criteria for when an immigrant visa applicant would be ineligible because of the new health insurance requirement. Thus, it would be the agency action and the Proclamation together that would create the operative rule of decision for visa eligibility. *Id.* Accordingly, the Proclamation is part of any State Department final agency action. To the extent documents were before the State Department that relate to the Proclamation's statement about the burden on the U.S. economy from health care costs or the portion of that burden caused by immigrants, those documents must be part of the administrative record. Plaintiffs' motion is granted for this subcategory.

## F.  Privilege Log

Plaintiffs move the Court to compel Defendants to submit a privilege log for all documents that they withhold based on any privilege, including the deliberative process privilege. Defendants respond that they have provided a privilege log for all applicable claims of privilege except the deliberative process privilege. Defendants argue that documents subject to the deliberative process privilege properly are not part of the administrative record under the APA and thus Defendants need not include those documents in a privilege log.

Defendants concede that the Ninth Circuit has not directly addressed whether the federal government must produce a privilege log or whether the government may exclude deliberative documents from the administrative record altogether in an APA case. Defendants cite out of circuit cases and cases from district courts in this circuit holding that agency deliberative documents need not be included in the recorded or on a privilege log absent a showing of bad faith. *See* ECF 124 at 10-11 (citing cases).

The Ninth Circuit indirectly addressed the issue in *In re United States*, 875 F.3d 1200 (9th Cir.), *vacated by* 138 S. Ct. 443 (2017) (per curiam). In the mandamus context, the Ninth Circuit reviewed for clear error the district court's order requiring that the government produce a privilege log and provide deliberative materials for *in camera* review. *Id.* at 1210. The Ninth Circuit cited several district court opinions in APA cases requiring a privilege log and *in camera* review of deliberative materials. *Id.* The court held that the district court's order was not clearly erroneous, noting both that the deliberative materials did not involve the mental processes of individual agency members and the lack of controlling precedent on the issue. *Id.* This opinion, however, was vacated by the Supreme Court.

In vacating the Ninth Circuit's opinion, the Supreme Court noted the government's serious arguments that at least a portion of the district court's order of production was too broad. 138 S. Ct. at 445. The Supreme Court also noted that the government had moved to dismiss, raising threshold issues on jurisdiction and justiciability, and had moved to stay the district court's order pending resolution of that motion. *Id.* The Court held that under the unique facts of the case, before compelling production of materials the agency, the district court first should consider the agency's arguments on those threshold issues. *Id.* The Supreme Court admonished the district court not to "compel the Government to disclose any document that the

Government believes is privileged without first providing the Government with the opportunity to argue the [threshold] issue." *Id.*

Defendants have stated their intention to file a motion to dismiss Plaintiffs' APA claims. Defendants repeatedly have sought extensions of time and have not yet filed their motion. Even so, the Court considers this aspect of Plaintiffs' motion under the Supreme Court's guidance of *In re United States*. The Court denies Plaintiffs' motion relating to deliberative materials, without prejudice and with leave to renew if any of Plaintiffs' APA claims survive Defendants' facial challenges.

## CONCLUSION

Plaintiffs' Motion to Compel Completion of Administrative Record and Privilege Log (ECF 119) is GRANTED IN PART AND DENIED IN PART, as set forth herein.

**IT IS SO ORDERED**.

DATED this 13th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge