**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
**Tess Hellgren** (SBN 191622)
tess@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; GABINO SORIANO CASTELLANOS; and LATINO NETWORK,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,

Defendants.

Case No.: 3:19-cv-01743-SI

**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

On April 22, 2020, the President issued Presidential Proclamation 10014 ("the Proclamation"), which shut down the visa preference relative system with just a single day's notice. For certain underage members of the Visa Applicant Subclass, that Proclamation presented an immediate, existential dilemma: without access to emergency visa adjudication services, which the Proclamation now potentially forecloses, their expected plan to immigrate, and to be reunited with their families, would functionally be extinguished. And with only 24 hours' notice before the Proclamation took effect, they were also left entirely without a remedy.

Because the relief afforded by this Court's injunction was intended to provide those individuals a visa adjudication free of the requirements of Defendants' unlawful Healthcare Proclamation, and because the human biological clock will not stop ticking over the next 21 days, Plaintiffs brought this emergency motion under the All Writs Act. The relief that Plaintiffs seek is limited to a 21-day period to protect those individuals who have no other remedy available and who would have needed to request an emergency interview during that 21-day period of time. For all others, including those who may age out at a later date, the existential dilemma that Defendants have created may be remedied by more conventional means.

## ARGUMENT

### I. The Presidential Proclamation places the F2A Preference Visa Applicant Subclass members at imminent risk of harm.

Presidential Proclamation 10014 applies to members of Plaintiffs' Visa Applicant Subclass and places subclass members in the F2A preference category at risk of imminent harm. The Proclamation does not contain a specific exception for F2A preference relatives, and nothing in the State Department's updated guidance, or in the Declaration from Brianne Marwaha ("Marwaha Declaration"), ECF 137-2, suggests that "mission critical or emergency services" are definitively available for those F2A preference relatives who are about to turn 21. Without further assurance and protection for these class members, the Proclamation places F2A preference relatives at grave risk of imminent harm.

On March 20, 2020, the State Department suspended the operation of all routine visa services at all U.S. embassies and consulates because of the COVID-19 pandemic.[1] Since that time, as is confirmed in the Marwaha Declaration, consulates have continued "to provide mission critical or emergency services to the extent they are able to do so." ECF 137-2. "Mission critical or emergency services" include, for those not subject to the Proclamation, the processing of immigrant visa application cases where the applicant would soon turn 21 and age out of his or her immigrant visa classification. ECF 137-2, ¶ 2.

But the Proclamation potentially extinguishes the availability of those services for everyone subject to its terms, including the members of the Visa Applicant Subclass on whose behalf Plaintiffs currently seek relief. Indeed, Defendants do not contend otherwise. For preference relatives who face an imminent risk of aging out by the simple passage of time, the Proclamation contains no specific exceptions at all. As a result, they face a grave risk of automatically converting to a F2B family-based preference, drastically increasing their wait time and separating them from their families for decades, and potentially, indefinitely.

The Marwaha Declaration does not establish otherwise. Marwaha avers that "[t]he Department's inclusion in 'mission critical or emergency services' of those cases involving an applicant likely to age out of their visa classification by turning 21 has not changed." ECF 137-2, ¶ 4. That statement implies, but does not confirm, that F2A applicants may continue to seek interviews to prevent aging out even though they remain subject to the Proclamation. But in the very next sentence, Marwaha avers that "[p]osts may continue to schedule interviews, as resources allow, for mission critical and emergency cases *where a post determines the applicant may qualify for an exception under the Presidential Proclamation*." *Id.* That statement contradicts the previous sentence, or at the very least obfuscates that age-out applicants may also

---

[1] Travel.state.gov, U.S. Department of State–Bureau of Consular Affairs, Suspension of Routine Visa Services (Mar. 20, 2020), https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html.

have to meet an exception under the Proclamation to protect their current visa applicant status.[2] In any event, visa applicants at risk of aging out of the F2A preference category do not automatically qualify for an exception under the Proclamation. Contrary to the Marwaha Declaration, then, the State Department's operation of "mission critical or emergency services" for cases involving applicants likely to age out of their visa preference category has *absolutely* changed—for many applicants, it is now potentially foreclosed entirely.

