# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON,
# PORTLAND DIVISION

|  |  |
|---|---|
| JOHN DOE, *et al.*, <br>     Plaintiffs, <br>     v. <br> DONALD TRUMP, *in his official capacity as President of the United States*, *et al.*, <br>     Defendants, <br> STATE OF OREGON, *et al.*, <br>     *Amici Curiae*, <br>     and <br> IMMIGRATION REFORM LAW INSTITUTE, <br>     Movant. | No. 3:19-cv-01743-SI |

### BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
chajec@irli.org

Richard D Franklin, O.S.B. No. 822600
PO Box 2187
Gresham OR 97030
Tel: 503 201-0099
Fax: 503 666-9614
Email: rfranklin@comcast.net

*Counsel for Amicus Curiae*

Immigration Reform Law Institute's *Amicus Curiae* Brief
in Support of Defs.' Opposition to Temporary Restraining Order

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Introduction ...............................................................................................................................1

I.   This Court lacks jurisdiction for the TRO. ........................................................................2

    A.   Plaintiffs lack standing for the new relief that they request. ...........................................2

        1.   Class-action litigation does not change the requirements of Article III. .................................................................................................................3

        2.   Plaintiffs fail to establish standing for the new relief that they seek. .........................3

        3.   This Court cannot redress the injuries Plaintiffs claim against the defendants that Plaintiffs have sued. ............................................................4

    B.   This Court lacks statutory subject-matter jurisdiction over the new claims that Plaintiffs raise. ...........................................................................................5

        1.   The All Writs Act does not extend this Court's jurisdiction to Plaintiffs' new claims because the new claims are not sufficiently related to the issues raised in Plaintiffs' operative complaint. ...................................5

        2.   This Court lacks federal-question jurisdiction to the extent that Plaintiffs sue the President. ........................................................................................5

II.  The new relief that Plaintiffs request would require a new subclass and new class counsel for some or all subclasses. ...................................................................6

    A.   The existing Applicant subclass does not adequately represent class members for the new relief that Plaintiffs seek. ...............................................................6

    B.   Class counsel are conflicted from representing the competing interests of aging-out applicants and younger applicants. .................................................7

Conclusion ................................................................................................................................8

# **TABLE OF AUTHORITIES**

## **CASES**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020)..................................................................................................5

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................................7

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019).................................................................................................3-4

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)................................................................................................................3

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)................................................................................................................6

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)................................................................................................................2

*Goosby v. Osser*,
  409 U.S. 512 (1973)................................................................................................................6

*Hagans v. Lavine*,
  415 U.S. 528 (1974)................................................................................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).................................................................................................7

*In re Conduct of Johnson*,
  300 Or. 52, 707 P.2d 573 (Ore. 1985).....................................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*,
  895 F.3d 597 (9th Cir. 2018)...................................................................................................7

*Kamen v. Kemper Fin. Servs.*,
  500 U.S. 90 (1991)..................................................................................................................2

*Landon v. Plasencia*,
  459 U.S. 21 (1982)..................................................................................................................6

*Lewis v. Casey*,
  518 U.S. 343 (1996)................................................................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................2, 4

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020).................................................................................................3

*Renne v. Geary*,
  501 U.S. 312 (1991)................................................................................................................2

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)...................................................................................................8

**STATUTES**

U.S. Const. art. III ................................................................................................................. 2-3, 5

All Writs Act,
    28 U.S.C. §1651(a)..................................................................................................2, 5

**RULES AND REGULATIONS**

Fed. R. Civ. P. 23 .........................................................................................................................6

Fed. R. Civ. P. 23(a)(4) ................................................................................................................7

Oregon Rules Prof'l Conduct, Rule 1.7(a)(1)...............................................................................7

Oregon Rules Prof'l Conduct, Rule 1.7(b)(3).......................................................................... 7-8

Oregon Rules Prof'l Conduct, Rule 1.7(b)(4)...............................................................................8

**OTHER AUTHORITIES**

*Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor*
    *Market During the Economic Recovery Following the COVID-19 Outbreak*,
    85 Fed. Reg. 23,441 (Apr. 27, 2020) ................................................................. 1, 3-4

# INTRODUCTION

*Amicus curiae* Immigration Reform Law Institute ("IRLI") files this brief pursuant to leave of the Court for the reasons set forth in the accompanying motion for leave to file.

