# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN DOE #1**; *et al.*, | Case No. 3:19-cv-1743-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **DONALD TRUMP**, *et al.*, | |
| Defendants. | |

Stephen Manning and Nadia Dahab, INNOVATION LAW LAB, 333 SW Fifth Avenue, Suite 200, Portland, OR 97204; Karen C. Tumlin and Esther H. Sung, JUSTICE ACTION CENTER, PO Box 27280, Los Angeles, CA 90027; Scott D. Stein and Kevin M. Fee, SIDLEY AUSTIN LLP, One South Dearborn Street, Chicago IL 60603; and Jesse Bless, AMERICAN IMMIGRATION LAWYERS ASSOCIATION, 1301 G. Street, Suite 300, Washington D.C. 20005. Of Attorneys for Plaintiffs.

Joseph H. Hunt, Assistant Attorney General; Billy J. Williams, United States Attorney for the District of Oregon; August E. Flentje, Special Counsel; William C. Peachey, Director, Office of Immigration Litigation; Brian C. Ward, Senior Litigation Counsel; Courtney E. Moran, Trial Attorney; U.S. DEPARTMENT OF JUSTICE, Office of Immigration Litigation, District Court Section, PO Box 868, Ben Franklin Station, Washington D.C., 20044. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

In this lawsuit, Plaintiffs challenge the issuance and implementation of the Presidential Proclamation issued on October 4, 2019, which requires certain immigrants to show proof of health insurance or sufficient financial resources to pay for the costs of anticipated health care before they may qualify for immigrant visas (the "October 4th Proclamation"). The Court

granted Plaintiffs' motion for preliminary injunction, enjoining enforcement of the October 4th Proclamation. The Court also granted Plaintiffs' motion for class certification, certifying two nationwide subclasses: (1) United States citizens filing certain petitions sponsoring immigrant visa applicants ("U.S. Petitioner Subclass"); and (2) certain immigrant visa applicants ("Visa Applicant Subclass"). Now before the Court is Plaintiffs' motion for a temporary restraining order ("TRO") relating to a different Presidential Proclamation.

Plaintiffs ask the Court partially to enjoin enforcement of Presidential Proclamation No. 10014, issued on April 22, 2020, titled "Suspension of Entry of Immigrants who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak" (the "April 22nd Proclamation"). Plaintiffs request that the Court temporarily enjoin enforcement of the April 22nd Proclamation against members of the Visa Applicant Subclass who are the children[1] of Lawful Permanent Residents, are under age 21, and will "age out" of their visa preference category[2] (by turning 21 years old) in the very near future.

Plaintiffs request a TRO under the All Writs Act, 28 U.S.C. § 1651(a).[3] "[T]he All Writs Act authorizes employment of extraordinary writs, [however,] it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting § 1651(a)). Plaintiffs argue that the April 22nd Proclamation

---

[1] The Immigration and Nationality Act of 1965, *as amended* ("INA"), defines a "child" as an unmarried person under the age of 21 who meets other criteria involving birth, adoption, or step-parent/child relationships. 8 U.S.C. § 1101(b)(1).

[2] The unmarried children of Lawful Permanent Residents are in the preference category under 8 U.S.C. § 1153(a)(2)(A), commonly known as F2A.

[3] The All Writs Act provides: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

PAGE 2 – OPINION AND ORDER

interferes with the Court's jurisdiction over the claims of these children. For the reasons discussed below, the Court denies Plaintiffs' motion.

The claims in this lawsuit include the allegations that the issuance and implementation of the October 4th Proclamation violates the constitutional and statutory rights of the Visa Applicant Subclass members by requiring them to show proof of health insurance or sufficient funds to pay reasonably anticipated health care costs. Plaintiffs argue that the April 22nd Proclamation may prevent certain Visa Applicant Subclass members from receiving visas or may extinguish the special preference they received in immigration processing by being under the age of 21 and in preference category F2A. If children age out of preference category F2A, under the Child Status Protection Act ("CSPA"), they will automatically convert to preference category F2B. 8 U.S.C. § 1153(h)(3). Although they will retain their visa application priority date after preference category conversion, depending on their country of origin, these children may have to wait years, and for children from some countries with significant backlogs, up to 65 years, for their immigrant visas to be processed and issued. Thus, argue Plaintiffs, because these children effectively may not have their visa applications processed as result of the April 22nd Proclamation, they are essentially no longer class members and will not receive the benefit of the Court's class certification order, preliminary injunction order precluding enforcement of the October 4th Proclamation, or any future order of the Court relating to the October 4th Proclamation. Plaintiffs therefore conclude that the April 22nd Proclamation, by effectively precluding or substantially delaying the processing of the children's immigrant visas, interferes with the Court's jurisdiction and, thus, is addressable under the All Writs Act.

