JOSEPH H. HUNT
Assistant Attorney General, Civil Division
BILLY J. WILLIAMS
United States Attorney
AUGUST E. FLENTJE
Special Counsel, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
BRIAN C. WARD
Senior Litigation Counsel
COURTNEY E. MORAN
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4587
courtney.e.moran@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |  |
|---|---|---|
| JOHN DOE #1, et al., | ) ) ) | CASE NO. 3:19-cv-01743-SI |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANTS' MOTION TO DISMISS** |
| DONALD TRUMP, in his official capacity as President of the United States, et al., | ) ) ) | **Oral Argument Requested** |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ iii

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1 ......................................... 1

MOTION TO DISMISS ......................................................................................................... 1

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 3

        A.      Immigrant Visa Application Process ............................................................ 3

        B.      Presidential Proclamation 9945 ................................................................... 4

        C.      Procedural Background ................................................................................. 6

III.    LEGAL STANDARD ............................................................................................... 7

        A.      Federal Rule of Civil Procedure 12(b)(1) ................................................... 7

        B.      Federal Rule of Civil Procedure 12(b)(6) ................................................... 8

IV.     ARGUMENT ............................................................................................................ 8

        A.      The Court lacks subject-matter jurisdiction over this action. ..................... 8

                1.      Plaintiffs lack standing for claims against DHS and HHS. ............. 8

                2.      Latino Network lacks standing. ...................................................... 9

                3.      The individual Named Plaintiffs all either lack standing or their
                        claims are moot. ............................................................................. 11

                4.      Courts may not review non-constitutional challenges to the
                        political branches' decisions to exclude noncitizens. ..................... 14

                5.      Separation of powers bars injunctive relief against the President. ........... 16

        B.      Plaintiffs fail to state a claim upon which relief can be granted. ........................ 17

DEFENDANTS' MOTION TO DISMISS
3:19-CV-01743-SI

1.    Plaintiffs fail to state a claim under the APA (Claim I)............................ 17

2.    Plaintiffs fail to state an equal protection claim (Claim II). ..................... 23

3.    Plaintiffs fail to state a claim that the Proclamation is "ultra vires"
      (Claim III). ............................................................................................ 26

4.    Plaintiffs fail to state a procedural due process claim (Claim IV)............ 33

V.    CONCLUSION............................................................................................. 35

# TABLE OF AUTHORITIES

## Cases

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) ............................................................. 30

*Allen v. Milas*,
    896 F.3d 1094 (9th Cir. 2018) ......................................................... 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................... 8, 24, 30, 31

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 8

*Bennett v. Spear*,
    520 U.S. 154 (1997) .................................................... 17, 19, 20, 21

*Block v. Community Nutrition Inst.*,
    467 U.S. 340 (1984) .......................................................................... 23

*Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ................................................... 15, 23

*Bustamante v. Mukasey*,
    531 F.3d 1059 (9th Cir. 2008) .......................................................... 22

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................... 12, 13

*Dalton v. Specter*,
    511 U.S. 462 (1994) .............................................................. 15, 16, 18

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ..................................................................... 7, 11

*Doe v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) .................................................... passim

*Doe v. Trump*,
    944 F.3d 1222 (9th Cir. 2019) .......................................................... 25

*East Bay Sanctuary Covenant v. Trump*,
    932 F.3d 742 (9th Cir. 2018) ............................................................ 18

*East Bay Sanctuary Covenant v. Trump*,
    950 F.3d 1242 (9th Cir. 2020) .......................................................... 11

*Emami v. Nielsen*,
  365 F. Supp. 3d 1009 (N.D. Cal. 2019) ................................................................. 33

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ........................................................................................... 25

*Fiallo v. Bell*,
  430 U.S. 787 (1977) ................................................................................... passim

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ...................................................................................... 16, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................. 9

*Gebhardt v. Nielsen*,
  879 F.3d 980 (9th Cir. 2018) ............................................................................. 33

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ......................................................................................... 8

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ...................................................................................... 19, 33

*Innovation Law Lab v. McAleenan*,
  924 F.3d 503 (9th Cir. 2019) ............................................................................. 21

*Kerry v. Din*,
  135 S. Ct. 2128 (2015) ................................................................................... 16, 33

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ................................................................................... passim

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................................................. 7

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ........................................................................................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ....................................................................................... 17

*Li Hing of Hong Kong, Inc. v. Levin*,
  800 F.2d 970 (9th Cir. 1986) ............................................................................. 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 8, 12

*Lujan v. Nat'l Wildlife Fed'n.*,
  497 U.S. 871 (1990)..................................................................... 21

*Mathews v. Diaz*,
  426 U.S. 67 (1976)....................................................................... 26

*Mississippi v. Johnson*,
  71 U.S. 475 (1867)....................................................................... 16

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ....................................................... 8

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013)......................................................... 8

*O'Bannon v. Town Court Nursing Ctr.*,
  447 U.S. 773 (1980)..................................................................... 11

*PETA v. U.S. Dep't of Agriculture*,
  797 F.3d 1087 (D.C. Cir. 2015) .................................................. 10

*Romer v. Evans*,
  517 U.S. 620 (1996)..................................................................... 23

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................... 13

*Sale v. Haitian Ctrs. Council, Inc.*,
  509 U.S. 155 (1993)................................................... 28, 30, 32, 33

*Shaughnessy v. United States ex rel. Mezei*,
  345 U.S. 206 (1953)............................................................... 14, 19

*Slayman v. FedEx Ground Package Sys., Inc.*,
  765 F.3d 1033 (9th Cir. 2014) .................................................... 14

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)......................................................... 8, 10, 12

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..................................................................... 13

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985)..................................................................... 13

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017)................................................................. 30

*Trump v. Hawaii,*
   138 S. Ct. 2392 (2018) ............................................................................ passim

*Turlock Irrigation Dist. v. FERC,*
   786 F.3d 18 (D.C. Cir. 2015) ........................................................................ 10

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
   136 S. Ct. 1807 (2016) ................................................................................. 19

*United States ex rel. Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) ..................................................................................... 15

*United States ex rel. Mateski v. Raytheon Co.,*
   816 F.3d 565 (9th Cir. 2016) .......................................................................... 7

*United States ex rel. Solis v. Millennium Pharm., Inc.,*
   885 F.3d 623 (9th Cir. 2018) .......................................................................... 7

*Updike v. Clackamas Cty.,*
   No. 15-723, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ...................................... 12

*Ventura-Escamilla v. INS,*
   647 F.2d 28 (9th Cir. 1981) ........................................................................... 22

*Warth v. Seldin,*
   422 U.S. 490 (1975) ....................................................................................... 9

*Webster v. Doe,*
   486 U.S. 592 (1998) ..................................................................................... 18

## Statutes

5 U.S.C. § 701 ............................................................................................... 22

5 U.S.C. § 702 ......................................................................................... 18, 23

5 U.S.C. § 704 ......................................................................................... 19, 21

6 U.S.C. § 236 ............................................................................................... 15

8 U.S.C. § 1104 ............................................................................................. 22

8 U.S.C. § 1153 ............................................................................................... 3

8 U.S.C. § 1154 ............................................................................................... 3

8 U.S.C. § 1182 ...................................................................................... passim

8 U.S.C. § 1185 ............................................................................... 2, 4, 18, 26

8 U.S.C. § 1201 ................................................................................................ 3, 22, 34

8 U.S.C. § 1202 ........................................................................................................ 3

8 U.S.C. § 1252 ...................................................................................................... 15

8 U.S.C. § 1361 ........................................................................................................ 3

44 U.S.C. § 3501 .................................................................................................. 6, 20

44 U.S.C. § 3507 .................................................................................................... 20

## Rules

Federal Rule of Civil Procedure 12 ................................................................. i, 1, 7, 8

Federal Rule of Civil Procedure 23 ........................................................................... 7

## Regulations

22 C.F.R. § 40.6 ....................................................................................................... 3

22 C.F.R. § 42.62 ..................................................................................................... 3

22 C.F.R. § 42.71 ..................................................................................................... 3

22 C.F.R. § 42.81 ..................................................................................................... 3

## Other Authorities

Presidential Proclamation 9945, Suspension of Entry of Immigrants Who Will Financially
    Burden the United States Healthcare System in Order to Protect the Availability of Healthcare
    Benefits for Americans, 84 Fed. Reg. 53,991 (Oct. 9, 2019) ........................................... passim

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1**

Defendants' counsel have conferred by telephone with Plaintiffs' counsel, who oppose this motion. The parties made a good faith effort to resolve this dispute but have been unable to do so.