Defendants attempt to minimize the risk of imminent harm to F2A applicants. They note that "if a beneficiary's CSPA age is under 21 and she has sought to acquire an immigrant visa by submitting an online application or paying their immigrant visa applications fees—steps taken prior to appearing for an in-person interview or even completing the application—then the beneficiary will maintain her CSPA age, so long as the beneficiary does not marry and the petitioner maintains her immigration status." Opp. at 11 (citing 9 Foreign Affairs Manual (FAM) 502.1-1(D)(6)). That statement suggests, incorrectly, that all F2A visa applicants who pay their fees and submit an application will protect themselves against aging out.

The CSPA's age calculation is not so straightforward and forgiving, however. To calculate it, one must take the adjusted age of the child in the F2A or derivative category at the time the priority date in the relevant category becomes current using Chart A, Final Action Dates, of the monthly Visa Bulletin.[3] If the child is under 21 on that date, their F2A or derivative

---

2 The Marhawa Declaration's contradictory statements led Plaintiffs to seek clarification through a phone call to Defendants before filing this reply. On that call, Plaintiffs understood that age-out children could seek emergency interviews but that the Proclamation would apply to them. Plaintiffs understood that the "national interest" exception within the Proclamation would need to be satisfied and that the timing of that determination is unknown. Plaintiffs understood that age-out children would not have access to an emergency interview under the policy in place prior to the effective date of the Proclamation. Further, Plaintiffs understand that the Defendants have not explained how a determination would be made as to whether the applicant actually satisfies a national interest exception or whether such a showing would be possible.

3 9 FAM 502.1-1(D)(4)(a) ("For preference category and derivative petitions, the 'CSPA age" is determined on the date that the visa, or in the case of derivative beneficiaries, the principal alien's visa became available (i.e., the date on which the priority date became current in

status will be preserved, provided they seek lawful permanent resident status within one year. But there are times when the dates for filing are current that allow applicants to file the DS-260, but the final action date for receipt of the visa is not current. A child who pays the fees can still age out if he or she turns 21 prior to the visa becoming current according to the Final Action Dates in the relevant monthly bulletin.[4]

## II. Plaintiffs properly invoke this Court's authority under the All Writs Act.

Plaintiffs properly invoke this Court's authority under the All Writs Act to "issue all writs necessary or appropriate in aid of [its] respective jurisdictio[n] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Pursuant to the Act, the Court may grant injunctive relief whenever it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Klay v. United Healthgrp, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (quoting *Adams v. United States,* 317 U.S. 269, 273 (1942)). The Court's use of its equitable authority to preserve its jurisdiction is necessary and appropriate here to restore access to urgent and emergency consular processing and visa adjudication services to class member children in danger of losing their access to the visa process, and thus to protect those members' claims from becoming mooted by the new Proclamation. Because the factors the Court would consider in issuing a traditional preliminary injunction do not apply under the All Writs Act, Plaintiffs need not address the legality of the Proclamation in order to obtain this relief.

---

the Application Final Action Dates and the petition was approved, whichever came later). The CSPA age is the result of subtracting the number of days that the IV petition was pending with USCIS (from date of receipt to date of approval, including any period of administrative review) from the actual age of the applicant on the date that the visa became available.").

4 Charles Wheeler, *Filing for adjustment or immigrant visas using CSPA*, CLINIC (Mar. 23, 2018), https://cliniclegal.org/resources/family-based-immigration-law/filing-adjustment-or-immigrant-visas-using-cspa.

**A. Plaintiffs' seek to preserve and protect the ongoing exercise of this Court's jurisdiction.**

Plaintiffs request injunctive relief to preserve this Court's jurisdiction over their underlying claims, which seek to ensure class members' access to the visa adjudication process, and to protect the injunctive relief that this Court already has afforded. In the absence of Plaintiffs' requested relief, the Proclamation will functionally extinguish the visa eligibility of certain underage members of the Visa Applicant Subclass without any adequate notice to those members. If that occurs, the Proclamation, with only one day's notice, will have terminated their underlying claims for relief and render meaningless the injunctive relief the Court has already issued. Defendants' contention—that the All Writs Act relief is inappropriate because Plaintiffs' Motion is unrelated to this lawsuit, Opposition at 13–23—must be rejected.