Several individuals and an immigrant-rights group (collectively, "Plaintiffs") have sued offices and officers of the Department of Homeland Security ("DHS") and the President (collectively, the "Government") over an earlier presidential action to require that immigrants demonstrate their ability — through insurance or otherwise — to pay their likely medical expenses. Plaintiffs now move (ECF #135) for a temporary restraining order ("TRO") against government action not covered in the operative complaint, *Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak*, 85 Fed. Reg. 23,441 (Apr. 27, 2020) (the "Proclamation"), which — as relevant here — restricts the State Department's emergency consular services abroad.

This Court previously certified two subclasses: (1) U.S.-based petitioners (the "Petitioner subclass"), and (2) visa applicants abroad (the "Applicant subclass"). The relief requested here would inure to a subclass of the Applicant subclass: applicants who are under 21, but close enough to their 21st birthday that they might "age out" of their eligibility to apply as minor children during the Covid-19 emergency period covered by the challenged new presidential action.

This new request for relief poses several jurisdictional and ethical problems:

- **Injury in Fact**: Plaintiffs have not established that the named class representatives include anyone close to turning 21 — and thus close to "aging out" — without the TRO.

- **Redressability**: Plaintiffs have sued DHS offices and officers, who lack the authority to redress the State Department's allocation of emergency consular services abroad, and this Court lacks the authority to enjoin the President. In short, Plaintiffs have not sued the right defendants for the new relief that they seek.

- **Statutory Subject-Matter Jurisdiction**: The relief requested here is insufficiently related to the underlying litigation to fall within the All Writs Act.

- **Inadequate Subclasses and Class Counsel**: Plaintiffs admit a conflict between Applicant subclass members close to losing their place in line and the Applicant subclass members behind those members in line. Pls.' Mot. at 10 (ECF #135). That conflict raises concerns about both the adequacy of the named class representatives to represent the class under the current subclass structure and the ethical ability of class counsel to pursue the new relief here, against the interests of other class members here.

For all these reasons, this Court should deny the TRO or, at least, order the parties to file supplemental briefing on these issues before considering any relief on Plaintiffs' new claims.

I.    **THIS COURT LACKS JURISDICTION FOR THE TRO.**

Federal courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record," *Renne v. Geary,* 501 U.S. 312, 316 (1991), and the party invoking federal jurisdiction bears the burden of proof on each step of the jurisdictional analysis. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Parties cannot grant jurisdiction by consent or waiver, *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990), so any arguments that IRLI raises here supplement those made by the Government and require this Court's review. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 97 n.4 (1991) (courts' hesitation to consider arguments raised solely by an *amicus* does not apply to jurisdictional arguments). Because this Court cannot proceed without jurisdiction, this Court should consider the jurisdictional arguments that IRLI raises here.

  A.    <u>Plaintiffs lack standing for the new relief that they request.</u>

Courts assess a plaintiff's Article III standing under a tripartite test for an "injury in fact": judicially cognizable injury to the plaintiff, causation by the challenged conduct, and redressability by a court. *Lujan*, 504 U.S. at 561-62. As explained below, Plaintiffs have not met the first or third

prongs of that analysis.

### 1. Class-action litigation does not change the requirements of Article III.

Nothing about the "mere procedural device" of a class action reduces the Article III requirements. *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1023-24 (9th Cir. 2020). As in non-class litigation, the named "class representatives must have Article III standing, as the irreducible constitutional minimum of a case or controversy." *B.K. v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019). The same burdens apply that would apply to any plaintiff:

> It was the named plaintiffs' burden — as it would be any other plaintiff's — to support each standing element in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation.

*Id.* at 966-67 (interior quotation marks omitted). Finally, courts must remain "always 'mindful that the Rule's requirements must be interpreted in keeping with Article III constraints.'" *Id.* at 967 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)). As relevant here, that mindfulness means that Courts cannot allow standing to challenge one rule — by a class or an individual — merely because the same plaintiff also has standing to challenge another rule: "the litigant [cannot], by virtue of his standing to challenge one government action, challenge other governmental actions that did not injure him." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross"). As explained in the next section, Plaintiffs fail to meet this threshold requirement of Article III.