Under Plaintiffs' interpretation of the All Writs Act, any action that may stop or significantly delay the processing of class member's immigrant visas would interfere with the

Court's jurisdiction. Plaintiffs contend that there need not be any nexus between the purportedly interfering action and the First Amended Class Action Complaint for the All Writs Act to apply. Thus, under Plaintiffs' construction of the All Writs Act, simply because the Court issued preliminary injunction and class certification orders relating to one discrete aspect of immigration law, it has authority under the All Writs Act to stop enforcement of every immigration executive order or other action that serves to stop or delay the processing of class members' immigrant visa applications. The Court rejects this broad interpretation of the All Writs Act.

The All Writs Act is an "extraordinary remedy," and it does not "enlarge" a court's jurisdiction. *Clinton*, 526 U.S. at 534-35. Under the All Writs Act, a court may only issue writs "necessary or appropriate in aid of" its *existing* jurisdiction. *See id.* (quoting 28 U.S.C. § 1651(a)); *see also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) ("The Act does not create any substantive federal jurisdiction. Instead, it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." (citation omitted)). Thus, the Court's existing jurisdiction in this lawsuit, focused on the October 4th Proclamation, is the only basis for invoking the All Writs Act. The April 22nd Proclamation is completely unrelated to the October 4th Proclamation. Simply because the April 22nd Proclamation may preclude or delay the processing of immigrant visa applications is too attenuated from the allegations in the First Amended Class Action Complaint to support an extraordinary writ under the All Writs Act. *See Las Americas Immigrant Advocacy Ctr. v. Trump*, 2020 WL 1671584, at *2 (D. Or. Apr. 2, 2020) ("However, the relief sought in Plaintiffs' motion is too attenuated from the claims alleged in the Complaint to sustain Plaintiffs' burden under the All Writs Act."). There must be some connection between the

underlying claims and the newly-challenged conduct for that conduct sufficiently to interfere with the Court's jurisdiction to support an extraordinary writ under the All Writs Act. Otherwise, the Court's jurisdiction would expand to any conduct that could cause significant delay in, or even the cessation of, the processing of class members' immigrant visas.

Plaintiffs' interpretation of the All Writs Act also would lead to untenable results. For example, if the President received reliable intelligence that an immigrant from a certain country was planning to bring a dirty bomb into the United States and the President issued an executive order temporarily stopping the processing of all immigrant visa applicants from that country, such an executive order might prevent potential Visa Applicant Subclass members from that country from receiving the benefit of the Court's orders. Children in preference category F2A might also face the same aging-out problem during the duration of that hypothetical executive order. Under Plaintiffs' argument, the Court nevertheless could issue an injunction under the All Writs Act, enjoining that hypothetical executive order. There could be many other examples of an executive order affecting immigration based on national security or other concerns that would stop, delay, or limit the number of immigrant visa applicants for reasons that have nothing to do with health care insurance or the ability to show funds to pay for reasonably anticipated health care costs. Just because the Court issued orders based on a complaint relating to the processing of immigrant visa applications, that does not mean that the Court has the authority under the All Writs Act to stop enforcement of every immigration-related executive order (or other action) that might affect members of the certified class.

Moreover, the All Writs Act "invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton*, 526 U.S. at 537; *see also Klay*, 376 F.3d at 1100. This includes motions under Rule 65

of the Federal Rules of Civil Procedure. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) (noting "that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely Fed. R. Civ. P. 65, which provides for temporary restraining orders and preliminary injunctions"). Plaintiffs' All Writs Act challenge to the April 22nd Proclamation should be brought as a separate challenge specific to that proclamation, seeking a preliminary injunction or TRO under Rule 65, if appropriate.

Plaintiffs rely upon *Al Otro Lado v. Wolf* ("*Al Otro I*"), 952 F.3d 999 (9th Cir. 2020), to support their argument that an injunction under the All Writs Act is necessary and appropriate in this case. In *Al Otro*, the plaintiffs were asylum-seekers who primarily challenged "metering" policies and practices at ports of entry on the southern border. *Id.* at 1003. The Department of Homeland Security ("DHS") then issued a new rule, the "transit rule" or "Asylum Ban," which changed how asylum seekers would be processed. *Id.* at 1005. The district court provisionally granted class certification for a subset of plaintiffs, those who were subject to the "metering" policy and because of that may also be subject to the transit rule and potentially barred from seeking asylum *Id.* at 1002. The district court issued a preliminary injunction and, alternatively, an injunction under the All Writs Act barring enforcement of the new transit rule against this class of plaintiffs. *Al Otro Lado, Inc. v. McAleenan* ("*Al Otro II*"), 423 F. Supp. 3d 848, 868-69 (S.D. Cal. 2019). The Ninth Circuit declined to stay the district court's order pending interlocutory appeal. *Al Otro I*, 952 F.3d at 1016. In that context, in a footnote the Ninth Circuit accepted the district court's authority to issue a preliminary injunction and an injunction under the All Writs Act under the circumstances presented (when a different rule was being challenged than the conduct specifically challenged in the underlying complaint). *Id.* at 1006 n.6.