**MOTION TO DISMISS**

Defendants move to dismiss Plaintiffs' First Amended Class Action Complaint (FAC), ECF No. 100, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Plaintiffs—an organization and two certified subclasses represented by seven U.S. citizens and one noncitizen spouse of a U.S. citizen—challenge the implementation and enforcement of Presidential Proclamation 9945, Suspension of Entry of Immigrants Who Will Financially Burden the United States Healthcare System in Order to Protect the Availability of Healthcare Benefits for Americans, 84 Fed. Reg. 53,991 (Oct. 9, 2019) ("Healthcare Proclamation" or "Proclamation").

Plaintiffs raise four challenges to the Proclamation. First, Plaintiffs claim that Defendants have taken final agency actions to implement the Proclamation that violate the Administrative Procedure Act (APA) in various ways. FAC ¶¶ 227-37. Second, Plaintiffs claim that the Proclamation and its implementation violate the equal protection guarantee of the Fifth Amendment because those actions "burden a fundamental right of Plaintiffs and Class Members and were motivated by intentional discrimination and/or animus based on race, ethnicity, and/or national origin." FAC ¶ 241; *see id.* ¶¶ 238-42. Third, Plaintiffs claim that the Proclamation is "ultra vires" because it "exceeds" the President's authority under the Immigration and Nationality Act (INA) and "violates constitutional separation of powers principles." FAC ¶¶ 246-47; *see id.* ¶¶ 243-47. Fourth, Plaintiffs claim that the Proclamation and its implementation violate the procedural due process guarantee of the Fifth Amendment because those actions "deprive

individuals, including Plaintiffs and their members or clients" of "statutory and regulatory rights, and liberty interests, without due process." FAC ¶ 256; *see id*. ¶¶ 248-57. Plaintiffs seek declaratory and injunctive relief declaring the Proclamation "unlawful and invalid" in its entirety and enjoining Defendants from implementing or enforcing any part of the Proclamation. FAC, Prayer for Relief, ¶¶ A-D.

The Court should dismiss all of Plaintiffs' claims for lack of subject-matter jurisdiction. First, no Plaintiff has alleged any injury that is fairly traceable to any action by the Department of Homeland Security (DHS) or the Department of Health and Human Services (HHS). Second, the organizational and individual Plaintiffs have not identified an actual or imminent concrete injury that would result from the Proclamation or its implementation by any Defendants and be sufficient to establish Article III standing. Third, this Court may not review non-constitutional challenges to the political branches' decisions to exclude noncitizens abroad. Fourth, separation of powers prevents this Court from granting injunctive relief against the President.

Alternatively, the Court should dismiss all of Plaintiffs' claims because they have failed to state a claim for relief. First, Plaintiffs fail to state a claim under the APA because the Proclamation is not reviewable under the APA, and Plaintiffs have not identified any final agency action that is reviewable under the APA. Second, Plaintiffs fail to state an equal protection claim because they do not identify any fundamental right or suspect class, nor do they allege facts to support a finding that the Proclamation could only be motivated by racial animus. Third, Plaintiffs fail to state a claim that the Proclamation is "ultra vires" because it is plainly authorized by the President's authority under 8 U.S.C. § 1182(f) and § 1185(a), and Plaintiffs fail to allege an express conflict between the Proclamation and any other provision of the INA or any other statute. Finally,

Plaintiffs fail to state a procedural due process claim because they do not identify any protected "right" or "liberty interest" that is infringed upon by the Proclamation or its implementation.

## II.    BACKGROUND

### A.    Immigrant Visa Application Process

Under the INA, an alien seeking to enter the United States from abroad generally must apply for and be issued a visa. The Proclamation applies only to individuals seeking immigrant visas (i.e., noncitizens seeking to reside in the United States permanently). 84 Fed. Reg. at 53,992, § 2. Generally, before a noncitizen may apply for an immigrant visa, she must be the beneficiary of an approved petition filed by a prospective employer in the United States or a family member who is U.S. citizen or lawful permanent resident. *See* 8 U.S.C. §§ 1153(a), 1154(a)(1). The intending immigrant beneficiary then must pay a required fee, complete a medical examination, submit a visa application, and attend an in-person interview before a consular officer at a U.S. embassy or consulate. *See* 8 U.S.C. § 1202(a), (e); 22 C.F.R. § 42.62.

After the visa interview, a consular officer decides whether to issue or refuse the visa. *See* 8 U.S.C. § 1201(a)(1), (g); 22 C.F.R. §§ 42.71, 42.81(a). The applicant bears the burden of demonstrating "to the satisfaction of the consular officer" that she is eligible for the visa. 8 U.S.C. § 1361. No visa "shall be issued to an alien" if "it appears to the consular officer" from the application papers "that such alien is ineligible to receive a visa" or if "the consular officer knows or has reason to believe" that the alien is ineligible. *Id*. § 1201(g); *see* 22 C.F.R. § 40.6 (explaining that the term "'reason to believe' . . . shall be considered to require a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa"). Consular officers must accordingly make a range of predictive determinations and reasonable inferences based on available evidence. *See, e.g.*, 8 U.S.C.

§ 1182(a)(2)(D) (alien who is coming to the United States intending to engage in prostitution or other unlawful commercialized vice is inadmissible).

**B.      Presidential Proclamation 9945**

Under 8 U.S.C. § 1182(f), the President has broad authority "to 'suspend the entry of all aliens or any class of aliens' whenever he 'finds' that their entry 'would be detrimental to the interests of the United States.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2407-08 (2018) (quoting 8 U.S.C. § 1182(f)). Section 1185(a)(1) further makes it unlawful "for any alien to . . . enter or attempt to . . . enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe." *Id*.

On October 4, 2019, the President issued the Healthcare Proclamation pursuant to his constitutional powers and his statutory authority in 8 U.S.C. § 1182(f) and § 1185(a)(1). 84 Fed. Reg. 53,991. The President issued the Proclamation to address the "substantial costs" U.S. healthcare providers and taxpayers bear "in paying for medical expenses incurred by people who lack health insurance or the ability to pay for their healthcare." *Id.* The President found that hospitals and other healthcare providers "often administer care to the uninsured without any hope of receiving reimbursement from them," and these costs are passed on to the American people in the form of higher taxes, higher premiums, and higher fees for medical services. *Id*. Further, the President found that uncompensated care costs have exceeded $35 billion in each of the last 10 years, a burden that can drive hospitals into insolvency. *Id*. The President also found that uninsured individuals strain Federal and State government budgets through reliance on publicly funded programs, which are ultimately funded by taxpayers, and by using emergency rooms to seek remedies for a variety of non-emergency conditions. *Id*.

The President found that challenges caused by uncompensated care are exacerbated by admitting to the United States thousands of immigrants annually who have not demonstrated any ability to pay for their healthcare costs. 84 Fed. Reg. at 53,991. Notably, the President found, "data show that lawful immigrants are about three times more likely than United States citizens to lack health insurance." *Id*. Thus, the President found, continuing to allow entry into the United States of "certain immigrants who lack health insurance or the demonstrated ability to pay for their healthcare" would be "detrimental to the interests of the United States," including protecting and addressing the challenges facing our healthcare system and protecting American taxpayers from the burden of uncompensated care. *Id*. To address these challenges, the President suspended, with various exceptions, entry into the United States of immigrants who cannot satisfy a consular officer at a visa interview that they (1) will be covered by approved health insurance, as set out in the Proclamation, within 30 days of entering the United States, or (2) will have "the financial resources to pay for reasonably foreseeable medical costs." *Id*. at 53,991-92.

The Proclamation has several exceptions. Because it applies to individuals who "seek[] to enter the United States pursuant to an immigrant visa," 84 Fed. Reg. at 53,992, § 2, it does not apply to noncitizens who seek to enter the United States on a nonimmigrant visa, including foreign students attending American schools, temporary agricultural workers, workers performing temporary or seasonal work, business travelers, or tourists. The Proclamation also does not apply to asylees or refugees. *Id*. It further exempts most children, various other visa categories, and any intending immigrant "whose entry would further important United States law enforcement objectives, as determined by the Secretary of State or his designee based on a recommendation of the Attorney General or his designee," or "whose entry would be in the national interest, as determined by the Secretary of State or his designee on a case-by-case basis." *Id*. at 53,992-93.

The Proclamation sets out a range of possible healthcare plans visa applicants can use to satisfy its requirements. 84 Fed. Reg. 53,992. Notably, an immigrant visa applicant does not have to establish coverage before the consular interview and does not necessarily have to establish that she will have coverage before entering the United States, only that she will be "covered by approved health insurance" within 30 days of entering the United States. *Id.* Alternatively, the intending immigrant may meet the requirements of the Proclamation by satisfying a consular officer that she has "the financial resources to pay for reasonably foreseeable medical costs." *Id.*

## C.    Procedural Background

The Proclamation was set to take effect on November 3, 2019. 84 Fed. Reg. 53,994. Several days before then, the State Department posted a notice to the public regarding the Proclamation on its website. *See* FAC, Ex. 2. On October 30, 2019, the State Department published in the *Federal Register* a "Notice of Information Collection Under OMB Emergency Review: Immigrant Health Insurance Coverage," 84 Fed. Reg. 58,199, which describes how the State Department planned to collect information from immigrant visa applicants covered by the Proclamation. The State Department published that Notice to comply with the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, which requires an agency to obtain approval from the Office of Management and Budget when it seeks to collect certain information from the public, *id.* § 3502(3).

Plaintiffs, seven U.S. citizens and an organization named Latino Network, filed a class-action complaint on October 30, 2019. ECF No. 1. On November 2, 2019, before the Proclamation's effective date, this Court issued a temporary restraining order, ECF No. 33, and on November 26, 2019, this Court entered a universal preliminary injunction halting all implementation and enforcement of the Proclamation, ECF No. 95. On November 27, 2019, Plaintiffs filed an amended class-action complaint that added the noncitizen spouse of a U.S.

citizen as a Named Plaintiff, ECF No. 100, and the Court later deemed that as the operative complaint over Defendants' objection, ECF No. 117. On April 7, 2020, the Court certified two subclasses under Federal Rule of Civil Procedure 23(b)(2): (1) a "U.S. Petitioner Subclass" comprised of individuals in the United States who have petitioned or will petition to sponsor noncitizen family members for immigrant visas, and (2) a "Visa Applicant Subclass" comprised of noncitizens who have applied or will apply for immigrant visas.[1] ECF No. 132.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

The jurisdiction of the federal courts is limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court must dismiss a complaint for lack of jurisdiction under Rule 12(b)(1) unless Plaintiffs meet their burden to establish that the Court has subject-matter jurisdiction to adjudicate their claims. *United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 625 (9th Cir. 2018). Plaintiffs must affirmatively establish standing and jurisdiction for each claim they raise and each form of relief they seek. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-53 (2006); *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016).

To satisfy the "'irreducible constitutional minimum' of standing," the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Foremost

---

[1] This Court's class certification order appoints the individual Named Plaintiffs and Latino Network as class representatives. ECF No. 132 at 36. Plaintiffs previously stated, however, that "Plaintiff Latino Network no longer seeks to serve as a class representative of either putative class." ECF No. 128 at 5 n.1.

among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff also must show that his claim is ripe. "To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). "A claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.*

### B.      Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss" for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## IV.    ARGUMENT

### A.      The Court lacks subject-matter jurisdiction over this action.

#### 1.      Plaintiffs lack standing for claims against DHS and HHS.

Plaintiffs lack standing to raise claims against DHS or HHS because they do not identify any injury that is "fairly traceable" to DHS or HHS, or any action by these agencies that has caused

or will cause any injury to Plaintiffs. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The portion of Plaintiffs' complaint titled "Agency Implementation of the Proclamation," FAC ¶¶ 40-47, raises allegations related only to a Department of State website posting, FAC ¶¶ 40-42, and a Department of State Notice of Information Collection, FAC ¶¶ 43-44. Plaintiffs do not identify or challenge a single action by DHS or HHS, and thus they cannot establish standing for claims against DHS or HHS.

### 2.   Latino Network lacks standing.

Latino Network cannot establish standing to challenge the Proclamation or its implementation because it has not suffered any concrete injury or alleged any imminent injury from the challenged actions, and must be dismissed as a Plaintiff. When an organization sues on its own behalf, it must establish standing in the same manner as an individual. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975).

According to Plaintiffs, Latino Network is "a non-profit organization based in Portland, Oregon," whose "organization mission is to educate and empower Multnomah County Latinos to achieve physical and mental health, safe housing, sustainable financial stability, and social support." FAC ¶ 22. Plaintiffs assert that the Proclamation "has and will continue to severely restrict and frustrate Latino Network's ability to fulfill its objectives of counseling and referring low- and moderate-income immigrants to services that will enable them to obtain adequate health-care benefits." FAC ¶ 214. Plaintiffs also assert that the Proclamation "has forced and will continue to force Latino Network to divert significant resources" to help members comply with the Proclamation, to train staff members, and to educate the community. FAC ¶ 215. Finally, Plaintiffs assert that "Latino Network's need to devote resources to respond to the Proclamation and mitigate its effects on the Portland Latino community necessarily limit[s] the resources available to carry

out its core services and programs, and frustrate its ability to carry out its organizational purpose." FAC ¶ 215.

Plaintiffs' allegations of injury are not "concrete," "particularized," or "fairly traceable" to particular conduct by the government. *Spokeo*, 136 S. Ct. at 1547. Courts that have found organizational standing have done so only in certain limited circumstances where an organization can establish an independent, cognizable injury in fact to its own protected interests, meaning it puts forth sufficient allegations to show that the challenged conduct "impaired the organization's ability to provide services." *Turlock Irrigation Dist. v. FERC,* 786 F.3d 18, 24 (D.C. Cir. 2015). This requires allegations that, if true, would show that the government's conduct inhibited the organization's "daily operations" in some cognizable way. *See PETA v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (Millett, J., dubitante).

Plaintiffs' alleged injuries are insufficient to meet this standard. They allege that Latino Network has been "forced" to "divert significant resources" to help its members comply with the Proclamation, train its staff, and educate the community. FAC ¶ 215. But these activities are completely consistent with Latino Network's asserted mission of "educat[ing] and empower[ing] Multnomah County Latinos to achieve physical and mental health, safe housing, sustainable financial stability, and social support." FAC ¶ 22. Even if Latino Network did alter the services it already was providing, that would not be a valid basis for standing—if it were, any lawyer would have standing to challenge the validity of any law that affects the advice she provides to her clients. Plaintiffs must allege some concrete injury to Latino Network caused by the Proclamation and that they have diverted resources to counteract that injury. *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020). But Plaintiffs do not allege any conflict between the Proclamation—which seeks to ensure that new immigrants have a plan for adequate healthcare—

and Latino Network's stated "objective" of assisting immigrants with "obtain[ing] adequate health-care benefits." FAC ¶ 214.

To the extent that Latino Network attempts to assert standing on behalf of some unidentified members, such an effort would also fail. A party lacks standing to challenge the government's provision (or denial) of benefits to a third party. *See, e.g.*, *DaimlerChrysler Corp.*, 547 U.S. at 342-46; *cf. O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 788 (1980) (emphasizing "distinction between government action that directly affects a citizen's legal rights" and "action that is directed against a third party and affects the citizen only indirectly or incidentally"). Moreover, the participation of eight individual Plaintiffs in this action shows that individuals are not impeded from bringing suit themselves. *See Kowalski v. Tesmer*, 543 U.S. 125, 130-34 (2004) (holding that attorneys could not rely on the rights of indigent criminal defendants because the attorneys did not show they had a sufficiently close relationship with hypothetical future clients or that those clients were hindered in protecting their own rights).

Accordingly, Latino Network does not have standing to bring any of the claims in this action, and it must be dismissed as a Plaintiff.

### 3. The individual Named Plaintiffs all either lack standing or their claims are moot.

Six of the eight individual Named Plaintiffs—John Doe #1, Juan Ramon Morales, Jane Doe #2, Jane Doe #3, Iris Angelina Castro, and Blake Doe—lack standing to assert any of their claims. These individual Plaintiffs have not alleged any actual or imminent injury attributable to the Proclamation or its alleged implementation. *See Spokeo*, 136 S. Ct. at 1548.

Plaintiffs have not tried to allege any actual injury and assert only that the Proclamation may cause some future injury. An "imminent" injury may satisfy the "injury in fact" standing requirement, so long as the injury is not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560.

But Plaintiffs' allegations of injury are entirely hypothetical and insufficient to establish standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 415-18 (2013) (holding that the plaintiffs could not establish standing based on potential future injury that was not "certainly impending," and similarly also could not establish standing based on actions they took "in response to a speculative threat"). Plaintiffs generally assert that they will not be able to meet the Proclamation's requirements and thus it will "permanently separate close family members and inflict irreparable harm." FAC ¶ 181. But Plaintiffs do not allege with specificity that there would be no way for their family members to comply with the Proclamation by planning to obtain adequate health insurance or pay for any reasonably foreseeable healthcare needs. Moreover, if Plaintiffs' family members would be denied an immigrant visa for some reason other than the Proclamation, they cannot establish that the Proclamation has caused or will imminently cause any injury. *See Updike v. Clackamas Cty.*, No. 15-723, 2015 WL 7722410, at *7 (D. Or. Nov. 30, 2015) (Simon, J.) (standing requires "actual or imminent" injury and "a causal connection between the injury-in-fact and the defendant's challenged behavior").

In any case, even if Plaintiffs could predict a consular officer's future decision, none has an imminent immigrant visa interview scheduled. Five of the U.S.-citizen Plaintiffs' relatives have not had interviews since filing this lawsuit even though this case has now been pending for seven months. *See* ECF No. 126-1, Plaintiffs' Answers to Defendants' First Set of Interrogatories, at 8-9, 45-46, 65-66, 88-89, 105-07.[2] One Plaintiff's wife previously had an immigrant visa interview scheduled for May 28, ECF No. 126-1 at 27-28, but that interview was canceled. Further, for the noncitizen relatives who currently live in the United States, they do not allege any plans to leave

---

[2] In a factual attack on jurisdiction, the Court may consider evidence beyond the complaint when deciding a motion to dismiss. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

the country for a yet-to-be-scheduled visa interview. "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of . . . 'actual or imminent' injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (internal citations omitted). By the time an interview is scheduled and plans are made to attend the interview, the Plaintiffs' individual health and financial circumstances may be entirely different in ways that affect the potential application of the Proclamation.

Because there is no "certainly impending" collision between Plaintiffs' interests and the challenged policies, *Clapper*, 568 U.S. at 409, there is no concrete "case or controversy" within the meaning of Article III, and Plaintiffs cannot establish subject-matter jurisdiction. At the very least, Plaintiffs' claims are not yet ripe, given that they depend upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). Accordingly, John Doe #1, Juan Ramon Morales, Jane Doe #2, Jane Doe #3, Iris Angelina Castro, and Blake Doe should be dismissed as Plaintiffs in this case.

The Court also lacks subject-matter jurisdiction over the remaining two individual Named Plaintiffs—Brenda Villarruel and Gabino Soriano Castellanos—because their claims are moot. Ms. Villarruel is a U.S. citizen who filed a petition to sponsor her noncitizen husband, Mr. Castellanos, for an immigrant visa. FAC ¶¶ 20-21, 210-13. Like the other Plaintiffs, they seek prospective relief to enjoin Defendants from implementing or enforcing the Proclamation. FAC, Prayer for Relief. But Mr. Castellanos already has received an immigrant visa, ECF No. 123, Pls.' Notice of Add'l Facts, and has entered the United States pursuant to that visa. Mr. Castellanos was never subject to the Proclamation, nor will he be subject to the Proclamation in the future. He cannot benefit from any prospective relief in this case, and thus his claims are moot. *See Slayman*

*v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014). Similarly, because Ms. Villarruel's claims depend on her husband's purported inability to demonstrate compliance with the Proclamation, FAC ¶¶ 210-13, her claims are also moot. Both Mr. Castellanos and Ms. Villarruel should be dismissed as Plaintiffs in this case.[3]

### 4.    Courts may not review non-constitutional challenges to the political branches' decisions to exclude noncitizens.

With respect to non-constitutional claims of U.S. citizens or any claims asserted by noncitizens abroad, it is a fundamental separation-of-powers principle, long recognized by courts and Congress through the INA, that the political branches' decision to exclude aliens abroad is not judicially reviewable. The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)); *Doe v. Trump*, 957 F.3d 1050, 1071 (9th Cir. 2020) (Bress, J., dissenting) (in this area the President is "operating at the apex of his constitutional mandate"). Accordingly, "[t]he conditions of entry for every alien, the particular classes of aliens that shall be denied entry altogether, the basis for determining such classification, the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based" are "wholly outside the power" of courts to control. *Fiallo*, 430 U.S. at 796 (citation omitted). Outside of a narrow exception for certain constitutional claims brought by U.S. resident petitioners—because exclusion is "a fundamental act of sovereignty" by the political branches and noncitizens have no "claim of right" to enter the United States—courts may

---

[3] Defendants respectfully disagree with this Court's decision that Mr. Castellanos can adequately represent the Visa Applicant Subclass, given that his claims became moot before the class was certified. In any case, as discussed below, the Visa Applicant Subclass is comprised entirely of aliens seeking entry into the United States and thus cannot state any claims for relief.

not review decisions to exclude noncitizens "unless expressly authorized by law." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950). Congress has established a comprehensive statutory framework for judicial review of decisions concerning an alien's ability to remain in the United States. *See* 8 U.S.C. § 1252. But Congress has never, in § 1252 or any other provision of the INA, authorized review of a visa denial, and in fact has expressly rejected a cause of action to seek judicial review of visa denials. *See* 6 U.S.C. § 236(f) (no "private right of action" to challenge decision "to grant or deny a visa"); *see also Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (denial of visa to alien abroad "is not subject to judicial review . . . unless Congress says otherwise"). Accordingly, any statutory claim is non-justiciable.[4]

Furthermore, Plaintiffs' assertion that they may challenge the Proclamation directly under the Constitution because it is "ultra vires" and violates the separation of powers, *see* FAC ¶¶ 243-47, is at odds with longstanding Supreme Court precedent. A claim alleging that the President acted in excess of authority granted by statute is a statutory claim, not a constitutional claim. *See Dalton v. Specter*, 511 U.S. 462, 471-77 (1994). And review of such claims is generally impermissible when "the statute in question commits the decision to the discretion of the President." *Id.* at 474. The language of § 1182(f) "exudes deference to the President in every clause" and "grants the President broad discretion" with respect to suspension determinations. *Hawaii*, 138 S. Ct. at 2408. Under *Dalton*, accordingly, the Proclamation is not subject to judicial review.

---

[4] The Supreme Court did not find it necessary to address these limits on judicial review in *Hawaii*, instead electing to "assume without deciding that plaintiffs' statutory claims [were] reviewable," because, "even assuming that some form of review is appropriate," Plaintiffs' challenges to the entry restrictions at issue in that case failed on the merits. *Hawaii*, 138 S. Ct. at 2407, 2409-11.

To the extent Plaintiffs attempt to raise constitutional claims, they may be brought only by the U.S. citizen Plaintiffs, not Mr. Castellanos or any member of the Visa Applicant Subclass. The Supreme Court has allowed a "circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 138 S. Ct. at 2419. And "[g]iven the authority of the political branches over admission," this exception is narrow: "when the Executive exercises this [delegated] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" against the asserted constitutional interests of U.S. citizens. *Id.* (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). There is no viable "separation of powers" theory that a statutory denial of a visa to an alien abroad "burdens a citizen's own constitutional rights." *Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring). At the very least, no foreign national—*i.e.* no member of the Visa Applicant Subclass—has any constitutional rights regarding entry into the United States and thus these individuals cannot pursue any claims in this case.

### 5.    Separation of powers bars injunctive relief against the President.

The Supreme Court has held that the separation of powers generally prevents a federal court from issuing an injunction purporting to supervise the President's performance of his duties. *Mississippi v. Johnson*, 71 U.S. 475, 501 (1867) ("[T]his court has no jurisdiction of a bill to enjoin the President in the performance of his official duties . . . ."); *accord Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality opinion); *id.* at 826-29 (Scalia, J., concurring in part and concurring in the judgment). All of Plaintiffs' claims ultimately challenge the President's authority and directives in the Proclamation itself. This Court lacks jurisdiction to grant injunctive relief against the President.

**B.      Plaintiffs fail to state a claim upon which relief can be granted.**

**1.      Plaintiffs fail to state a claim under the APA (Claim I).**

Plaintiffs base their APA claim on allegations that "Defendants have taken actions to implement the Proclamation, including informing visa applicants and consular officials of new requirements," FAC ¶ 229, and that those actions violate the APA in various ways, FAC ¶ 230-37. Plaintiffs have failed to state any claim for relief under the APA.

**a.      Latino Network cannot seek relief under the APA because it is not within the zone of interests protected by any statute Plaintiffs identify in the complaint.**

Even if Latino Network had standing to raise claims, it could not bring a claim under the APA because it is not within the "zone of interests" arguably protected by any statute that Plaintiffs identify. Judicial review under the APA "extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). To identify the interests protected by a statute, the court employs "traditional tools of statutory interpretation." *Id.* at 1387. The analysis focuses not on the purpose of the statute as a whole but on the "particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997). Latino Network cannot meet this test because Plaintiffs do not cite any statute in their complaint that extends rights to or regulates the interests of immigrant advocacy organizations. Accordingly, Latino Network cannot challenge the Proclamation or its implementation under the APA, and its APA claims must be dismissed.

**b.      The APA does not authorize claims against the President.**

To the extent that Plaintiffs' APA claims challenge the President's issuance of the Proclamation, these claims must be dismissed. The APA provides a cause of action for "[a] person suffering a legal wrong because of *agency action*." 5 U.S.C. § 702 (emphasis added). The President

is not an "agency" under the APA, and thus the APA does not permit challenges to Presidential action. *Dalton*, 511 U.S. at 468-70; *Franklin*, 505 U.S. at 800-01 (holding that Congress did not expressly allow for review of the President's actions in the APA so "his actions are not subject to its requirements"). Plaintiffs' complaint is targeted at the Proclamation and not at any agency action that could conceivably be reviewable under the APA. Indeed, Plaintiffs seek a declaration that the Proclamation is "unlawful and invalid" and seek an injunction preventing Defendants "from implementing or enforcing any part of the Proclamation." FAC, Prayer for Relief, ¶¶ A-B. Because Plaintiffs seek to enjoin the Proclamation, they cannot raise claims based on APA rules or standards. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018).

### c.    Plaintiffs cannot avoid the barriers to APA review by purporting to challenge agency "implementation" of the Proclamation.

Plaintiffs cannot avoid these barriers to stating an APA claim by asserting that "Defendants have taken actions to implement the Proclamation" that "constitute final agency action(s) within the meaning of the [APA]." FAC ¶ 229.

As an initial matter, 8 U.S.C. § 1182(f) and § 1185(a)(1) "exude[ ] deference" to the President and "foreclose the application of any meaningful judicial standard of review." *Webster v. Doe*, 486 U.S. 592, 600 (1998). These principles bar judicial review in this case because the Supreme Court "ha[s] long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo*, 430 U.S. at 792 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)). "The conditions of entry for every alien, the particular classes of aliens that shall be denied entry altogether, the basis for determining such classification, the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based" are "wholly

outside the power of [the courts] to control." *Id.* at 796 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 596-97 (1952) (Frankfurter, J., concurring)). Thus, there is no basis for statutory review of the Proclamation or its "implementation" under the APA.[5]

Furthermore, the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). "[T]wo conditions . . . generally must be satisfied for agency action to be 'final' under the APA. 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Hawkes Co.*, 136 S. Ct. at 1813 (quoting *Bennett*, 520 U.S. at 177-78). Accordingly, for Plaintiffs to state an APA claim, they must adequately identify in their complaint final agency actions that carry some legal force by themselves, not simply as a result of the President's Proclamation. Plaintiffs have failed to do so because the only relevant legal obligations they identify associated with the Proclamation arise from the Proclamation itself.

As noted above, the only agency "actions" Plaintiffs identify and assert as "final" are a Department of State website posting, FAC ¶¶ 40-42, and a Department of State Notice of Information Collection, FAC ¶¶ 43-44. As to the website posting, the State Department routinely provides information to the public via website postings that describe various procedures for immigrant visa applicants to follow. Consistent with that practice, the State Department posted on its website a notice to the public of the existence of the Proclamation. FAC, Ex. 2. The posting

---

[5] The Supreme Court in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), did not rule on whether separation of powers barred statutory claims relating to exclusion of foreign nationals. *See id.* at 2407. The Court rejected plaintiffs' statutory claims on the merits, which made it unnecessary to decide whether the claims were otherwise barred. *Id.* at 2407, 2415.

quoted the Proclamation and referenced other existing requirements for immigrant visa interviews and adjudications. *Id*. The website posting did not create or alter any legal rights and obligations. Because it did not have any independent legal effect, it is not a "final agency action" under the APA. Indeed, the Proclamation leaves it entirely to the discretion of the Secretary of State to decide whether to set out additional guidelines on how the Proclamation should be implemented. 84 Fed. Reg. at 53,993, § 3. And, had the State Department not provided any notice to the public on its website, the Proclamation's suspension of entry still would have gone into effect.

Similarly, Plaintiffs' assertion that the State Department's Notice of Information Collection is a "final agency action" represents a fundamental misunderstanding of that Notice. That Notice was a preliminary step in the statutorily mandated Paperwork Reduction Act process, not a final action that could be challenged under the APA. The Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq*., generally requires an agency to obtain OMB approval to ask standardized questions of 10 or more members of the public within a 12-month period, *id*. § 3502(3) (defining "collection of information"). The agency can only collect such information once it has received OMB approval. *See* 44 U.S.C. § 3507(a)(2). The State Department thus requested OMB approval for consular officers to ask standardized questions of immigrant visa applicants covered by the Proclamation. 84 Fed. Reg. 58,199. This request for approval from OMB was simply an intermediary step in the process of collecting information from the public; it marked neither the "consummation of [a] decision making process" nor was it an action from which "legal consequences will flow." *Bennett*, 520 U.S. at 178.

Plaintiffs ultimately fail to direct their complaint against any "final agency action," as required to raise a claim under the APA. *See* 5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*., 497 U.S. 871, 890-93 (1990). One reason for this is that the final agency action that might

be subject to review under these principles—a visa denial—is protected from review by principles of consular nonreviewability, as discussed below. But that does not give license to recast the website posting or information-collection process as final agency actions in order to circumvent this core nonreviewability principle. Plaintiffs' nebulous challenge to the State Department's attempts to notify the public about the Proclamation and actions taken to comply with the Paperwork Reduction Act must be dismissed.

The Court likewise must dismiss Plaintiffs' claim that Defendants were required to engage in formal rulemaking before the Proclamation could go into effect. FAC ¶ 230. Again, the Proclamation itself creates no such requirement. 84 Fed. Reg. at 53,993, § 3. Instead, the Proclamation leaves it entirely to the discretion of the Secretary of State to decide whether to set out additional guidelines on how the Proclamation should be implemented. *Id.* There is no directive that the agency must go through notice-and-comment rulemaking. Moreover, even if the agencies issued guidance, the Ninth Circuit has held that when an agency adopts a "general statement of policy" to guide its officials in making discretionary decisions on a case-by-case basis, such guidance documents "are exempted from the notice-and-comment requirement." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019). Requiring notice-and-comment rulemaking before a Presidential proclamation could take effect would contradict the Supreme Court's decision in *Hawaii*, which rejected the suggestion that there are implicit procedural limitations on the broad delegation of authority conferred on the President by § 1182(f). *Hawaii*, 138 S. Ct. at 2408-10.

> **d.    The doctrine of consular nonreviewability prevents Plaintiffs from challenging consular officers' decisions on visa applications.**

Even if Plaintiffs had identified a final agency action, the doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the authority to issue or refuse an application for a visa made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), (g). A "'consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review.'" *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) (quoting *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)). This rule is rooted in "the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (quotation omitted). Judicial intervention in decisions to exclude aliens "has been restricted to those matters the review of which has been authorized by treaty or by statute, or is required by the paramount law of the Constitution." *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981) (quotation omitted). "[W]here Congress entrusts discretionary visa-processing . . . in a consular officer . . . the courts cannot substitute their judgments for those of the Executive." *Allen*, 896 F.3d at 1105 (citing *Mandel*, 408 U.S. at 769-70).

APA claims are not permitted where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), which is "determined not only from [the statute's] express language, but also from the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). It is well established that the text, structure, and history of the INA all compel the "unmistakable" conclusion that "the immigration laws 'preclude judicial review' of the of the consular visa decisions." *Saavedra*

*Bruno*, 197 F.3d at 1160. Congress has specifically foreclosed APA review even for aliens subject to exclusion orders in the United States, *see Allen*, 896 F.3d at 1104-07, because allowing such suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he may litigate in the courts of the United States against the U.S. government as a defendant," H.R. Rep. No. 1086, 87th Cong., 1st Sess. 33 (1966). The APA does not disturb other "limitations on judicial review," 5 U.S.C. § 702(1), including the "doctrine of consular nonreviewability," which predates the passage of the APA. *Saavedra Bruno*, 197 F.3d at 1160. Thus, in *Allen*, the Ninth Circuit determined that because "review is not required by some other provision of law, such as the Constitution, the APA, or the INA, the long-standing rule foreclosing review of the merits of consular visa decisions is precisely the kind of" limitation "that forms an exception to the APA's cause of action and review provisions." *Allen*, 896 F.3d at 1105.

The APA thus does not provide an avenue for review of consular decisions regarding visas. *Id.* at 1108 (citing *Saavedra Bruno*, 197 F.3d at 1164).

### 2. Plaintiffs fail to state an equal protection claim (Claim II).

Even on behalf of the U.S. citizen Plaintiffs and U.S. Petitioner Subclass, Plaintiffs have failed to state an equal protection claim because they do not identify any "fundamental right" that has been burdened or any suspect class, and they do not allege facts that could establish that the Proclamation was motivated by racial animus.

To state an equal protection claim, Plaintiffs must, at the very least, identify a "fundamental right" that has been burdened and identify a "suspect class" that has been targeted. *See Romer v. Evans*, 517 U.S. 620, 631 (1996). Plaintiffs have done neither. They state that the Proclamation and its implementation "burden a fundamental right" and "were motivated by intentional discrimination and/or animus based on race, ethnicity, and/or national origin." FAC ¶ 241. But

nowhere in Plaintiffs' complaint—including the section titled "The Proclamation Does Not Pass Muster Under Equal Protection," FAC ¶¶ 162-79—do they identify the "fundamental right" that they allege has been burdened or any suspect class. Plaintiffs say only that the "intended result" of the Proclamation is "to reduce immigration from predominantly nonwhite countries," FAC ¶ 179, and contend that racial animus is evident in a number of statements made or allegedly made by the President, FAC ¶¶ 163-67, 169, 172, 175.

Such general allegations that Defendants' actions were motivated by racial animus are not enough to state an equal protection claim. *See Hawaii*, 138 S. Ct. at 2421 (plaintiffs must allege that it is "impossible to discern a relationship to legitimate state interests" or that the actions are "inexplicable by anything but animus"); *Iqbal*, 556 U.S. at 680-83 (holding that general allegations of discriminatory intent on the part of government officials did not state a claim when not supported by specific facts). As noted above, the Supreme Court repeatedly has emphasized that courts may apply only "a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen," which requires a court to assess only "whether the Executive gave a 'facially legitimate and bona fide' reason for its action." *Hawaii*, 138 S. Ct. at 2418-19, 2420 n.5 (quoting *Mandel*, 408 U.S. at 769). While the Court in *Hawaii* acknowledged that *Mandel*'s "narrow standard of review" has particular force in cases that implicate national security concerns, this circumscribed judicial inquiry is not limited to such cases. *Id*. at 2419. The Court cited multiple opinions applying and affirming this "deferential standard of review across different contexts and constitutional claims," including cases where no national security concerns were raised. *Id*. (citing *Fiallo*, 430 U.S. at 795). In *Fiallo*, the Court "applied *Mandel* to a 'broad congressional policy' giving immigration preferences to mothers of illegitimate children," and explained that "it is not the judicial role in cases of this sort to probe and test the justifications" of

immigration policies. *Id*. at 795, 799. The Court specifically rejected the argument that the Court's deferential standard of review in prior immigration cases was limited to cases involving groups of aliens "perceived to pose a grave threat to the national security." *Id*. at 796.

Plaintiffs have failed to allege any facts that would show it is "impossible to discern a relationship to legitimate state interests" or that Defendants' actions are "inexplicable by anything but animus." *Hawaii*, 138 S. Ct. at 2421. Indeed, other than exempting certain Iraqis and Afghans—an exemption that is inconsistent with Plaintiffs' theory—the Proclamation does not distinguish visa applicants based on nationality, race, or ethnicity. Moreover, the stated purposes of the Proclamation include reducing the "substantial costs" that U.S. healthcare providers and taxpayers bear "in paying for medical expenses incurred by people who lack health insurance or the ability to pay for their healthcare," as well as decreasing uninsured individuals' reliance on emergency rooms for non-emergency conditions. 84 Fed. Reg. 53,991. Indeed, the recent burdens on the healthcare system caused by the COVID-19 pandemic underscore the importance of healthcare planning by everyone, including intending immigrants before their entry into the United States, to avoid reliance on emergency room services. *See Doe v. Trump*, 944 F.3d 1222, 1228 (9th Cir. 2019) (Bress, J., dissenting) (noting that, while the preliminary injunction is in effect, the government cannot avoid harms identified in the Proclamation, including the "disruption in the provision of emergency services"). Legitimate public policy goals such as these are well-recognized and uncontroversial. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (noting that, under rational basis scrutiny, as long as there is some conceivable set of facts that would justify a classification, the classification prevails, regardless of the actual rationale underlying the Government's action and regardless of whether the conceivable basis is borne out by evidence); *cf. Mathews v. Diaz*, 426 U.S. 67, 80, 82-83 (1976) (observing that Congress may

legitimately distinguish between citizens and noncitizens in distribution of welfare benefits and upholding a statute that denied Medicare benefits to noncitizens unless they had been admitted for permanent residence and had resided in the United States for five years).

Plaintiffs have failed to state an equal protection claim, and this claim must be dismissed.

### 3. Plaintiffs fail to state a claim that the Proclamation is "ultra vires" (Claim III).

Plaintiffs assert that the Proclamation is "ultra vires" because it "exceeds" the President's authority under the INA, FAC ¶ 246, and "violates constitutional separation of power principles," FAC ¶ 247. Plaintiffs are wrong.

### a. Plaintiffs cannot state a claim that the Proclamation exceeds the President's authority under the INA.

Even if Plaintiffs could bring a claim that a Presidential Proclamation is "ultra vires," they have not stated such a claim here. As an initial matter, the President issued the Proclamation pursuant to § 1182(f) *and* § 1185(a)(1). Plaintiffs do not challenge the President's authority under § 1185(a)(1), which allows the President to adopt "reasonable rules, regulations, and orders" governing entry or removal of aliens, "subject to such limitations and exceptions as [he] may prescribe."

Furthermore, Plaintiffs cannot state a claim that the Proclamation exceeds the President's authority under § 1182(f). Section 1182(f) provides that "[w]henever the President finds that the entry of . . . any class of aliens into the United States would be detrimental to the interests of the United States, he may . . . suspend entry of . . . any class of aliens . . . or impose on the entry of aliens any restrictions he may deem to be appropriate." This statute "exudes deference to the President in every clause," and in that statute Congress "entrusts to the President the decisions whether and when to suspend entry," "whose entry to suspend," "for how long," and "on what

conditions." *Hawaii*, 138 S. Ct. at 2408; *see also Doe*, 957 F.3d at 1075 (Bress, J., dissenting) ("[I]n combination with his innate powers under the Constitution, § 1182(f) creates the high-water mark for the President's ability to place limits on who enters this country."). "[T]he sole prerequisite" to this "comprehensive delegation" "set forth in § 1182(f) is that the President 'find[]' that entry of the covered aliens 'would be detrimental to the interests of the United States.'" *Hawaii*, 138 S. Ct. at 2408.

Here, the President lawfully exercised this authority after "find[ing] that the unrestricted immigrant entry into the United States" of "thousands of aliens who have not demonstrated any ability to pay for their healthcare costs" "would . . . be detrimental to the interests of the United States." 84 Fed. Reg. 53,991. The Proclamation sets out the President's reasons for finding that entry of covered immigrant visa applicants would be detrimental to the United States, with the goal being to ensure that immigrants entering the country carry a minimum level of insurance or have sufficient financial resources to reduce uncovered healthcare costs borne by healthcare providers and the public. *Id.* The lack of insurance also causes new arrivals to unnecessarily disrupt the provision of emergency services by using emergency rooms for treatment of a variety of non-emergency conditions. *Id.* This is a problem because new arrivals lack health insurance at rates around three times those of U.S. citizens. *Id.*

Importantly, *Hawaii* made clear that Plaintiffs cannot raise a challenge to the sufficiency of the findings in a Presidential Proclamation. 138 S. Ct. at 2409 (finding "questionable" argument that President must "explain [his] finding[s]"). The Supreme Court also emphasized that, "even assuming that some form of review is appropriate," the proclamation at issue in that case (like the one here) contained more detailed findings than prior proclamations. *Id.* (citing Proclamation No. 6958, where President Clinton explained in only "one sentence why suspending entry of members

of the Sudanese government and armed forces" was in the interests of the United States, and Proclamation No. 4865, where President Reagan suspended entry of certain "undocumented aliens from the high seas" with a five-sentence explanation). A more "searching inquiry" into the findings "is inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere." *Id.*

Plaintiffs thus cannot raise a challenge to the Proclamation based on their "perception of its effectiveness and wisdom," and courts "cannot substitute [their] own assessment for the Executive's predictive judgments." *Id.* at 2421. But that is precisely what Plaintiffs assert here based on their view that the Proclamation will not further its "goal of reducing the burden of uncompensated care for uninsured individuals." FAC ¶ 70; *see also* FAC ¶¶ 67-73 (section entitled "The Proclamation Is Internally Inconsistent with Its Stated Goals"). Plaintiffs' views on this point are irrelevant. "'Whether the President's chosen method' of addressing perceived risks is justified from a policy perspective is 'irrelevant to the scope of his [§ 1182(f)] authority.'" *Hawaii*, 138 S. Ct. at 2409 (quoting *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 187-88 (1993)). The President is not required to "conclusively link all of the pieces in the puzzle before [courts] grant weight to [his] empirical conclusions." *Hawaii*, 138 S. Ct. at 2409. In any case, Plaintiffs' own allegations that the Proclamation will impact them because they do not have, and do not plan to obtain, adequate health insurance, FAC ¶¶ 182-213, is consistent with the findings and concern identified in the Proclamation—the high rate at which new arrivals lack insurance.

Similarly, Plaintiffs cannot raise a challenge to the Proclamation's duration. They assert that the Proclamation exceeds the President's authority under section 1182(f) because it is "indefinite." FAC ¶¶ 8, 91, 181, 246. Such a claim cannot be squared with *Hawaii*, which rejected an identical argument. 138 S. Ct. at 2409. The President is not "required to prescribe in advance a

fixed end date for the entry restrictions," and "[i]n fact, not one of the 43 suspension orders issued prior to this litigation has specified a precise end date." *Id.* at 2409-10. Moreover, Plaintiffs' allegation that the Proclamation is indefinite is pure speculation. While the President did not set a specific end date when he issued the Proclamation, just like the proclamation in *Hawaii*, the Proclamation requires regular reporting to the President on its "continued necessity," including requiring various cabinet secretaries to immediately advise the President if it is no longer warranted, 84 Fed. Reg. 53,993. *See Doe*, 957 F.3d at 1076-77 (Bress, J., dissenting) ("When exercising his vast powers under § 1182(f) and Article II of the Constitution, nothing requires the President to bind himself to the mast and pre-commit to the recommendations of inferior officials.").

Plaintiffs likewise have failed to state a claim that the Proclamation exceeds the President's authority under § 1182(f) because of any conflict with other provisions of the INA. For Plaintiffs to state such a claim, they must identify an express conflict between the Proclamation and a specific provision of the INA, *Hawaii*, 138 S. Ct. at 2411, which they have failed to do. Plaintiffs assert only that the Proclamation impermissibly "create[s] a new ground of inadmissibility that Congress has previously considered and chosen not to include in the INA." FAC ¶ 246. Plaintiffs do not specify the ground to which they are referring. Elsewhere in their complaint, however, Plaintiffs point to various considerations by Congress when enacting the current version of the public charge ground of inadmissibility. FAC ¶ 117-18. Thus, Plaintiffs appear to, at most, attempt to plead a conflict between the Proclamation and the public-charge ground of inadmissibility in

8 U.S.C. § 1182(a)(4).[6] Plaintiffs' complete lack of clarity is alone enough reason to dismiss this claim. *See Iqbal*, 556 U.S. at 678.

In any case, there is no conflict between the Proclamation and the public-charge ground of inadmissibility, much less the sort of "express[] override" of the INA that would be necessary to state such a challenge. *Hawaii*, 138 S. Ct. at 2411. The INA makes certain categories of persons inadmissible, but it does not make persons outside those categories admissible. Section 1182(f) vests the President with "ample power" to impose *additional* limitations on entry beyond the inadmissibility grounds in the INA. *See Hawaii*, 138 S. Ct. at 2408; *Sale*, 509 U.S. at 187; *Abourezk v. Reagan*, 785 F.2d 1043, 1049 n.2 (D.C. Cir. 1986) (describing § 1182(f)'s "sweeping proclamation power" as enabling the President to supplement the INA inadmissibility grounds). Congress's enactment of particular bars to admissibility like the public charge provision thus does not limit the President's authority under § 1182(f) to find that entry of other aliens would be detrimental to the United States. To the contrary, that is the purpose of § 1182(f): to permit the President to restrict the entry of aliens who otherwise would be admissible to the United States. *Hawaii*, 138 S. Ct. at 2412.

---

[6] Plaintiffs also mention the VAWA exception to the public charge ground of inadmissibility, 8 U.S.C. § 1182(a)(4)(E), FAC ¶ 89, but do not specifically allege any inconsistency between that provision and the Proclamation. Even if they had, Plaintiffs first would lack standing to assert such a conflict, as none of them alleged that they or their family members would fall under that exception. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing" as "standing is not dispensed in gross"). Moreover, § 1182(a)(4)(E), like the rest of the public-charge provision, does not prevent the President from exercising his authority under § 1182(f) to suspend the entry of aliens who might otherwise be admissible. *Hawaii*, 138 S. Ct. at 2410-12; *see also Doe*, 957 F.3d at 1082 (Bress, J., dissenting) (explaining that "a petitioner who meets VAWA eligibility requirements is not thereby entitled to admission into the United States" but rather "is merely exempted from the public charge limitations").

The Healthcare Proclamation complements the existing provisions of the INA and establishes an additional bar to entry based on a distinct harm to the national interest—the high rate at which new immigrants lack healthcare coverage and the costs and burdens this imposes on the healthcare system. The public charge provision, on the other hand, renders inadmissible, with limited exceptions, an alien who is likely to become a public charge. Importantly, nothing in the Proclamation alters the public charge analysis; consular officers must still evaluate inadmissibility under § 1182(a)(4) irrespective of the Proclamation. 84 Fed. Reg. 53,993 ("The review required by [the Proclamation] is separate and independent from the review . . . required by other statutes . . . in determining the admissibility of an alien."). The Proclamation cannot "expressly override" the public-charge provision, *Hawaii*, 138 S. Ct. at 2411, when it has no impact *at all* on how consular officers administer that provision, *see Doe*, 957 F.3d at 1081 (Bress, J., dissenting) ("Nothing in Proclamation No. 9945 'eviscerates' the public charge provision, for the obvious reason that these are simply two different grounds of inadmissibility."). Because Plaintiffs have not identified any express conflict between the Proclamation and the public charge provision, they cannot state a claim based on that provision.

> **b.** **Plaintiffs cannot state a claim that the Proclamation "violates constitutional separation of powers principles."**

Plaintiffs also fail to state a claim that the Proclamation "violates constitutional separation of powers principles." Plaintiffs assert that the Proclamation "contravenes Congress's expressed intent to provide a certain minimum level of coverage to all legal immigrants . . . and to extend certain health care-related benefits to legal immigrants." FAC ¶ 247. Once again, Plaintiffs fail to identify any specific statute that allegedly conflicts with the Proclamation, *see Hawaii*, 138 S. Ct. at 2411, and their failure to do so is sufficient to dismiss this claim, *see Iqbal*, 556 U.S. at 678.

In the background section of their complaint, Plaintiffs allege that the Affordable Care Act (ACA), the Public Responsibility and Work Opportunity Reconciliation Act, and the Children's Health Insurance Program Reauthorization Act "express and reflect Congress's intent to extend certain health care-related benefits to legal immigrants." FAC ¶ 75; *see also id.* ¶¶ 93-105. Assuming that Plaintiffs intended to plead a conflict between these healthcare laws and the Proclamation, they would fail to state a claim.[7] *See Doe*, 957 F.3d at 1083 (Bress, J., dissenting) ("[T]he notion that the Proclamation conflicts with the ACA is manifestly incorrect."). Plaintiffs assert that "the ACA was intended to expand access to meaningful and affordable health insurance coverage for all U.S. residents, including legal immigrants." FAC ¶ 98. But the Proclamation applies to individuals who are seeking entry into the United States, and "the ACA says nothing about who may or may not enter this country." *Doe*, 957 F.3d at 1083 (Bress, J., dissenting). The Proclamation does not preclude a new immigrant, once she is lawfully present in the United States, from obtaining coverage that may be available consistent with the ACA. 84 Fed. Reg. at 53,992.

The Supreme Court's treatment of a similar claim in *Sale* shows the fallacy of a claim based on the ACA. *Sale* dealt with statutory asylum protections that were specifically intended for individuals once they arrived in the United States:

> The INA offers these statutory protections only to aliens who reside in or have arrived at the border of the United States. For 12 years, in one form or another, the interdiction program challenged here has prevented Haitians such as respondents from reaching our shores and invoking those protections.

*Sale*, 509 U.S. at 160. Despite holding that Congress intended these protections to be available to individuals upon reaching our shores, the Supreme Court held that "[i]t is perfectly clear" that

---

[7] Plaintiffs also would lack standing for such a claim. Plaintiffs do not, for example, allege that they intend to obtain insurance in the United States made available to them consistent with the ACA or otherwise utilize the healthcare provisions they cite.

§ 1182(f) "grants the President ample power to establish a naval blockade that would simply deny illegal Haitian migrants the ability to disembark on our shores." *Id*. at 187-88. If the plaintiffs in *Sale* had no claim, Plaintiffs here cannot state a claim based on ACA provisions that provide benefits "only to aliens who reside in . . . the United States." *Id*. 160.

There is simply no indication in the ACA or other healthcare provisions cited by Plaintiffs that Congress intended to limit the President's authority to suspend or restrict entry under § 1182(f). Accordingly, Plaintiffs fail to state a "separation of powers" claim.

### 4.   Plaintiffs fail to state a procedural due process claim (Claim IV).

Plaintiffs fail to state a procedural due process claim under the Due Process Clause of the Fifth Amendment. Plaintiffs vaguely assert that the U.S. citizen Plaintiffs have statutory and regulatory "rights related to the petitioning for and issuance of visas and other immigration benefits," and "constitutionally protected liberty interests in family reunification," FAC ¶¶ 252, 253, 255, and that implementation of the Proclamation would "deprive individuals" of these rights and liberty interests "without due process," FAC ¶ 256.

First, there is no statutory or regulatory "right" to file a petition to sponsor another person for a visa. Indeed, the admission and exclusion of foreign nationals is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo,* 430 U.S. at 792; *see Harisiades*, 342 U.S. at 588-89 ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power.").

Moreover, individuals in the United States do not have a due process "right" to have their noncitizen family members receive a visa to enter and reside in the United States. *Din*, 135 S. Ct. at 2135; *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) ("As we have said before, the

generic right to live with family is 'far removed' from the specific right to reside in the United States with non-citizen family members."); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1022 (N.D. Cal. 2019) (dismissing plaintiffs' due process challenge to Presidential proclamation based on an alleged right to the "integrity of the family unit"). In *Hawaii*, the Court reaffirmed that, to the extent a U.S. citizen has any due process rights to assert with respect to a family member living abroad, the government provides all the process that is due by giving a statutory citation to explain a visa denial. 138 S. Ct. at 2419. Thus, due process principles are generally not applicable to federal government action related to adjudication of visa applications, and even when they are, they are easily satisfied and are not implicated by the Proclamation.

Again, the Supreme Court has allowed a "circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen," and that requires a court to assess only "whether the Executive gave a 'facially legitimate and bona fide' reason for its action." *Hawaii*, 138 S. Ct. at 2419 (citing *Mandel*, 408 U.S. at 770). The "respect for the political branches' broad power over the creation and administration of the immigration system" means that "the Government need provide only a statutory citation to explain a visa denial." *Id*. That is the full scope of due process rights in this area. Nothing more is required.

As with their equal protection claim, Plaintiffs similarly fail to allege any facts to support a claim that there is no legitimate basis for the Proclamation or its implementation. Plaintiffs assert only that consular officers will ask questions to determine compliance with the Proclamation, FAC ¶ 249, and that a "prospective immigrant's entry to the United States therefore depends on a determination made by a consular officer with no medical training to accurately assess existing medical conditions and health issues existing at the time of the visa adjudication," FAC ¶ 250. But beyond the circumscribed inquiry described above, Plaintiffs cannot raise a due process challenge

to the ways in which visa determinations are made by consular officers. In any event, consular officers are trained to assess the health-related grounds of inadmissibility, 8 U.S.C. § 1182(a)(1), based on the medical examinations that immigrant visa applicants have long been required to submit, *id*. § 1201(d) ("Prior to the issuance of an immigrant visa to any alien, the consular officer shall require such alien to submit to a physical and mental examination in accordance with such regulations as may be prescribed."). Plaintiffs' procedural due process claim must be dismissed for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of subject-matter jurisdiction and for failure to state any claim for which relief can be granted.

Dated: May 29, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

BILLY J. WILLIAMS
United States Attorney

AUGUST E. FLENTJE
Special Counsel, Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation

BRIAN C. WARD
Senior Litigation Counsel

*/s/ Courtney E. Moran*
COURTNEY E. MORAN
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4587
courtney.e.moran@usdoj.gov