In their Motion, Plaintiffs seek to protect the rights of otherwise eligible Visa Applicant Subclass members to access the injunctive relief this Court already has afforded. That injunctive relief ensures that members of the certified Visa Applicant Subclass can access the visa adjudication process free from the unlawful requirements of Defendants' Healthcare Proclamation. ECF 95, at 48. For Subclass members who are at imminent risk of aging out from their visa category, and therefore potentially their visa eligibility, Defendants' new Proclamation undermines the ability of the Court's injunction to maintain the status quo or actually provide relief. Without immediate relief, Subclass members who age out over the next 21 days will no longer have access to a visa process and will be unable to benefit from the relief ordered by this Court.

Contrary to Defendants' assertions, the All Writs Act relief that Plaintiffs seek is virtually indistinguishable like the All Writs Act relief that the Ninth Circuit upheld in *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). There, the district court issued a traditional preliminary injunction and an All Writs Act injunction restraining the application of the asylum ban—a policy plaintiffs had not challenged in their underlying complaint—because the ban "would effectively moot Plaintiffs' request for relief in the underlying action by extinguishing their

asylum claims." *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 869 (S.D. Cal. 2019); *see also id.* ("Should the Asylum Ban be applied to Plaintiffs, these individuals' asylum claims would be foreclosed, as would any claim and request for relief regarding their right to access the asylum process."). The Ninth Circuit upheld the injunction, concluding that the district court properly had exercised its authority under the All Writs Act and that both the request for injunctive relief and the underlying complaint "sought to preserve class members' access to the asylum process." *Al Otro Lado*, 952 F.3d at 1006 n.6.[5]

Likewise here, Plaintiffs' underlying complaint and their request for injunctive relief seek to preserve qualified immigrants' access to the visa process and prevent their claims from becoming moot by operation, without notice, of Defendants' new Proclamation. And as the *Al Otro Lado* plaintiffs had alleged an "unlawful, widespread pattern and practice of denying asylum seekers access to the asylum process" in their complaint, *see id.* at 1006 n.6, Plaintiffs' underlying complaint alleges that the Healthcare Proclamation unlawfully denies visas to otherwise qualified intending immigrants. *See, e.g.*, ECF 100, at ¶¶ 1 (Healthcare Proclamation would "block nearly two thirds of all prospective legal immigrants . . . from receiving visas and coming to the United States"); 3 (Healthcare Proclamation creates "requirements that will be extremely difficult, or impossible, for most otherwise qualified immigrant visa applicants to satisfy"); 6 (Healthcare Proclamation is "poised to create a new class of otherwise qualified immigrants who are barred from entry"); 7 (Healthcare Proclamation is a "too[l] that the Trump Administration is seeking to use in order to exclude [otherwise qualified] prospective immigrants"); 34 (Healthcare Proclamation "absolutely bars the entry of" otherwise qualified prospective immigrants). Plaintiffs' request for injunctive relief similarly challenges a policy that

---

[5] The Ninth Circuit held that the district court had properly issued an All Writs Act injunction and then cited *Pacific Radiation Oncology*, 810 F.3d at 636, for the proposition that the plaintiffs in *Al Otro Lado* had also shown a "sufficient relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." Plaintiffs do not read the Ninth Circuit's analysis to import the standard from *Pac. Radiation Oncology* into the All Writs Act analysis. But as explained above, even if the standard does apply, Plaintiffs meet it.

would eliminate visa eligibility for otherwise qualified intending immigrants – specifically, the F2A preference members of the Visa Applicant Subclass – and thus deny those subclass members the relief previously afforded by this Court. *See also Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 544 (9th Cir. 1987) ("One of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity of orders previously issued.").

**B. The traditional injunctive factors do not apply under the All Writs Act.**

Defendants incorrectly contend that the standard established in *Winter v. Natural Res. Def. Council, Inc.*, 55 U.S. 674, 689–90 (2008), applies under the All Writs Act. Opp. at 12. As Plaintiffs explained in their Motion, however, an All Writs Act injunction "stem[s] from very different concerns than those motivating preliminary injunctions," and therefore need not comply with that standard. *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985). As the Eleventh Circuit has explained,

> Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior. The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.

*Klay*, 376 F.3d at1100;[6] *Flores v. Barr*, 407 F. Supp. 3d 909, 929 n.16 (C.D. Cal. 2019) ("The Ninth Circuit does not appear to require courts to examine the traditional requirements for

---

[6] Defendants' citation to *Klay* ignores the Eleventh Circuit's extensive discussion of the distinction between "traditional" injunctions and All Writs Act injunctions. Instead, Defendants cite *Klay*'s footnote, which merely points out that the All Writs Act may not be used to circumvent the traditional requirements for an injunction "when a party is in reality seeking a 'traditional' injunction." *Klay*, 376 F.3d at 1101 n.13. This observation is inapplicable here, where Plaintiffs have properly asserted equitable relief under the principles of the All Writs Act itself.

obtaining injunctive relief in order to issue such relief under the All Writs Act." (citing *M&P Invs.*, 46 F. App'x 876, 878 (9th Cir. 2002)).[7]

Nevertheless, Defendants argue at length that the Proclamation is lawful, and that Plaintiffs have not challenged its legality. Opp. at 3, 23–26. But that, of course, is irrelevant. As the Supreme Court has made clear, "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . *and encompasses even those who have not taken any affirmative action to hinder justice*." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (emphasis added).

The Ninth Circuit's decision in *Makekau v. Hawaii*, 943 F.3d 1200, 1204 (9th Cir. 2019), is not to the contrary. There, the Ninth Circuit considered whether a plaintiff who obtains an All

---

[7] Authority cited by Defendants, Opp. at 12, 22, does not state otherwise. *See, e.g.*, n.6 *supra*; *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 (7th Cir. 2017) (addressing injunctive requirements only insofar as they pertain to "anti-suit injunctions"); *Fla. Med. Ass'n v. U.S. Dep't of HEW*, 601 F.2d 199, 202 (5th Cir. 1979) (involving an injunction going to the merits of the case-in-chief); *Ben David v. Travisono*, 495 F.2d 562, 563 (1st Cir. 1974) (affirming merely "the common sense rule that a court should let the parties and an appellate court know why it acts, and on what factual basis"). In *Wisconsin Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers), Chief Justice Rehnquist, sitting in his capacity as a Circuit Justice, addressed his authority to grant an All Writs Act injunction pending appeal, that would bar the enforcement of an Act of Congress. *Id.* at 1305. In that situation, he observed that such extreme power was only appropriately exercised by the Supreme Court where the legal rights at issue are "indisputably clear." *Id.* at 1306 (quoting to a line of single-justice decisions that use similar language to characterize when the Supreme Court should intervene to provide mandatory injunctive relief); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers) (citing same language to characterize a Circuit Justice's use of injunctive power while a case is pending appeal); *Klay*, 376 F.3d at 1101 n.13 (noting that "[w]e have found no other cases involving injunctions under the All Writs Act where this requirement, concerning the 'indisputably clear' nature of the right, is applied").

Writs Act injunction qualifies as the "prevailing party" for fee-shifting purposes. *Id.* In holding that it did not, the court noted that the Supreme Court's decision in *Dunn v. McNabb*, 138 S. Ct. 369 (2017), on which the plaintiff had relied, stood for "the unremarkable proposition that the All Writs Act does not erase *separate* legal requirements for a given type of claim." *Id.* In other words, *Makekau* stands for the principle that a party who wishes to recover attorneys' fees in an action must satisfy the legal requirements of a prevailing party—and an All Writs Act injunction does not satisfy these requirements precisely because an All Writs Act injunction does not require the court to evaluate the legality of the enjoined action. And in *Dunn*, the Ninth Circuit observed that a plaintiff who seeks and obtains a stay of execution under the All Writs Act always must show "a significant possibility of success on the merits"—but that requirement has nothing to do with the All Writs Act. *Id.* Under the All Writs Act, Plaintiffs need not challenge the legality of the action they seek to restrain.[8]

Nor does *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636–37 (9th Cir. 2015), help Defendants. There, the Ninth Circuit upheld a district court's denial of a *traditional* preliminary injunction because the plaintiff had not asked for relief on the claims in its underlying complaint. The Ninth Circuit explained that the plaintiff not only had "fail[ed] to explain" how the claims underlying its motion for injunctive relief related to the claims in its complaint, but also had actually "admitted in the district court that its motion for injunctive relief has nothing to do with the underlying claim." *Id.* at 637. Applying the traditional preliminary injunction standard, the Ninth Circuit upheld the denial of injunctive relief. *Id.* at 638. *Pacific*

8 To be clear, Plaintiffs do not concede that the Proclamation is lawful. Indeed, the Proclamation likely suffers the same flaws as this Court found in the Healthcare Proclamation—*i.e.*, it was issued outside the President's authority under 8 U.S.C. § 1182(f) and appears to undermine Congressional intent in creating separate family-based and employment-based immigrant visa tracks in the INA. *See, e.g.*, 8 U.S.C. §§ 1153(a)–(b).

*Radiation Oncology* is not an All Writs Act case—its application of the traditional preliminary injunction standard is therefore not transferable to Plaintiffs' request here.[9]

The All Writs Act exists to protect against any conduct that could "frustrate the implementation of a court order or the proper administration of justice." *New York Tel. Co.*, 434 U.S. at 174. Plaintiffs properly invoke it here.

**III. Even if traditional injunctive factors applied, they weigh in favor of relief.**

Even if the traditional requirements for obtaining injunctive relief applied in the context of the All Writs Act, they support an injunction here. As noted above, the Proclamation suffers from the same fatal flaws as the Healthcare Proclamation. The Proclamation, moreover, threatens indefinite family separation for F2A children who did not receive adequate notice of the Presidential Proclamation and could now age out while the Proclamation remains in effect. No harm Defendants articulate seriously outweighs this irreparable harm to these children members of Plaintiffs' Visa Applicant Subclass.

Defendants, not Plaintiffs, are best positioned to identify the children at risk of aging out of the F2A preference category within the next 21 days, but the harm the Proclamation will inflict on such children if they are barred from accessing emergency consular processing is real. For the minor children of lawful permanent residents seeking F2A visas, the INA establishes one processing queue, with the most generous allocation of annual visas issued (87,934 for FY 2019), regardless of their country of origin. 8 U.S.C. § 1153(a)(1)(2)(A); *see also* Declaration of Charles Wheeler in Support of Plaintiffs' Motion for Temporary Restraining Order ("Wheeler

---

[9] The other cases that Defendants cite do not support their argument that Plaintiffs' requested relief must be based on their initial claims. *See De Beers Consol. Mines v. United States,* 325 U.S. 212, 219 (1945) (discussing elements of the "substance of the injunction" in the case at hand); *Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010) (considering the application of traditional injunctive factors).

Decl.") ¶ 8. Those children will lose their place in that unified and preferential queue the moment they age out of the F2A preference category. They will fall into the F2B queue, which has a far more limited number of visas available (26,260 for FY 2019, or one-third of the visas available to the F2A preference category), and which is also subject to per-country limits.[10] 8 U.S.C. § 1153(a)(2)(B); *see also* Wheeler Decl. ¶¶ 4, 7, 8. Whereas all countries are "current" for F2A visas at the moment—*i.e.*, there are visas available for applicants in that preference category—all countries are backlogged in the processing of F2B applications. Wheeler Decl. ¶ 9. For individuals from countries with high demand for visas, such as China, India, Mexico, or the Philippines, that backlog can result in a wait for an F2B visa that will last for decades.[11] Wheeler Decl. ¶ 9–12 (noting that the length of time it will take to clear up the current backlog for the Mexico F2B category is approximately 67 years).

For F2A children seeking to reunite with parents, a decades-long wait would represent a family separation for most of their adult lives. This Court has already held that such prolonged or indefinite family separation constitutes irreparable harm.[12] ECF 95, at 35–36 (citing cases);

---

[10] *See* 8 U.S.C § 1152 (establishing that no single country of origin can account for more than 7 percent of all family-preference and employer-preference green cards combined).

[11] Nor does the Child Status Protection Act provide full protection for children in danger of aging out of the F2A preference category. The CSPA was not intended to address the normal backlog in the family- and employment-based preference system, nor to protect all applicants for immigration benefits from the consequences of aging out. Rather, it was meant to ensure that certain family members who turn 21 will not be prejudiced by delays in the processing of their petitions by U.S. Citizenship and Immigration Services. *See* Wheeler Decl. ¶ 13. Thus, for children who cannot take advantage of the CSPA or age out even under the protections the CSPA affords, turning 21 means losing the F2A preference. *See* Wheeler Decl. ¶ 14.

[12] Although Defendants argue that "Plaintiffs have not identified a single person who allegedly has been or would be harmed by the COVID-19 Labor Proclamation," Opp. at 26–27, Defendants themselves are in the best position to identify which Visa Applicant Subclass members are at risk of harm due to aging out of the F2A preference category during the Proclamation's initial 60-day effective period.

*see also Leiva-Perez v. Holder*, 640 F.3d 962, 969-970 (9th Cir. 2011) (holding that "separation from family members" and the mental damage accompanying such separation constitutes irreparable harm). The Proclamation, moreover, inflicted this significant, imminent harm without a grace period, the opportunity for a waiver, or any semblance of notice, the latter of which would have at least enabled F2A children on the cusp of aging out to seek a legal remedy through a conventional lawsuit or through an emergency request for an interview with the Consulate. *See United States v. Morgan*, 346 U.S. 502, 512 (1954) (holding that the All Writs Act's purpose is to enable the Court to remedy a "wrong [which] may [otherwise] stand uncorrected").

For this reason, the narrow and temporary nature of the relief Plaintiffs request serves the public interest and does not cause irreparable harm to Defendants. There is no urgent need to upset the decades-long status quo for the relatively small population of F2A children who will age out within the 21 days of the requested injunction.[13] *See FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (recognizing "a limited judicial power" under the All Writs Act "to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels"). A narrow injunction carving out a temporary exception to provide these children with access to emergency consular services without the burdens of the Proclamation does not seriously hinder or otherwise cause "significant

---

[13] This is especially true given that leading scientists project that COVID-19's impact, and thus also the "economic recovery" the Proclamation ostensibly seeks to protect, will continue for many months, if not years. Dennis Thompson, *Annual 'COVID-19 Season' May Be Here To Stay, Scientists Predict*, U.S. News & World Report (Apr. 14, 2020), https://www.usnews.com/news/health-news/articles/2020-04-14/annual-covid-19-season-may-be-here-to-stay-scientists-predict; Katie Rogers, *Trump's Scientists Push Back on His Claim That Virus May Not Return This Fall*, N.Y. Times (Apr. 22, 2020), https://www.nytimes.com/2020/04/22/us/politics/trump-coronavirus-fall.html.

institutional injury" to the President's flexibility in addressing a global crisis, Opp. at 28, but instead preserves the special visa processing preference Congress gave them because of their vulnerable status as minor children of lawful permanent residents already here in the United States. *See, e.g.*, *Boehringer Ingelheim Corp. v. Shalala*, 993 F. Supp. 1, 3 (D.D.C. 1997) ("[T]he public interest is served by the lawful application of statutes . . . .").

In the absence of a temporary injunction restraining implementation or enforcement of the Proclamation against the F2A children members of the Visa Applicant Subclass, these children will lose their place in the F2A visa processing queue—a preference Congress expressly extended to these children—and their attempt to reunite with their parents will be extinguished for possibly decades. That outcome will make this Court's existing injunction functionally irrelevant as to these children. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 50 (2014). A narrow and temporary injunction would preserve these children's place in the F2A preference queue, allow them to access emergency consular processing, and afford them the benefits of this Court's injunction, which would enable them to seek a visa without being subject to the Healthcare Proclamation's requirements and avoid the irreparable harm of prolonged family separation. Such an injunction serves the public interest by preventing family separation and hardship to the U.S. resident family members of these children,[14] and ensures the integrity of this Court's existing order.[15]

---

14 *Hawai'i v. Trump*, 878 F.3d 662, 669 (9th Cir. 2017), *rev'd on other grounds, Trump v. Hawai'i*, 138 S. Ct. 2392 (2018); *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (holding that an injunction that reduces "the indirect hardship to . . . family members" inflicted by family separation serves the public interest).

15 *Nat'l Org. for Reform of Marijuana Laws*, 828 F.2d at 544 (9th Cir. 1987) (acknowledging that "[o]ne of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity of orders previously issued").

## CONCLUSION

Plaintiffs respectfully request that the Court grant their emergency motion, issue an immediate order, and provide any other relief that the Court deems just and proper.

DATED this 28th day of April, 2020.

INNOVATION LAW LAB

/s/ Nadia Dahab

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
**Tess Hellgren** (SBN 191622)
tess@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

-and-

**Scott D. Stein** (admitted *pro hac vice*)
sstein@sidley.com
**Kevin M. Fee** (admitted *pro hac vice*)
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

**Jesse Bless** (admitted *pro hac vice*)
jbless@aila.org
AMERICAN IMMIGRATION LAWYERS ASSOCIATION
1301 G. Street, Ste. 300
Washington, D.C. 20005
Telephone: +1 781 704-3897
Facsimile: +1 202 783-7853

*Attorneys for Plaintiffs*