### 2. Plaintiffs fail to establish standing for the new relief that they seek.

Assuming *arguendo* that Plaintiffs have standing to challenge the health-insurance rules challenged in the operative complaint, that would not mean that Plaintiffs have standing against the new Proclamation that they now seek to enjoin: *Cuno*, 547 U.S. at 353 & n.5; *Casey*, 518 U.S. at 358 n.6. Instead, Plaintiffs must establish — but have not established — their standing to

challenge the new governmental action. For example, in *B.K*, 922 F.3d at 964, the Ninth Circuit disregarded nine of the original ten foster children plaintiffs because they either exited the foster-care system or aged out. The situation here is the same: only minor children below 21, but close enough to turning 21, are relevant to the injury allegedly caused by the Proclamation. For that reason, such minors would be necessary to any challenge — whether a class challenge or not — to the new Proclamation.

For one of the named plaintiffs to have standing to challenge the new governmental action, that action must concretely injure that named plaintiff or threaten imminent injury to him or her. *Lujan*, 504 U.S. at 560. For that to happen, one of the named Applicant class members would need to be close enough to turning 21 during the Proclamation's limited term for the Proclamation to threaten that named plaintiff with aging out. *See B.K.*, 922 F.3d at 964 (analyzing standing only of named plaintiff who had not yet aged out or otherwise become moot). Plaintiffs' TRO motion includes nothing to substantiate that threat, and Plaintiffs bear the burden of establishing standing.

> **3.     This Court cannot redress the injuries Plaintiffs claim against the defendants that Plaintiffs have sued.**

By trying to graft a challenge to a new Government action onto their prior challenge to a different Government action, Plaintiffs have run afoul of the redressability prong of the standing analysis: Plaintiffs have sued the wrong defendants for the new relief that they seek.

In *Lujan*, 504 U.S. at 568-71, the plaintiffs lacked standing because their alleged injuries were not redressable. As here, the remedy for redressing plaintiffs' harms depended on distinct funding agencies who were not parties to the lawsuit. *Id.* at 569-70. Because a court has no authority over the non-party agencies, the redressability of plaintiffs' harms was merely speculative. *Id.* at 571. Here, too, it is entirely unclear that the State Department would change its consular staffing overseas during the Covid-19 pandemic in response to a TRO issued by this Court

against the DHS defendants.[1]

### B. This Court lacks statutory subject-matter jurisdiction over the new claims that Plaintiffs raise.

In addition to the constitutional defects in this Court's jurisdiction, the Court also lacks statutory subject-matter jurisdiction. That defect is equally fatal to Plaintiffs' new claims.

#### 1. The All Writs Act does not extend this Court's jurisdiction to Plaintiffs' new claims because the new claims are not sufficiently related to the issues raised in Plaintiffs' operative complaint.

While IRLI has no quarrel with the All Writs Act's authorization of relief in aid of future jurisdiction, that authorization applies in this context only where the existing matter is sufficiently related to the new matter. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.6 (9th Cir. 2020) (requiring "a sufficient 'relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint'") (quoting *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015)). That relationship is lacking here both legally and factually. First, the relationship is lacking legally because the new relief and underlying relief must be sought against different agencies. *See* Section I.A.3, *supra*. Second, the relationship is lacking factually because the underlying relief — applying to immigrate without proving an ability to cover medical costs — applies equally to Applicants above and below 21 years of age. The underlying relief is wholly independent of the new claims for relief. For that reason, the All Writs Act does not provide supplemental jurisdiction for Plaintiffs' new claims.

#### 2. This Court lacks federal-question jurisdiction to the extent that Plaintiffs sue the President.

As indicated, Plaintiffs lack Article III jurisdiction for their claims against the DHS defendants because the State Department is the proper defendant for the new claims that Plaintiffs

---

[1] As explained in Section I.B.2, *infra*, this Court lacks authority to enjoin the President.

Immigration Reform Law Institute's *Amicus Curiae* Brief
in Support of Defs.' Opposition to Temporary Restraining Order 5

press here. *See* Section I.A.3, *supra*. Although Plaintiffs also sue the President, this Court cannot enjoin the President, *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992),[2] even if he theoretically could order the State Department to comply with this Court's orders.

When the Supreme Court has answered a question, that question ceases to present a federal question for jurisdictional purposes: "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit," where a claim is "plainly unsubstantial … [when] its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." *Hagans v. Lavine,* 415 U.S. 528, 537 (1974) (interior quotations omitted); *accord Goosby v. Osser,* 409 U.S. 512, 518 (1973). To the extent that the Court's jurisdiction depends on the claims against the President for redress, the claims fall outside this Court's statutory subject-matter jurisdiction.

II. **THE NEW RELIEF THAT PLAINTIFFS REQUEST WOULD REQUIRE A NEW SUBCLASS AND NEW CLASS COUNSEL FOR SOME OR ALL SUBCLASSES.**

If this Court somehow had jurisdiction for Plaintiffs' new claims, Plaintiffs would have much bigger problems for ongoing viability of this action under Rule 23.

A. **The existing Applicant subclass does not adequately represent class members for the new relief that Plaintiffs seek.**

As Plaintiffs admit, immigration "law caps the number of visas issued each year in the five family preference categories, and demand regularly exceeds the supply." Pls.' Mot. at 10 (ECF

---

[2] Although *Franklin* recognized constitutional actions against a president, the Applicant class has no constitutional due-process rights other than what Congress has given them statutorily, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"), and there is no statute that compels emergency consular services in normal times, much less during a pandemic emergency.

#135). Consequently, Applicant subclass members who are about to turn 21 have a direct conflict with younger Applicant subclass members. Every 20-year-old member who turns 21 and ages out will necessarily make room for a younger Applicant subclass member to obtain a visa. While this conflict — or competition — among Applicant subclass members previously existed, the conflict had no bearing on the relief for which this Court certified the subclass. Each Applicant subclass member wanted to avoid the burdens outlined in the operative complaint.

Even if this Court correctly certified the class for the underlying litigation, the Court could not make the same findings for the proposed expansion: "The adequacy [of representation] inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*, 895 F.3d 597, 607-08 (9th Cir. 2018). In injunction class actions like this, conflicts of interest can impair adequate representation, but leave absent class members bound to the final judgment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Under *Hanlon*, for adequacy of representation, courts assess whether "the named plaintiffs and their counsel have any conflicts of interest with other class members." *Id.*; *In re Volkswagen*, 895 F.3d at 607. Because the interests of Applicant subclass members just under 21 and younger Applicant subclass members conflict, this Court should create subclasses within the Applicant subclass. *Amchem*, 521 U.S. at 627. The class certifications that this Court made for the operative complaint cannot support the TRO.

### B. Class counsel are conflicted from representing the competing interests of aging-out applicants and younger applicants.

Under Oregon's Rules of Professional Conduct, a current conflict exists if "the representation of one client will be directly adverse to another client[.]" Oregon Rules Prof'l Conduct, Rule 1.7(a)(1). While some conflicts are waivable, a non-waivable conflict exists if "the

representation … obligate[s] the lawyer to contend for something on behalf of one client that the lawyer has a duty to oppose on behalf of another client[.]" *Id.*, Rule 1.7(b)(3). Without deciding whether this conflict is waivable, the conflict clearly has not been waived, as waiver would require that "each affected client gives informed consent, confirmed in writing." *Id.*, Rule 1.7(b)(4). This Court has the obligation to consider these ethical issues before allowing class counsel to make decisions for their clients and the class. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968-69 (9th Cir. 2009) ("district court … should have considered what effect, if any, the ethics implications of a conflict of interest"); *In re Conduct of Johnson*, 300 Or. 52, 55, 707 P.2d 573, 576 (Ore. 1985) (Oregon Bar ethics action for a lawyer's "representing both Smith and King when the clients' interests were adverse or potentially adverse without obtaining the clients' consent to such representation after full disclosure of the adverse or potentially adverse interests"). *Amicus* IRLI respectfully submits that it would be premature — and perhaps impossible — to allow class counsel to proceed with the TRO motion.

## CONCLUSION

This Court should deny the TRO.

Dated: April 28, 2020                                Respectfully submitted,

                                                      /s/ Richard D Franklin

Christopher J. Hajec                                 Richard D Franklin, O.S.B. No. 822600
Immigration Reform Law Institute                     PO Box 2187
25 Massachusetts Ave. NW, Suite 335                  Gresham OR 97030
Washington, DC 20001                                 Tel: 503 201-0099
Telephone: (202) 232-5590                            Fax: 503 666-9614
chajec@irli.org                                      Email: rfranklin@comcast.net

                                                     *Counsel for Movant Immigration Reform Law Institute*