In that case, the district court found that the requested injunction against the transit rule had a sufficient nexus to the plaintiffs' claims in the underlying complaint relating to the metering policy, and thus a preliminary injunction was permissible. *Al Otro II*, 423 F. Supp. 3d at 868 ("Indeed, Plaintiffs' claims regarding the Asylum Ban and Plaintiffs' underlying claims in their [Second Amended Complaint] are so intertwined that denying Plaintiffs' Motion for Preliminary Injunction could effectively eviscerate the asylum claims Plaintiffs seek to preserve in their underlying suit."). The district court emphasized the general asylum allegations in the complaint, including the allegation that Customs and Border Patrol were engaged in an unlawful and widespread pattern and practice of denying asylum seekers access to the asylum process, that the defendants were imposing unreasonable delays before granting access to the asylum process, and that the defendants were outright denying access to the asylum process. *Id.* The district court noted that the pending motion for preliminary injunction sought to preserve the plaintiff class members' access to the asylum process, which the court found related to the claims in the complaint. *Id.* Regarding the request for an injunction under the All Writs Act, the district court noted that its jurisdiction arose "from the statutory and constitutional questions over Defendants' issuance of policies and practices barring access to the asylum process." *Id.* at 869. The court then found that application of the transit rule "affects this Court's jurisdiction because it would effectively moot Plaintiffs' request for relief in the underlying action by extinguishing their asylum claims. Should the Asylum Ban [transit rule] be applied to Plaintiffs, these individuals' asylum claims would be foreclosed, as would any claim and request for relief regarding their right to access the asylum process." *Id.*

The Ninth Circuit, in addressing the dissent's concern regarding the district court's authority to issue an injunction under the All Writs Act against a rule that was not challenged in

PAGE 7 – OPINION AND ORDER

the underlying complaint, cited to the dissent's discussion about the district court's finding of a connection between the transit rule and the allegations in the complaint. *Al Otro I*, 952 F.3d at 1006 n.6. The Ninth Circuit stated that discussion "acknowledges the answer" to the district court's authority to issue an injunction under the All Writs Act. *Id.* This supports this Court's finding that there needs to be some connection between later-challenged conduct and the claims in an underlying complaint to support an injunction under the All Writs Act.

Further, the facts in *Al Otro* are distinguishable in a critical way. The underlying complaint in that case alleged conduct that encompassed, or at least had a close nexus to, the conduct challenged in the second motion for preliminary injunction. The later-challenged action involved similar conduct that would moot the underlying similar claims. The underlying claims and later-challenged conduct were intertwined, unlike Plaintiffs' pending claims relating to the October 4th Proclamation and later-challenged conduct relating to F2A Visa Applicant Subclass members and the April 22nd Proclamation. Additionally, for purposes of the All Writs Act injunction, the district court specifically noted that its jurisdiction arose from claims relating to questions about general policies and practices barring access to the asylum process. Here, the Court's jurisdiction arises from questions relating to specific issues concerning the October 4th Proclamation, not questions about general policies and practices barring immigrant visa processing.

Plaintiffs also argue that their First Amended Class Action Complaint makes similar allegations as those made in *Al Otro*. The Court disagrees. The allegations cited by Plaintiffs in support of this argument are not allegations relating to any general policy or procedure relating to visa processing, but are specific to the October 4th Proclamation and its effects. Nor are there any allegations in the First Amended Class Action Complaint that relate to family preference

categories, aging out, or anything related to the pending motion. This is fatal to Plaintiffs' argument on this point.

The Court recognizes the potential seriousness of the repercussions of a preference category F2A child being automatically converted to a preference category F2B upon his or her turning 21, as calculated under the CSPA. Based on the information provided by Plaintiffs, there are sufficiently available visas in category F2A, but, depending on the country of origin, immigrant visa applicant wait times can be more than 65 years for applicants in category F2B. "In the end, [however], we are a nation of laws, and if we are to continue to be so, the pre-existing and well-established federal law governing injunctions . . . must be applied to [this] case." *Schiavo*, 403 F.3d at 1229 (denying an All Writs Act injunction). If visa limits or wait times for preference category F2B are unreasonably constricted, that is a matter for Congress to fix, not the courts.

## CONCLUSION

Plaintiffs' Motion for Temporary Restraining Order (ECF 135) is DENIED.

**IT IS SO ORDERED.**

DATED this 29th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge