**Stephen Manning** (SBN 013373)
stephen@innovatiofnlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
**Tess Hellgren** (SBN 191622)
tess@innovationlawlab.org
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN DOE #1; JUAN RAMON MORALES; JANE DOE #2; JANE DOE #3; IRIS ANGELINA CASTRO; BLAKE DOE; BRENDA VILLARRUEL; GABINO SORIANO CASTELLANOS; and LATINO NETWORK, | Case No.: 3:19-cv-01743-SI |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN MCALEENAN, in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR II, in his official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

I.    District Court Proceedings................................................................................2

    A.    Order Granting Plaintiffs' Motion for a Temporary Restraining Order .................2

    B.    Order Granting Plaintiffs' Motion for a Preliminary Injunction ...........................2

    C.    Order Granting Plaintiffs' Motion for Class Certification......................................3

    D.    Orders Granting Plaintiffs' Motions to Compel Production and Completion of the Administrative Record................................................................3

II.    Ninth Circuit's Order Denying Defendants' Motion to Stay the Injunction .....................4

LEGAL STANDARDS ................................................................................................5

ARGUMENT ...................................................................................................5

I.    This Court Has Subject Matter Jurisdiction Over This Action...........................................5

    A.    Plaintiffs Have Standing To Sue All Defendants. ...................................................5

    B.    Latino Network Has Standing...................................................................................7

    C.    Named Plaintiffs Have Standing and Their Claims Are Not Moot. .......................9

    D.    This Court Has Authority to Enjoin Executive Action. ........................................13

II.    Plaintiffs Have Properly Stated Each of Their Claims. ....................................................14

    A.    Plaintiffs Have Stated an APA Claim....................................................................14

        1.    Latino Network Satisfies the Zone of Interests Test..................................14

        2.    Plaintiffs' APA Claim Is Not a Claim Against the President. ...................15

        3.    The APA Authorizes an Injunction Against Agency Implementation of the Proclamation.........................................................15

        4.    Plaintiffs' APA Claims Are Not Barred by the Doctrine of Consular Non-reviewability.......................................................................20

B.    Plaintiffs Have Stated an Equal Protection Claim. ...............................................21

C.    Plaintiffs Have Stated a Claim that the Proclamation Was Ultra Vires
      Executive Action that Violated the Separation of Powers....................................29

D.    Plaintiffs Have Stated a Claim Under the Due Process Clause. ...........................30

CONCLUSION....................................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Milas,*
896 F.3d 1094 (9th Cir. 2018) ................................................................................20

*Allergan, Inc. v. Burwell,*
No. 13-00264 (RJL), 2016 WL 1298960 ................................................................18

*Appalachian Power Co. v. EPA,*
208 F.3d 1015 (D.C. Cir. 2000) ....................................................................17, 18, 19

*Arce v. Douglas,*
793 F.3d 968 (9th Cir. 2015) ...................................................................................1

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................................................5, 28

*Atay v. County of Maui,*
842 F.3d 688 (9th Cir. 2016) .................................................................................10

*Ave. 6E Inv's., LLC v. City of Yuma,*
818 F.3d 493 (9th Cir. 2016) .............................................................................22, 23

*Azar v. Allina Health Services,*
139 S. Ct. 1804 (2019) ...........................................................................................18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................5

*Block v Community Nutrition Inst.,*
467 U.S. 340 (1984) ...............................................................................................21

*Bustamonte v. Mukasey,*
531 F.3d 1059 (9th Cir. 2008) ..............................................................................20

*California Dep't of Water Res. v. F.E.R.C.,*
341 F.3d 906 (9th Cir. 2003) ................................................................................18

*Cardenas v. United States,*
826 F.3d 1164 (2016) .......................................................................................30, 31

*Chamber of Commerce of U.S. v. Reich,*
74 F.3d 1322 (D.C. Cir. 1996) ..............................................................................17

*Ciba-Geigy Corp. v. EPA*,
    801 F.2d 430 (D.C. Cir. 1986) ................................................................18, 19

*City & Cty. of S.F. v. U.S. Citizenship & Immigration Servs.*,
    944 F.3d 773 (9th Cir. 2019) ................................................................32

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)................................................................21, 25, 28

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................12

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998)................................................................34

*Colum. Riverkeeper v. U.S. Coast Guard*,
    761 F.3d 1084 (9th Cir. 2014) ................................................................18

*Dep't of Homeland Sec. v. Thuraissigiam*,
    No. 19-161, 2020 U.S. LEXIS 3375 (S. Ct. 2020) ................................................................32

*Department of Homeland Security v. Regents*,
    No. 18-587, 2020 WL 3271746 (June 18, 2020)................................................................21, 25, 26

*Doe #1 v. Trump*,
    418 F. Supp. 3d 573 (D. Or. 2019) ................................................................ *passim*

*Doe #1 v. Trump*,
    423 F. Supp. 3d 1040 (D. Or. 2019) ................................................................ *passim*

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ................................................................ *passim*

*Doe #1 v. Trump*,
    2020 WL 1689727 (D. Or. Apr. 7, 2020) ................................................................1, 3, 7, 13

*Doe #1 v. Trump*,
    2020 WL 1853657 (D. Or. Apr. 13, 2020) ................................................................15

*E. Bay Sanctuary Covenant v. Trump*,
    932 F.3d 742 (9th Cir. 2018) ................................................................14, 15, 16

*E. Bay Sanctuary Covenant v. Trump*,
    950 F.3d 1242 (9th Cir. 2020) ................................................................7, 8, 9

*Elec. Privacy Info. Ctr. v. DHS*,
    653 F.3d 1 (D.C. Cir. 2011) ................................................................18, 19

*Emami v. Nielsen*,
   365 F. Supp. 3d 1009 (N.D. Cal. 2019) ...................................................................18

*Faith Int'l Adoptions v. Pompeo*,
   345 F. Supp. 3d 1314 (W.D. Wash. 2018).............................................................18

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)..............................................................................................13, 16

*Gebhardt v. Nielsen*,
   879 F.3d 980 (9th Cir. 2018) ...................................................................................30

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*,
   641 F. Supp. 2d 563 (E.D. La. 2009).......................................................................23

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)....................................................................................................9

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir. 2017), *dismissed as moot*, 138 S. Ct. 377 (2017)...............14

*Kaliski v. Dist. Dir. of INS*,
   620 F.2d 214 (9th Cir. 1980) ...................................................................................32

*Korematsu v. United States*,
   323 U.S. 214 (1944)...................................................................................................27

*Lee v. State of Or.*,
   891 F. Supp. 1421 (D. Or. 1995) ...............................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)...................................................................................................14

*Li Hing of Hong Kong, Inc. v. Levin*,
   800 F.2d 970 (9th Cir. 1986) ...................................................................................20

*Lopez-Valenzuela v. Arpaio*,
   770 F.3d 772 (9th Cir. 2014) (en banc) ...................................................................33

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................5, 10, 11

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990).....................................................................................................5

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)...................................................................................................34

*Mayor & City Council of Baltimore v. Trump*,
   416 F. Supp. 3d 452 (D. Md. 2019) ........................................................25

*Mississippi v. Johnson*,
   71 U.S. 475 (1867) .................................................................................13, 14

*NAACP v. Jones*,
   131 F.3d 1317 (9th Cir. 1997) ..............................................................25

*Nat. Res. Def. Council v. E.P.A.*,
   735 F.3d 873 (9th Cir. 2013) ................................................................11

*Navajo Nation v. U.S. Dept. of Interior*,
   819 F.3d 1084 (9th Cir. 2016) ..............................................................18

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) .............................................................................13

*State of S.C. ex rel. Patrick v. Block*,
   558 F. Supp. 1004 (D.S.C. 1983) .........................................................18

*PETA v. U.S. Dep't of Agric.*,
   797 F.3d 1087 (D.C. Cir. 2015) ..........................................................8, 9

*Pinnacle Armor Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011) ................................................................16

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ..............................................................13

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ................................................................5

*Ramos v. Nielsen*,
   321 F. Supp. 3d 1083 (N.D. Cal. 2018) ...............................................33

*Romer v. Evans*,
   517 U.S. 620 (1996) ....................................................................24, 25, 28

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) ..........................................................21

*San Diego Air Sports Ctr., Inc. v. FAA*,
   887 F.2d 966 (9th Cir. 1989) ................................................................20

*Sessions v. Dimaya*,
   138 S. Ct. 1204 (2018) ..........................................................................34

*Shaw v. Reno,*
    509 U.S. 630 (1993) ....................................................................................21

*Solis Espinoza v. Gonzales,*
    401 F.3d 1090 (9th Cir. 2005) ....................................................................32

*Sugar Cane Growers Co-op of Fla. v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) ......................................................................18

*Truckers United for Safety v. Fed. Highway Admin.,*
    139 F.3d 934 (D Cir. 1998).........................................................................20

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018)..........................................................................*passim*

*U.S. Army Corps of Eng'rs v. Hawkes Co. Inc.,*
    136 S. Ct. 1807 (2016) ................................................................................16

*U.S. Dep't of Agric. v. Moreno,*
    413 U.S. 528 (1973)....................................................................................28

*Updike v. Clackamas County,*
    No. 3:15-cv-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ............12

*Ventura-Escamilla v INS,*
    647 F.2d 28 (9th Cir. 1981) ........................................................................21

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U.S. 252 (1977)............................................................................*passim*

*Warth v. Seldin,*
    422 U.S. 490 (1975)................................................................................7, 11

*Zadvydas* v. *Davis,*
    533 U. S. 678 (2001)...................................................................................33

**Statutes**

8 U.S.C. § 1151(b)(2)(A)(i) ..............................................................................32

8 U.S.C. §1182(a) .............................................................................................11

8 U.S.C. § 1182(a)(4)(B)(i)...............................................................................32

8 U.S.C. § 1443(h) ............................................................................................15

8 U.S.C. §1182(f) ("Section 212(f)")......................................................2, 3, 29

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...............................................................................................................5

Fed. R. of Civ. P. 12(b)(6) ....................................................................................................5, 17

Website of the U.S. Embassy & Consulates in the United Kingdom,
    https://uk.usembassy.gov/information-for-nonimmigrant-visa-applicants-
    following-the-coronavirus-covid-19-outbreak.........................................................................12

# INTRODUCTION

Defendants' Motion to Dismiss does little more than recycle arguments this Court has repeatedly rejected. The few new arguments Defendants make fare no better than the old ones. Because Plaintiffs have plausibly alleged all of their claims, the Court should deny Defendants' Motion.

This Court's previous Orders largely resolve the issues raised in this Motion. Defendants challenge the Court's subject matter jurisdiction, but the Court has already held that Plaintiffs' claims are justiciable. The Court has also resolved standing challenges in Plaintiffs' favor. Defendants do not raise anything new that could undermine those Orders. Similarly, Defendants attack Plaintiffs' claim that the Proclamation was *ultra vires* executive action that violates separation of powers principles. But the Court has considered that claim and held that Plaintiffs are likely to succeed on its merits. Defendants do not grapple with that ruling or the Ninth Circuit's decision affirming it. And Defendants assert again that Plaintiffs have not alleged agency action, but that assertion contradicts this Court's conclusions in Orders on Plaintiffs' motions to compel.

The only claims this Court has not previously addressed are Plaintiffs' Due Process and Equal Protection claims. As to each, Defendants misunderstand the bases for the claims, ignore Plaintiffs' allegations, and disregard the standard that applies at this stage. Because Plaintiffs plausibly allege both claims, none of Defendants' arguments justifies dismissal of Plaintiffs' causes of action at this early stage in the case. Defendants' Motion to Dismiss should be denied.

# BACKGROUND

The Court is familiar with the factual background from its past Orders in this case. *See, e.g.*, *Doe #1 v. Trump*, 418 F. Supp. 3d 573 (D. Or. 2019); *Doe #1 v. Trump*, 423 F. Supp. 3d 1040 (D. Or. 2019); *Doe #1 v. Trump*, No. 19-cv-01743-SI, 2020 WL 1689727 (D. Or. Apr. 7,

2020); *see also Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020). These thorough Orders dispose of most of the arguments in the Motion to Dismiss.

## I. District Court Proceedings

Plaintiffs filed the present action, on behalf of themselves and all others similarly situated, on October 30, 2019. They alleged that implementation of the Proclamation would be *ultra vires* and violate the U.S. Constitution's separation of powers principles, its Due Process Clause, and its Equal Protection Clause, as well as the Administrative Procedure Act (APA). ECF 1.

### A. Order Granting Plaintiffs' Motion for a Temporary Restraining Order

Plaintiffs filed a Motion for a Temporary Restraining Order on November 1, 2019, seeking to temporarily enjoin implementation of the Proclamation before its effective date. ECF 7. On November 2, 2019, after a hearing at which both parties appeared, this Court granted Plaintiffs' Motion and enjoined implementation of the Proclamation for a period of 28 days while the parties completed briefing on Plaintiffs' Motion for a Preliminary Injunction. ECF 33.

### B. Order Granting Plaintiffs' Motion for a Preliminary Injunction

On November 26, 2019, this Court granted Plaintiffs' Motion for a Preliminary Injunction. *Doe #1*, 418 F. Supp. 3d at 605. The Court held that Plaintiffs' claims are justiciable. *Id.* at 587-89. It also held that Plaintiffs had established "a likelihood of success on the merits" as to their claim that the "Proclamation violates the Constitution's principle of separation of powers and is outside the scope of the President's authority" delegated to him in Section 212(f) of the Immigration and Nationality Act (INA). *Id.* at 598. This Court reasoned that past Supreme Court decisions involving INA Section 212(f), including its decision in *Hawaii v. Trump*, considered that Section's use in the context of "foreign relations or national security," in which non-delegation concerns are "lessened" but that no "intelligible principle"

existed for the application of § 212(f) in the "domestic context." *Id.* at 592. The Court reasoned

further that the Proclamation effectively "supplants" the public charge provision of the INA

because the Proclamation is "designed to stop immigrants from being a burden on taxpayers,"

which is "the purview of the public charge provisions." *Id.* at 595. And, because the

Proclamation does not exempt certain victims of crimes and domestic violence, this Court held

that it also "contravenes and overrides Section 1182(a)(4)(E)" of the INA. *Id.* at 597.

This Court also ruled that Plaintiffs would likely suffer irreparable harm in the absence of

immediate injunctive relief and that the balance of harms and public interest factors weighed in

favor of Plaintiffs. *Id.* at 598-602. Based on the evidence of the scope of harm and also

Plaintiffs' pursuit of its claims on behalf of a putative class (as articulated in part through its

then-pending class certification motion), the Court issued a nationwide injunction that remains in

place today. *Id.* at 603-05.

### C. Order Granting Plaintiffs' Motion for Class Certification

On April 7, 2020, this Court granted Plaintiffs' Motion for Class Certification. *Doe #1* v.

*Trump*, No. 19-cv-01743-SI, 2020 WL 1689727 (D. Or. Apr. 7, 2020). The Court certified two

subclasses: the U.S. Petitioner Subclass and the Visa Applicant Subclass. *Id.* at *17. In its

certification order, the Court held, among other things, that "the fact that [Plaintiff] Castellanos

obtained some relief before class certification does not moot his claims and does not render the

Visa Applicant Subclass unable to be adjudicated." *Id.* at *9.

### D. Orders Granting Plaintiffs' Motions to Compel Production and Completion of the Administrative Record

The Court has also issued multiple orders compelling Defendants to produce and

complete the administrative record. *Doe #1*, 423 F. Supp. 3d 1040; ECF 134. In doing so, the

Court considered and rejected Defendants' arguments "that [Defendants] did not engage in any

final agency action and [that] the Proclamation is self-executing without final agency action," and found that, "at this stage of the litigation, it appeared that the State Department had engaged in final agency action." ECF 134, at 7; *see also Doe #1*, 423 F. Supp. 3d 1040. As the Court noted, "Defendants, and specifically the State Department, have repeatedly represented that they were prepared to implement the Proclamation on November 3, 2019," and that "[t]his supports the conclusion that the State Department's decisionmaking was final before that date." *Doe #1*, 423 F. Supp. 3d at 1046. Notwithstanding this Court's orders on Plaintiffs' motions to compel, Defendants still have not produced a complete and accurate Administrative Record in this case.[1]

## II.     Ninth Circuit's Order Denying Defendants' Motion to Stay the Injunction

On May 4, 2020, the Ninth Circuit denied Defendants' Motion to Stay this Court's preliminary injunction. The panel majority agreed with this Court's holdings that Plaintiffs would likely suffer irreparable harm absent an injunction. *Doe #1 v. Trump*, 957 F.3d 1050, 1061-62 (9th Cir. 2020). The Court held that Defendants failed to make a strong showing that they would likely defeat Plaintiffs' claims. The Ninth Circuit emphasized that there "is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Id.* at 1062 (citing *Clinton v. City of New York*, 524 U.S. 417, 438 (1998)). The panel majority also credited Plaintiffs' arguments that the Proclamation contravened provisions in each of three statutes: the Violence Against Women Act (VAWA), the INA, and the Affordable Care Act (ACA). *Id.* at 1080. The Ninth Circuit's Order rejected Defendants' arguments that the Supreme Court's decision in *Hawaii* precluded a ruling in Plaintiffs' favor. It emphasized that

---

[1]     Plaintiffs did not receive the supplemental record the court ordered on April 13, 2020, until June 6, 2020. Plaintiffs believe the record provided by Defendants remains incomplete and have requested that Defendants either further supplement the record or explain the deficiencies that Plaintiffs have identified.

the Proclamation dealt only with domestic matters and that it was "issued with virtually no factual findings, minimal reasoning, and an extremely limited window for public comment, raising serious questions as to whether the President has effectively rewritten provisions of the INA." *Id.* at 1067.

## LEGAL STANDARDS

When considering a Rule 12(b)(1) challenge on the pleadings, courts accept as true Plaintiffs' factual allegations and draw all reasonable inferences in Plaintiffs' favor to determine whether the allegations invoke federal jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). At the pleadings stage, "general factual allegations" are sufficient to satisfy standing requirements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). Courts "presume[] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

To survive a Rule 12(b)(6) motion, a plaintiff need only plead facts sufficient to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw [] reasonable inference[s] that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.     This Court Has Subject Matter Jurisdiction Over This Action.

#### A.     Plaintiffs Have Standing to Sue All Defendants.

Defendants argue that Plaintiffs "lack standing" to assert claims against the Department of Homeland Security (DHS) and Department of Health and Human Services (HHS). According to Defendants, Plaintiffs do not allege injury that is "fairly traceable" to either of these departments and instead relate to actions taken by the Department of State. Mot. at 8-9 (citing

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Defendants do not cite any authority in making this argument and instead simply refer the Court

to seven paragraphs of Plaintiffs' First Amended Complaint (FAC).  *See* Mot. at 8-9 (citing ECF

100 (FAC) ¶¶ 40-47.

Defendants ignore Plaintiffs' allegations that the Proclamation assigns to each of these

agencies certain functions and responsibilities related to implementation and enforcement of the

Proclamation.  ECF 100-1, at 4-5; *see also* FAC ¶¶ 24-27 (noting that the Proclamation assigns

the respective Secretaries of DHS and HHS various responsibilities for implementation and

enforcement).  Thus, the Proclamation's implementation and enforcement—*i.e.*, what Plaintiffs

allege will injure them—necessarily involve and result from the actions of DHS and HHS.  *See*

FAC ¶ 36 (alleging Secretary of HHS determines when health plans provide "adequate

coverage" for purposes of meeting the Proclamation's requirements); *id.* ¶ 46 (alleging that

implementation of the Proclamation necessarily includes efforts and actions by Department of

State (DOS) officials as well as HHS and DHS officials); *id.* ¶ 51 (alleging Secretary of HHS

may approve other health plans that provide "adequate coverage" for purposes of meeting the

Proclamation's requirements); *see also id.* ¶¶ 124-31 (discussing DHS responsibility for

implementing and enforcing the INA's public charge provisions, which Plaintiffs allege the

Proclamation conflicts with and which this Court has said the Proclamation "supplants").

Plaintiffs need not allege with specificity the agencies' exact roles in the Proclamation's

implementation and enforcement to assert that any injury from the Proclamation is traceable to

those agencies.  *See Lee v. State of Or.*, 891 F. Supp. 1421, 1427 (D. Or. 1995) (entities with

enforcement responsibilities for allegedly unconstitutional statute contributed to injury stemming

from enforcement of the statute).  For this reason, Plaintiffs properly sought an injunction, which

this Court granted, to enjoin the anticipated actions of DHS and HHS, as well as DOS, under the Proclamation. ECF 46; *Doe #1*, 418 F. Supp. 3d at 604-05 (enjoining all Defendants from taking any action to implement or enforce Presidential Proclamation No. 9945). Because Plaintiffs have adequately alleged that the Proclamation injures them, and that it requires DHS and HHS involvement, in addition to DOS involvement, for its implementation and enforcement, Plaintiffs have alleged injury at the hands of DOS, DHS, and HHS sufficient to confer standing to sue all of these agencies.

### B. Latino Network Has Standing.

Defendants' repeated attacks on Latino Network's standing are meritless and contrary to this Court's previous Orders. *Compare* Mot. 9-11 *with Doe #1*, 418 F. Supp. 3d at 598-99 (holding Latino Network demonstrated a likelihood of irreparable harm if the Proclamation were to take effect) *and Doe #1*, 2020 WL 1689727, at *5 ("The Proclamation has already significantly affected Latino Network's ability to accomplish its mission.").[2] "[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *E. Bay Sanctuary Covenant* v. *Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020) ("*EBSC II*").

This Court has already held that Latino Network would likely suffer irreparable harm if the Proclamation went into effect, including because Latino Network would be required to divert significant resources from its core mission to respond to the Proclamation. *See, e.g.*, *Doe #1*, 418 F. Supp. 3d at 584, 599 ("Latino Network[] . . . estimates that responding to the Proclamation

---

[2] In addition to the facts Plaintiffs allege in the pleadings, the court may also review and consider affidavits and other submitted evidence containing "particularized allegations of fact deemed supportive of [a] plaintiff's standing," including declarations submitted in support of Plaintiffs' motion for preliminary injunction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

will consume up to 15 percent of paid staff members' weekly time [and t]raining . . . will cost [it] almost $14,000."); *see also* FAC ¶¶ 22, 214-15.  Defendants do not even attempt to grapple with that ruling, Mot. at 8-14, even though the showing sufficient to establish standing is less stringent than the irreparable harm showing required to obtain a preliminary injunction.  *See Caribbean Marine Servs. Co*., 844 F.2d at 674.

Instead, Defendants argue again that "Plaintiffs' allegations of injury are not 'concrete,' 'particularized' or 'fairly traceable' to particular conduct by the government."  Mot. at 10 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  In their view, Plaintiffs have not alleged that the challenged conduct "impaired the organizations' ability to provide services" or "inhibited the organization's daily operations," *id.* (citing *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) and *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)), because Latino Network's mission includes "educat[ing] and empower[ing]" members of the local Latino community.  Mot. at 10-11.

Defendants' attempt to wield Latino Network's broad-based mission against it is unavailing and not supported by the authority they cite.[3]  Absent the unlawful Proclamation, Latino Network would not have had to divert important staff resources to respond to the Proclamation.  *See, e.g.*, FAC ¶¶ 22, 214-15; ECF 23 ¶ 15 (staff required to spend "countless hours" trying to research what available health care plans might satisfy the Proclamation's

---

[3]     In *PETA v. U.S. Department of Agriculture*, a D.C. Circuit case Defendants cite, the court held that PETA had alleged injury sufficient to confer standing because PETA was required to "divert and redirect its limited resources to counteract and offset Defendant's unlawful conduct and omissions," including by initiating complaints with state and local agencies regarding bird welfare as a result of the government's failure to regulate birds under its statutory authority.  797 F.3d at 1095-97.  Although submitting complaints to state and local agencies regarding bird welfare is consistent with PETA's mission, the diversion of its limited resources was injurious to PETA because it was required to use those resources inefficiently and to address issues that would not exist absent the government's allegedly unlawful conduct.  *Id.*

requirements). Further, Latino Network estimates ongoing significant expenditures to respond to the Proclamation including a diversion of fifteen percent of paid staff members' weekly time and approximately $14,000 of new training and research expenses. *Id.* ¶¶ 23, 25. These quantitative harms readily establish an Article III "injury in fact." *See, e.g.*, *El Rescate Legal Servs.*, 959 F.2d 742, 748 (9th Cir. 1999) (finding organizational standing where the government's policy "frustrates [organizational plaintiffs'] goals and requires the organizations to expend resources . . . they otherwise would spend in other ways"); *EBSC II*, 950 F.3d at 1242, 1266 (same); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018-19 (9th Cir. 2013) (same); *PETA*, 797 F.3d at 1094.

Finally, Defendants argue that Latino Network lacks standing to assert claims on behalf of its members. That argument is a non-sequitur. Latino Network alleges claims as an organization on its own behalf. Organizations' interests in their own missions and resources are judicially cognizable. *See EBSC II*, 950 F.3d at 1265 ("[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.20 (1982) (injury related to "organization's noneconomic interest in encouraging open housing" suffices under Article III).

### C. Named Plaintiffs Have Standing and Their Claims Are Not Moot.

Defendants assert that six of the eight individual Plaintiffs do not "allege actual or imminent injury attributable to the Proclamation or its alleged implementation." Mot. at 11 (referring to John Doe #1, Juan Ramon Morales, Jane Doe #2, Jane Doe #3, Iris Angelina Castro, and Blake Doe).[4] But this Court has already held that Plaintiffs "will suffer sufficiently

---

[4] "[I]n an injunctive case, [a] court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Atay v. County of Maui*, 842 F.3d 688, 695 (9th Cir.

immediate irreparable harm" from the Proclamation's implementation—a more demanding standard than the showing required for an injury-in-fact sufficient to confer standing. *Doe #1*, 418 F. Supp. 3d at 598-99; *Caribbean Marine Servs. Co*., 844 F.2d at 674. In so holding, the Court relied on Plaintiffs' allegations and supporting declarations that they: (1) have postponed their immigrant visa interviews after the Proclamation was announced, (2) are not likely to meet the requirements of the Proclamation, (3) cannot afford health plans that satisfy the Proclamation's requirements including because some Plaintiffs or their family members suffer from existing health problems, and (4) may be at risk of having their immediate family members denied entry because some of Plaintiffs' family members were granted I-601A waivers that would be revoked if they are denied a visa abroad. *Doe #1*, 418 F. Supp. 3d at 598-99.

Nevertheless, Defendants argue that Plaintiffs lack standing for one of three possible reasons: (1) they do not allege with "specificity" that they could not plan to obtain approved health insurance or pay for reasonably foreseeable healthcare costs, (2) they could be denied a visa for some reason other than the Proclamation, or (3) their interviews have not been scheduled yet. Mot. at 12-13. None of these arguments has merit.

First, Plaintiffs' obligation at the pleading stage is to generally allege injury stemming from the challenged conduct. *Lujan,* 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (internal quotations omitted)). Plaintiffs are not required to plead with specificity all facts supporting the basis for their asserted injury. *Id.* This Court has already

---

2016) (quoting *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009)).

detailed Plaintiffs' numerous allegations of injuries they will suffer if the Proclamation is implemented and enforced. *Doe #1*, 418 F. Supp. 3d at 598-99 (a Plaintiff who risks having his wife's I-601A waiver revoked; Plaintiffs who risk being separated from their family indefinitely). These allegations are sufficient. *See Caribbean Marine Servs. Co*., 844 F.2d at 674 (preliminary injunction irreparable harm inquiry more stringent than injury-in-fact inquiry).

Second, the fact that Plaintiffs could confront barriers in addition to the Proclamation not only is speculative, but also is irrelevant to the standing analysis. In any case, Plaintiffs have alleged that there is no indication they will otherwise fail any of the requirements of 8 U.S.C. § 1182(a), *see* FAC ¶¶ 91-92, 184-85, and the Court is required to credit their allegations of injury at the pleading stage. *Warth*, 422 U.S. at 501.

Third, Plaintiffs have alleged the threat of injury is sufficiently imminent. *Nat. Res. Def. Council v. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013) (holding that "injury is 'actual or imminent' where there is a "credible threat that a probabilistic harm will materialize'"). Plaintiffs in the U.S. Petitioner subclass allege they have sponsored one or more immediate family members' visa petitions and that each respective petition has been granted and is ready to be processed for issuance of the immigrant visa abroad. *See, e.g.*, FAC ¶¶ 182, 190, 194, 198. They also have alleged specific facts supporting the importance of their family members obtaining an immigrant visa. *See, e.g., id.* ¶¶ 183-86 (Plaintiff has a disability, and he and his teenage son rely on his wife's support), 192-93 (Plaintiff is a domestic abuse survivor and seeks the companionship of her parents as well as their assistance in helping her raise her two children), 197 (Plaintiff has a disability and has been separated from her husband for almost two years). Further, the named Plaintiff for the Visa Applicant subclass had postponed his interview because of the

Proclamation and his concern that he could not satisfy its requirements. ECF 58 ¶ 91.[5] The fact that the relevant respective consulates have yet to schedule interviews of the family members of the U.S. Petitioner subclass is not determinative in light of the other facts alleged that show these individuals intend to continue to pursue these applications without delay. This is particularly true now given that for nearly half of the past seven months, since this Court issued its preliminary injunction, much of the world has been under lockdown orders in response to the COVID-19 pandemic, and U.S. consular offices have halted all but emergency interviews for the same reason—facts Defendants completely ignore in their motion.[6]

The cases Defendants cite are distinguishable because they involve claimants that could not allege with certainty that they would be subject to the complained-of statute or conduct. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (plaintiffs' speculation that five different actions of third parties could theoretically result in plaintiffs being harmed by challenged statute insufficient); *Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *9-10 (D. Or. Nov. 30, 2015) (fact that plaintiff had been arrested in past did not create immediate threat of repeated injury stemming from alleged discrimination against hearing-impaired inmates). Plaintiffs here have alleged specific facts that, absent the requested relief, their family members will be subject to the Proclamation and it will harm them. *Doe #1*, 418 F. Supp. 3d at 598-99.

---

[5]     As noted, Mr. Castellanos' interview was rescheduled. ECF 123.

[6]     *See, e.g.*, Website of the U.S. Embassy & Consulates in the United Kingdom, https://uk.usembassy.gov/information-for-nonimmigrant-visa-applicants-following-the-coronavirus-covid-19-outbreak/ (last visited June 24, 2020) ("Embassies and consulates have canceled all routine immigrant and nonimmigrant visa appointments as of March 20, 2020, but will continue to provide emergency and mission-critical visa services as resources and local conditions allow.").

Finally, Defendants argue that the claims of Brenda Villarruel and Gabino Soriano Castellanos are moot. Mot. at 13-14. As the Court recognized in its order granting class certification, *Doe #1* v. *Trump*, No. 19-cv-01743-SI, 2020 WL 1689727, *9 (D. Or. Apr. 7, 2020), Plaintiffs' claims are inherently transitory, and thus the change in status of their applications does not deprive the Court of jurisdiction. *Nielsen v. Preap*, 139 S. Ct. 954, 963 (2019) (holding that when harms alleged are transitory in nature, that the claims of named plaintiffs had become moot when class is certified does not deprive court of jurisdiction). Moreover, because both Mr. Castellanos and Ms. Villarruel are representing subclasses of claimants, the question as to the illegality of Defendants' conduct "remains as a concrete, sharply presented issue even after the named plaintiff's individual claim has expired because vigorous advocacy [of the plaintiff's right to have a class certified] can be assured through means other than the traditional requirement of a 'personal stake in the outcome.'" *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011) (internal quotations omitted).

**D. This Court Has Authority to Enjoin Executive Action.**

Defendants next claim that separation of powers "bars injunctive relief against the President." Mot. at 16 (citing *Mississippi v. Johnson*, 71 U.S. 475, 501 (1867), and *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992)). This is another issue the Court and the Ninth Circuit have already resolved against Defendants. *See Doe #1,* 418 F. Supp. 3d 573; *Doe #1*, 957 F. 3d 1050. In all events, *Franklin* stands only for the proposition that courts may refrain from enjoining the President's actions in performance of his duties. *See Franklin*, 505 U.S. at 802-03. Courts do not hesitate to grant relief when they determine that the President acted outside the

scope of his authority.[7]  *See, e.g., id.* (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)).  That relief may include enjoining an executive order or Proclamation that "exceeds the statutory authority delegated by Congress and constitutional boundaries."  *Hawaii v. Trump*, 859 F.3d 741, 768 (9th Cir. 2017), *dismissed as moot*, 138 S. Ct. 377 (2017).

## II.  Plaintiffs Have Properly Stated Each of Their Claims.

### A.  Plaintiffs Have Stated an APA Claim.

#### 1.  Latino Network Satisfies the Zone of Interests Test.

Defendants assert that Latino Network is not "within the zone of interests protected by any statute Plaintiffs identify in the complaint."  Mot. at 17.  That assertion is unfounded.  The Ninth Circuit has held that "the zone of interests test, under the APA's 'generous review provisions,' 'is not meant to be especially demanding.'"  *E. Bay Sanctuary Covenant* v. *Trump*, 932 F.3d 742, 768 (9th Cir. 2018) ("*EBSC I*") (citing *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 & n.16 (1987)).  The zone-of-interests test "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)) (internal quotation marks omitted).

Latino Network falls well within the zone of interests of the INA.  The organization provides programs aimed at educating and empowering Latinos, including through the services

---

[7]     Likewise, *Mississippi* addressed the court's power to "enforce the performance" of executive duties; in that context, it held that the court would not "interfere[] with the exercise of Executive discretion."  71 U.S. at 499-500.

of an "Immigration Navigator" who helps client move through the complicated immigration visa process. *Doe #1*, 418 F. Supp. 3d at 584. Latino Network's interest in aiding Latino immigrants is not "so marginally related to or inconsistent with the purposes implicit" in the INA as to set it outside the INA's zone of interests. *EBSC I*, 932 F.3d at 768. On the contrary, the "INA give[s] institutions" like Latino Network "a role in helping immigrants navigate the immigration process." *Id.* at 768-69. For example, 8 U.S.C. § 1443(h) requires the Attorney General to work with "relevant organizations" to "broadly distribute information concerning" the immigration process. As the Ninth Circuit has held, the fact that the INA "directly rel[ies] on institutions like [plaintiff] to aid immigrants" is a "sufficient indicator" that they are within the zone of interest of the INA. *EBSC I*, 932 F.3d at 769 (citing *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283 (D.C. Cir. 1988)) (internal quotation marks omitted).

### 2. Plaintiffs' APA Claim Is Not a Claim Against the President.

Defendants assert that the "APA does not authorize a claim against the President." Mot. at 17. That assertion ignores what this Court has already explained: "A court may [] review under the APA agency actions that implement or incorporate a Presidential proclamation." *Doe v. Trump*, No. 3:19-cv-1743-SI, 2020 WL 1853657 (D. Or. Apr. 13, 2020) (citing *EBSC I*, 932 F.3d at 700). Plaintiffs properly challenge implementation of the Proclamation under the APA. *See, e.g.*, FAC ¶ 229 (challenging "actions to implement the Proclamation"); *see also EBSC I*, 932 F.3d at 770-71.

### 3. The APA Authorizes an Injunction Against Agency Implementation of the Proclamation.

Defendants assert that Plaintiffs cannot "avoid the barriers to APA review" by challenging implementation of the Proclamation. Mot. at 18. They attempt to support that assertion in familiar ways. First, they repurpose their argument that *Fiallo* "bar[s] judicial

review" of Plaintiffs' statutory claims, *id.*; the Court has already rejected that premise and should do so again. *Doe #1*, 418 F. Supp. 3d at 587 (explaining why *Fiallo* is not a bar to review of Plaintiffs' constitutional or statutory claims). Second, they assert that Plaintiffs failed to allege final agency action. The Court has also rejected that premise. *Doe #1*, 423 F. Supp. 3d at 1046. Specifically, this Court has recognized that the APA's test for finality is a "pragmatic" one, *U.S. Army Corps of Eng'rs v. Hawkes Co. Inc.*, 136 S. Ct. 1807, 1815 (2016), that considers whether the agency action "is sufficiently direct and immediate and has [] effect on . . . day-to-day business." *Franklin*, 505 U.S. at 796-97 (internal quotation marks omitted). Here, Plaintiffs plausibly alleged that the State Department took specific actions reflecting that the agency had "completed its decisionmaking process" and demonstrating implementation of the Proclamation in a manner with legal consequences that "directly affect[ed] the parties." *Id.* at 797. As this Court has noted, Defendants repeatedly asserted that they were ready to implement and enforce the Proclamation beginning at midnight on November 3, 2019; in other words, their actions and implementation choices, as Plaintiffs have alleged, reflected the consummation of the agency's decisionmaking process and were fully formulated and communicated in a matter that had a "direct and immediate effect" on regulated parties. *Doe #1*, 423 F. Supp. 3d at 1045-46.[8]

---

[8]   Plaintiffs understand Defendants' Motion as attacking the sufficiency of Plaintiffs' allegations without asking the Court to reach the merits of the APA claim based on the administrative record. *See Pinnacle Armor Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) (reversing dismissal of APA claim merits absent consideration of the full administrative record because plaintiff's allegations were "certainly sufficient to survive a Rule 12(b)(6) motion to dismiss"). If the Court wishes to reach a decision beyond the plausibility of Plaintiffs' allegations on this claim, then Plaintiffs respectfully request supplemental briefing to address the administrative record. Plaintiffs believe, however, that review based on the administrative record would be premature at this stage, because the supplemental administrative record Defendants lodged on June 9, 2020 (ECF 149) appears to be incomplete. *See supra* note 1.

Defendants attempt to evade review under the APA by asserting that the only "relevant legal obligations" associated with the agency's actions "arise from the Proclamation itself." Mot. at 19. But agency action "based on" an executive order is still subject to review under the APA "even if the validity of the Order [is] thereby drawn into question." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996). Defendants also contend that statements on their website cannot be final agency action because the "suspension of entry still would have gone into effect." Mot. at 20. But the mere existence of an executive order with an effective date does not relieve the implementing agency from its obligations under the APA.

In this case, the Department of State did not simply wait for the Proclamation's effective date to arrive; it issued commands to regulated parties and consular officers. In particular, it issued a directive on its website with a new set of requirements for visa interviews not mentioned in the Proclamation itself. FAC ¶ 40-42. The website informed visa applicants that they must prove visa eligibility under the Proclamation "at the time of the interview." *Id.* Using mandatory language, DOS emphasized that failure to satisfy the new interview requirement "will result in the denial of a visa application." *Id.* The announcement stated the "procedures which all must follow" at consular interviews, and the consequences of non-compliance. With this announcement, DOS communicated its "marching orders" for visa applicants and consular officers, and indicated that it expected them "to fall in line." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021, 1023 (D.C. Cir. 2000). The announcement's unequivocal commands together with the November 3 deadline "amount[] to a definite statement of the agency's position," that has a "direct and immediate effect" on the rights and obligations of regulated

parties, making clear that "immediate compliance is expected."[9] *California Dep't of Water Res. v. FERC*, 341 F.3d 906, 909 (9th Cir. 2003).

It does not matter that DOS posted its announcement online instead of another mode of publication. Whenever an agency makes a policy announcement expecting that regulated parties will "conform to [the agency's] position" the agency "voluntarily relinquishe[s] the benefit of postponed judicial review." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986). "With the advent of the Internet, the agency does not need [] official publications to ensure widespread circulation; it can inform those affected simply by posting its new guidance or memoranda or policy statement on its website." *Appalachian Power*, 208 F.3d at 1020.[10] An

---

[9] *See Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002) (agency "press release" announcing new procedures and sanctions was subject to APA review as a "rule by any other name") (internal quotation marks omitted); *State of S.C. ex rel. Patrick v. Block*, 558 F. Supp. 1004, 1011 (D.S.C. 1983) (describing an announcement as rulemaking "regardless of the label under which [the agency] chose to announce" its actions or how it "published[] [its] decision to implement the action."); *Colum. Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) (explaining "even if the agency does not label its decision or action as final" it may still be subject to APA review if "immediate compliance with its terms is expected.'" (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2004)); *Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 7 (D.C. Cir. 2011) ("[I]t is enough for the agency's statement to 'purport to bind' those subject to it, that is, to be cast in 'mandatory language' so 'the affected private parties are reasonably led to believe that failure to conform will bring adverse consequences.'").

[10] *See also Navajo Nation v. U.S. Dept. of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016) (email and confirmation letter constituted final agency action where the text of the message stated a "legal determination" expressing what the agency believed it was "required" to do under the law); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1020 (N.D. Cal. 2019) (noting DOS referred to its online postings as "outward facing guidance" and analyzing an APA claim in part based on statements in online FAQs); *Faith Int'l Adoptions v. Pompeo*, 345 F. Supp. 3d 1314, 1324 (W.D. Wash. 2018) (statements in an email and an announcement posted on a website constituted final agency action); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019) ("Internet posting" of spreadsheet announcing the 2012 Medicare fractions was the basis for a challenge under a Medicare-specific analogue to the APA); *Allergan, Inc. v. Burwell*, No. 13-00264 (RJL), 2016 WL 1298960, at *6 (D.D.C. Mar. 16, 2016 (agency email constituted final agency action because it "unequivocally stated the agency's position" and "required 'immediate compliance').

agency may publish on the internet because it can do so "quickly and inexpensively without following any statutorily prescribed procedures." *Appalachian Power*, 208 F.3d at 1020 (quotations and citations omitted). What matters for the APA analysis is that the agency signaled that it "view[ed] its deliberative process as sufficiently final to demand compliance with its announced position" on November 3, 2019; its unequivocal demand for immediate compliance constitutes "final" action subject to judicial review. *See Ciba-Geigy Corp.*, 801 F.2d at 436.

Finally, Defendants misstate the significance of the Emergency Notice of Information Collection in the circumstances of this case. Mot. at 20. Here, the Emergency Notice announced a "methodology" the agency adopted "to establish standards and procedures for governing determinations" necessary under the Proclamation. FAC ¶ 43. The notice was issued on October 30, 2019, and stated it was being issued to implement the Proclamation, and that the new methodology would be used to implement and enforce the new rules for the issuance of immigrant visas beginning on November 3, 2019. *Id.* This timeline and the language of the Emergency Notice confirm that, by the time the Emergency Notice was released, DOS had already consummated its decision-making process for practical purposes and instructed its adjudicatory officers on how to implement the new regime for immigrant visas. Like the announcement on the website, the Emergency Notice announced and imposed new requirements, reflected the agency's demand for immediate compliance, and placed unprecedented new burdens on regulated parties to prove their admissibility under the requirements of the Proclamation as interpreted and implemented by DOS.[11] The fact that Defendants'

---

[11] This new interview policy "substantially changes the experience" of regulated parties and should have been subject to notice-and-comment rulemaking on that basis too. *Elec. Privacy Info. Ctr.*, 653 F.3d at 7 (holding that new TSA high imaging screening should have been introduced with notice-and-comment rulemaking even though passengers are already subject to

accomplished change with a "Notice of Information Collection" does not matter for APA purposes. *Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934, 939 (D Cir. 1998) ("[T]he label an agency places on a rule is not dispositive."); *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 970 (9th Cir. 1989)) ("A time-honored principle of administrative law is that the label an agency puts on its actions is not necessarily conclusive." (internal quotation marks omitted)). For all practical purposes, the Emergency Notice effectively implemented a new legislative rule demanding immediate compliance, and thus constitutes final agency action under the APA.

### 4. Plaintiffs' APA Claims Are Not Barred by the Doctrine of Consular Non-reviewability.

Defendants also attempt to resurrect failed arguments that the consular non-reviewability doctrine bars Plaintiffs' APA claims. Mot. at 22-23. But as this Court has recognized, the judicially-created consular non-reviewability doctrine applies, if at all, only to challenges to individual visa denials and not blanket executive agency action. *Doe #1*, 418 F. Supp. 3d at 580-81. Defendants' reliance on that doctrine is as misplaced now as it was when the Court last rejected it. And none of the cases that Defendants cite supports their point.[12] *See* Mot. at 22-23. The consular non-reviewability doctrine does not bar Plaintiffs' APA claims.

---

screening because the new technique "substantially changes the experience of airline passengers").

[12] *Bustamonte v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) (applying an exception to consular non-reviewability doctrine because denial of an individual's immigrant visa implicated the constitutional rights of an American citizen); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) (affirming dismissal of suit challenging consular officer's denial of visa based on consular officer's determination that an individual applicant failed to establish he was a bona fide nonimmigrant); *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018) (holding in an individual's case that the APA "provides no avenue for review of a consular officer's adjudication of a visa on the merits"); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981)

**B. Plaintiffs Have Stated an Equal Protection Claim.**

Plaintiffs have plausibly alleged that the Proclamation and Defendants' actions taken to implement the Proclamation violate the equal protection guarantee of the Fifth Amendment. That guarantee prohibits Defendants from intentionally discriminating against Plaintiffs on the basis of race or national origin. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Shaw v. Reno*, 509 U.S. 630, 643 (1993). The Complaint alleges that Defendants have done precisely that, enacting and carrying out the Proclamation on the basis of racial animus. *See* FAC ¶¶ 162-79, 238-42.

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977), sets forth the standard for pleading racial animus, and Plaintiffs' allegations satisfy that standard. Significantly, Defendants never even cite *Arlington Heights*. The Supreme Court's decisions in *Department of Homeland Security v. Regents*, No. 18-587, 2020 WL 3271746 (June 18, 2020), and *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), do not change the standard for pleading racial animus, remain factually distinct, and do not otherwise foreclose Plaintiffs' equal protection claim.

A statute or governmental proclamation is unconstitutional "if its enactment or the manner in which it was enforced were motivated by a discriminatory purpose" based on race or national origin. *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015). "To plead animus, a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant decision." *Regents*, 2020 WL 3271746, at *16 (plurality

---

(review of consular officer's decision concerning the issuance of a visa to an individual); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999) (holding in an individual's case that the immigration laws "preclude judicial review" of consular visa decision); *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (addressing issues unrelated to the consular non-reviewability doctrine).

opinion) (Roberts, C.J.) (quoting *Arlington Heights*, 429 U.S. at 266).  Plaintiffs need not show

that discrimination was the sole or primary purpose of the challenged action, but only that it was

a "motivating factor."  *Arlington Heights*, 429 U.S. at 266.

Determining whether discrimination was a motivating factor "demands a sensitive

inquiry into such circumstantial and direct evidence of intent as may be available."  *Id.*

*Arlington Heights* identified a non-exhaustive list of factors that courts should consider,

including (1) "[t]he impact of the official action—whether it bears more heavily on one race than

another"; (2) "contemporary statements by members of the decisionmaking body"; (3) "[t]he

historical background of the decision . . . particularly if it reveals a series of official actions taken

for invidious purposes"; (4) "[t]he specific sequence of events leading up to the challenged

decision"; and (5) "[d]epartures from the normal procedural sequence," which "might afford

evidence that improper purposes are playing a role."  *Id.* at 266-68 (internal quotation marks

omitted).  "A plaintiff need not establish any particular element in order to prevail."  *Ave. 6E*

*Inv's., LLC v. City of Yuma,* 818 F.3d 493, 504 (9th Cir. 2016).

Plaintiffs' specific allegations satisfy the *Arlington Heights* standard.  First, Plaintiffs

allege that President Trump, who issued the Proclamation, has repeatedly made statements

demonstrating racial animus towards nonwhite immigrants, from the time he was a presidential

candidate through the time he issued the Proclamation.  *Id.* ¶¶ 163-67, 169, 171-76.  For

instance, President Trump has labeled Mexican immigrants as criminals and rapists: "They're

bringing drugs.  They're bringing crime.  They're rapists."  *Id.* ¶¶ 163, 164 (internal quotation

marks omitted).  He has consistently advanced the notion that undesirable immigrants come from

Latin America, the Middle East, and Africa, and contrasted them to purportedly more desirable

immigrants from predominantly white countries like Norway.  *Id.* ¶¶ 165, 175.  At a 2018

briefing on protections for immigrants from Haiti, El Salvador, and African countries, "President Trump is said to have asked, 'Why are we having all these people from shithole countries come here?'" suggesting instead "that the United States should bring in more people from countries such as Norway." *Id.* ¶ 175 (internal quotation marks omitted).  Similarly, "[d]uring a White House briefing on how many immigrants had received visas to enter in 2017, President Trump "reportedly grumbled that Haitians 'all have AIDS' and that after seeing the United States, Nigerians would never 'go back to their huts' in Africa once he heard how many immigrants from each country had been admitted." *Id.* ¶ 175.  Other courts have found racial animus based on statements that were significantly less overtly racist than those referenced above.  *See, e.g.*, *Ave. 6E Invs.*, 818 F.3d at 505 ("the use of 'code words' may demonstrate discriminatory intent"); *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 571 (E.D. La. 2009) ("references to 'ghetto,' 'crime,' blight,' and 'shared values'" are "nothing more than 'camouflaged racial expressions'").

Second, Plaintiffs have alleged that the historical background of, and events leading up to, the Proclamation further support the inference that the Proclamation was enacted on the basis of racial animus.  At the very least, the Complaint plausibly alleges that the Proclamation is part of the Administration's anti-immigrant agenda focused on excluding nonwhite immigrants, including by limiting family-based and diversity visa immigration, which have become the primary paths for immigrants from Africa, Asia, and South America.  *See, e.g.*, FAC ¶¶ 8, 162, 167-74, 176-79.  The Complaint details a series of actions that President Trump and his Administration have taken to further this agenda, including championing the failed RAISE Act and introducing the enjoined Public Charge rule leading up to the Proclamation.  *See, e.g.*, *id.* ¶¶ 176-79.

Third, Plaintiffs allege the Proclamation disproportionately affects nonwhite immigrants. The Proclamation will block nearly two thirds of all prospective legal immigrants, most of whom are from predominantly nonwhite countries in Latin America, Africa, and Asia, from receiving visas and coming to the United States. *Id.* ¶¶ 1, 8. The Proclamation implements President Trump's larger anti-nonwhite immigrant agenda and has a disproportionate impact on nonwhite immigrants. *See, e.g.*, *id.* ¶¶ 8, 57, 171-73.

Fourth, Plaintiffs have alleged that the Proclamation reflects a departure from the normal procedural sequence. The Proclamation constitutes a substantive departure from previous policy. It is unprecedented in its scope and impact, the largest suspension on the entry of immigrants of its kind until the recent attempts to ban almost all foreign nationals from entering the U.S. following the COVID outbreak. The Proclamation imposes a new ground of inadmissibility that Congress has expressly rejected and creates a barrier to entry that will be extremely difficult, if not impossible, for most otherwise qualified immigrant visa applicants to satisfy. *Id.* ¶¶ 3, 8. The Proclamation makes no attempt to set forth factual findings justifying its sweeping ban on nearly two-thirds of all prospective immigrants seeking to enter the United States. *Id.* ¶¶ 150-52. It is internally inconsistent with its bare-bones assertion and intended goals. *Id.* ¶¶ 67-71. And, as this Court has already found, the Proclamation "was not issued under any properly delegated authority," and, furthermore, "is inconsistent with the INA." *Doe #1*, 418 F. Supp. 3d at 579.

Defendants simply ignore the *Arlington Heights* standard. Instead, they argue that to state an equal protection claim, Plaintiffs must identify a "suspect class" that has been targeted and a "fundamental right" that has been burdened, but they contend that Plaintiffs have done neither. Mot. at 23 (citing *Romer v. Evans*, 517 U.S. 620, 631 (1996)). Defendants are wrong. Strict scrutiny applies if a law *either* targets a suspect class *or* burdens a fundamental right.

*NAACP v. Jones*, 131 F.3d 1317, 1321 (9th Cir. 1997) ("When analyzing an Equal Protection claim, heightened scrutiny is applied only when a restriction burdens a suspect class *or* a fundamental right. Without heightened scrutiny, a distinction need be only rationally related to a legitimate purpose." (emphasis added)); *Romer*, 517 U.S. at 631 ("[I]f a law *neither* burdens a fundamental right *nor* targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." (emphasis added)). Plaintiffs specifically allege that Defendants discriminated against them on the basis of their race and national origin. FAC ¶¶ 240-41. Race and national origin are both suspect classifications. *See Jones*, 131 F.3d at 1321 ("Race is a suspect class."); *City of Cleburne, Tex.*, 473 U.S. at 440 (race and national original are suspect classifications subject to strict scrutiny). Contrary to Defendants' argument, then, strict scrutiny applies.

In *Regents*, the Supreme Court applied *Arlington Heights* to evaluate whether the plaintiffs stated a race-based equal protection claim in the immigration context. 2020 WL 3271746, at *16. Although the Court concluded that the plaintiffs did not allege a plausible equal protection claim, the allegations here are distinguishable. First, the relevant actors in that case were Acting Secretary Duke and the Attorney General, and the plaintiffs "did not identify statements by either that would give rise to an inference of discriminatory motive." *Id.* (internal quotation marks omitted). Here, by contrast, the relevant actor is President Trump, who issued the Proclamation, and Plaintiffs identify statements made by President Trump that raise an inference of discriminatory motive, as discussed above. *Cf. Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 513 (D. Md. 2019) (denying motion to dismiss equal protection claim challenging public charge rule as "the Complaint contains statements of the President that plausibly constitute prejudice"). Second, the *Regents* Court concluded that there

was nothing irregular about the history leading up to the challenged decision in that case, whereas here, the history supports the inference that the Proclamation was issued for the improper discriminatory purpose of excluding nonwhite immigrants, as discussed above. *Id*. at 512 (history of public charge rule supports inference of discrimination under *Arlington Heights*). Third, the *Regents* Court did not give much weight to the impact of the challenged action in that case on Latinos "because Latinos make up a large share of the unauthorized alien population, [and so] one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program." 2020 WL 3271746, at *16-17. Here, by contrast, the Proclamation has a disparate impact on nonwhite immigrants that is greater than those immigrants' share of the overall immigrant population. *See, e.g.*, FAC ¶¶ 8, 57, 171-73.

In *Hawaii*, the Supreme Court applied a form of rational basis review to the challenged proclamation. 138 S. Ct. at 2420, 2423. *Hawaii* involved an Establishment Clause claim, however, not an equal protection claim. In addition, *Hawaii* placed great emphasis on the President's national security justification for the proclamation at issue. Here, by contrast, no national security interest is involved. Rather, the Proclamation asserts that its purpose is to "address[] the challenges facing our healthcare system, including protecting both it and the American taxpayer from the burdens of uncompensated care." FAC ¶ 32 (internal quotation marks omitted). Furthermore, the Supreme Court in *Regents* applied *Arlington Heights*—and not *Hawaii* or any of the other cases that Defendants cite in support of their argument that rational basis review applies—to its evaluation of an equal protection claim in the immigration context. *Regents*, 2020 WL 3271746, at *16-17.

Moreover, even if *Hawaii*'s rational basis review standard were deemed to apply, Plaintiffs' allegations are sufficient to state an equal protection claim at this stage of the case.

*Hawaii* makes clear that courts can and must reject executive action animated by racial bias. *Hawaii* unanimously overruled *Korematsu v. United States*, 323 U.S. 214 (1944), which had upheld the "forcible relocation of U.S. citizens to concentration camps, solely and explicitly on [the] basis of race," rejecting its credulous acceptance of a national security rationale as "gravely wrong the day it was decided." *Hawaii*, 138 S. Ct. at 2423. *Hawaii* further held that a proclamation cannot stand if it is "inexplicable by anything but animus." *Id*. at 2420-21. As discussed above, *Arlington Heights* sets the standard for pleading racial animus, and Plaintiffs' allegations plausibly show that the Proclamation can be explained only on that basis. Defendants cannot brush off the President's statements and other indicia of racial animus as irrelevant to the motivations behind the Proclamation. *See, e.g.*, *id*. at 2418 (considering the President's statements in deciding whether proclamation violated the Establishment Clause).

Not only do Plaintiffs specifically plead facts that support a strong inference of racial animus, but it is impossible to "discern a relationship to legitimate state interests" in the Proclamation. *Hawaii*, 138 S. Ct. at 2420-21. The Proclamation contains no factual findings, is internally inconsistent, and is contrary to the INA. It purports to address the burdens of uninsured individuals on the healthcare system and the American taxpayer yet allows and disallows various insurance plans in a manner that is inconsistent with this stated goal. *See* FAC ¶¶ 48-73. There is thus a serious disconnect between the asserted government interest and what the Proclamation actually does. The Proclamation does not in fact protect the country's health care system or the American taxpayer from the burdens of uncompensated care, because it incentivizes immigrants to enter with non-comprehensive junk plans, but bars immigrants who would be able to purchase subsidized comprehensive ACA plans. *See id.* ¶¶ 6, 48-73. As such, the Proclamation is not rationally related to any legitimate government interest.

Rational basis review is not toothless. *See, e.g.*, *Romer*, 517 U.S. at 632, 635 (invalidating state constitutional amendment that barred government action to provide legal protections to gays and lesbians upon finding that it was "inexplicable by anything but animus toward the class it affects" despite the government's assertion of legitimate reasons for its enactment); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("[A] bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."); *City of Cleburne, Tex.*, 473 U.S. at 448-49 ("[M]ere negative attitudes, or fear . . . are not permissible bases for [a statutory classification]."). Plaintiffs plausibly allege that the government's stated reasons for the Proclamation are pretextual and that the Proclamation is in fact motivated by animus towards nonwhite immigrants. This does not constitute a legitimate governmental interest under any standard of review. Plaintiffs' allegations thus show that the Proclamation cannot "reasonably be understood to result from a justification independent of unconstitutional grounds," *Hawaii*, 138 S. Ct. at 2420, and Plaintiffs allege a plausible equal protection claim.

*Hawaii* involved an appeal of a preliminary injunction, and therefore required review of the evidentiary record to determine whether the plaintiffs were likely to succeed on the merits. By contrast, this case is at the motion to dismiss phase, when Plaintiffs' well-pleaded factual allegations must be taken as true. All that Plaintiffs need to do at this stage of the litigation is allege sufficient facts that would "allo[w a] court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs' allegations are sufficient to state an equal protection claim.

**C.  Plaintiffs Have Stated a Claim that the Proclamation Was Ultra Vires Executive Action that Violated the Separation of Powers.**

This Court has already concluded that Plaintiffs are likely to succeed on the merits of their claim that the Proclamation constitutes *ultra vires* executive action that violates the Constitution's separation of powers principles. *Doe #1*, 418 F. Supp. 3d at 598. In the Ninth Circuit, Defendants failed to show that they would likely defeat that claim. *Doe #1*, 957 F.3d 1050. Nevertheless, the Motion challenges that claim again on the same grounds this Court and the Ninth Circuit have already rejected. Mot. at 26-31. Defendants' Motion to Dismiss does not grapple with this Court's or the Ninth Circuit's holdings; instead, it relies heavily on the dissent by Judge Bress. *Id.* Defendants do not explain how a claim that this Court has found likely to succeed on its merits could, nevertheless, fail on a motion to dismiss.

The only issue Defendants arguably raise for the first time here is a suggestion that Plaintiffs only challenged their exercise of authority under Section 212(f) and not Section 215(a)(1) of the INA. Mot. at 26. That is incorrect. Plaintiffs allege within their separation-of-powers claim that the Proclamation "exceeds" power that Congress delegated to the President "to suspend the entry of noncitizens *and* issue reasonable rules for the entry of noncitizens." FAC ¶ 246 (emphasis added). The power to "suspend entry" is in Section 212(f) and the power to issue "reasonable rules" is Section 215(a)(1). Apart from the reasonableness requirement in Section 215(a)(1), courts have found substantial overlap between these commonly cited Sections when suspending entry on national security or related grounds. *Hawaii*, 138 S. Ct. at 2408 n.1. It is therefore not necessary to resolve "the precise relationship between the two statutes." *Id.* (quoting the government's brief). Plaintiffs have amply alleged that the Proclamation is not a "reasonable rule," FAC ¶¶ 67-73, 157-61, and Defendants do not explain how it could be permitted under *any* Congressional delegation of authority.

**D.    Plaintiffs Have Stated a Claim Under the Due Process Clause.**

Defendants' attack on Plaintiffs' due process claim misapprehends Ninth Circuit law.  As a preliminary matter, courts in the Ninth Circuit may assume that a citizen has a protected liberty interest in living together with a family member whom they have sponsored for a visa.  *See Cardenas v. United States*, 826 F.3d 1164 (2016).  That is because the Ninth Circuit construes Justice Kennedy's concurrence in *Kerry v. Din* as controlling.  *Id.* at 1171-72 (explaining application of the *Marks* doctrine to the decision in *Kerry v. Din*).[13]  Indeed, six justices in *Kerry v. Din* applied the principle of *Kleindienst* that courts should consider the constitutional claim of a U.S. citizen in connection with a noncitizen's visa application.  *See id.*  And although "foreign nationals seeking admission have no constitutional right to entry,"[14] a court must at least engage in a "circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen."  *Hawaii*, 138 S. Ct. at 2419.  This circumscribed inquiry asks whether the Executive has "exercised [a] delegated power negatively on the basis of a facially legitimate and bona fide reason."  *Id.* (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)).

The Proclamation does not meet this standard.  First, Defendants are not exercising a "delegated power."  *See Doe #1*, 418 F. Supp. 3d at 579 ("The Proclamation was not issued

_____

[13]    Defendants cite only one post-*Din* Ninth Circuit decision on this issue.  Mot. at 33. (citing *Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018)).  But in that case, the Court explained that the procedural due process analysis has two prongs: "(1) the deprivation of a constitutionally protected liberty or property interest, and (2) the 'denial of adequate procedural protections." *Gebhardt*, 879 F.3d at 988.  The court was clear that the plaintiff's claim "fail[ed] on the second point."  *Id.* ("Even assuming that Plaintiff has a protected liberty interest, he received all the process due to him").  As to *substantive* due process, the Court recognized the plaintiff had a "strong interest in living with their families" but found it not "so fundamental that it overrides" the statute that barred his admission.  *Id.*  Here, it is the President who is seeking to "override" a statute, not Plaintiffs.

[14]    Here, Plaintiffs do not seek to enforce their "right to entry" but rather their right to have their visa applications considered according to the statutory scheme Congress enacted.

under any properly delegated authority."). On the contrary, any enforcement of the Proclamation constitutes an *ultra vires* exercise of authority that violates the principle of the separation of powers. *See supra* Section II.C. Second, there can be no facially legitimate and bona fide reason for denying a visa under the Proclamation because the Proclamation itself is irrational, internally inconsistent, and will likely increase uncompensated care costs. FAC ¶¶ 67-73, 157-61. As a consequence, any visa denial under the Proclamation is unconstitutional.

The Ninth Circuit has also explained that a visa denial must satisfy a two-part test to meet the basic requirements of due process: (1) a "consular officer must deny the visa under a valid statute of inadmissibility," and (2) cite an admissibility statute that "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Cardenas*, 826 F.3d at 1172. A visa denial under the Proclamation would necessarily fail this test. As to the first factor, the Proclamation is not a valid statute. The multi-factor public charge statute is the only "valid statute of inadmissibility" that governs the determination of whether a prospective immigrant may so financial burden the country that he should be deemed inadmissible; an executive order that contravenes that valid statute necessarily denies due process. *See Doe #1*, 418 F. Supp. 3d at 597-98. As to the second factor, Plaintiffs have alleged that the Proclamation is so vague and full of undefined terms that no consular officer could ever find discrete factual predicates for a valid visa denial. *See* FAC ¶¶ 48-53. Plaintiffs have therefore plausibly alleged that any visa denial made pursuant to the Proclamation would certainly violate due process.

Even if Plaintiffs did not have constitutional rights, they would still have a statutory right to have their admissibility determined in a manner consistent with the scheme Congress established in the INA. That scheme is a system that prioritizes the admission of immediate relatives of U.S. citizens, including their spouses, parents, and children, by allowing an unlimited

number of permanent immigrant visas to be issued to those individuals.  8 U.S.C.

§ 1151(b)(2)(A)(i).[15]  The INA also specifies that prospective immigrants may be "inadmissible"

for financial reasons if they are "likely at any time to become a public charge."  8 U.S.C.

§ 1182(a)(4)(B)(i).  The statute explicitly requires that the "public charge" determination take

into account "at a minimum" five distinct factors: (1) age; (2) health; (3) family status; (4) assets,

resources, and financial status; and (5) education and skills.  *Id.*  The statute does not give

consular officers discretion to consider fewer than these five factors; no single factor is

dispositive.  *City & Cty. of S.F. v. U.S. Citizenship & Immigration Servs.*, 944 F.3d 773, 796 (9th

Cir. 2019) ("If anything has been consistent, it is the idea that a totality-of-the-circumstances test

governs public-charge determinations.").  Because Congress has "set the procedures to be

followed by determining whether an alien should be admitted," a citizen or lawful permanent

resident petitioning for a family-based immigrant visa for a relative abroad has "those rights

regarding admission that Congress has provided by statute."  *Dep't of Homeland Sec. v.*

*Thuraissigiam*, No. 19-161, 2020 U.S. LEXIS 3375, at *48-49 (S. Ct. 2020).  Here, those rights

include the right to have visa applications considered under the INA's scheme and not pursuant

to an unlawful Proclamation that overrides that scheme.

The due process violation here is particularly acute for those Plaintiffs whose loved ones

are already on U.S. soil.  It is well established that the Due Process Clause "protect[s] every

person within the nation's borders" including those "whose presence in this country is unlawful,

involuntary, or transitory."  *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en

banc).  For these Plaintiffs, the Proclamation will not only keep them apart from their family

---

[15]    *See Solis Espinoza v. Gonzales*, 401 F.3d 1090, 1094 (9th Cir. 2005) ("The [INA] was
intended to keep families together."); *Kaliski v. Dist. Dir. of INS*, 620 F.2d 214, 217 (9th Cir.
1980) (explaining the "purpose of the Act [] is to prevent continued separation of families.").

members but tear apart a presently united family on U.S. soil contrary to the families' reasonable expectations as provided under the INA.  These families include Plaintiffs with I-601A waivers for their sponsored family members, "who risk being forced to leave the United States for an indefinite period of time," even though the government has previously recognized it would be an "extreme hardship" for family members to be separated even prior to issuance of the immigrant visa.[16]  *Doe #1*, 418 F. Supp. 3d at 598.  The effect of the Proclamation on those who would have to permanently leave the United States under the Proclamation is similar to a deportation, and even those in removal proceedings who may likewise be permanently separated from family members who are in the United States have due process rights.  *See Zadvydas* v. *Davis*, 533 U. S. 678, 693 (2001) (reiterating that "once an alien enters the country," he is entitled to due process in his removal proceedings because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").  It would be incongruous to find that the rights of those present in the United States pursuant to waivers conferred by statute are less entitled to due process protections than those facing removal.

In all events, the "touchstone of due process is protection of the individual against arbitrary action of government, . . . [including where] the fault lies in a denial of fundamental procedural fairness."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (internal

---

[16]  Plaintiffs with these waivers have the additional right to have them revoked only on the grounds permitted by statute and regulation.  *See Thuraissigiam*, 2020 U.S. LEXIS 3375 at *48-49. (explaining that an individual may have those rights "Congress has provided by statute."); *see Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1122 (N.D. Cal. 2018) ("Plaintiffs arguably have a property interest in loss of TPS status, a loss which may not be justified by an unlawful government interest.").

quotations and citations omitted).  To determine what procedural protections due process requires, courts balance three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used; and (3) the government's interest, including the burdens of additional procedural requirements.  *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).  The private interests here are weighty, as this Court has already recognized.  *Doe #1*, 418 F. Supp. 3d at 598.  Plaintiffs have a strong interest in family unity.  *See id.*  And the risk of erroneous deprivation under the Proclamation is certain because the Proclamation stands in the way of proper consideration of admissibility under the public charge statute, *see id.* at 594-95, and also because consular officers are unqualified to make judgments about applicants' foreseeable medical expenses.  *See* FAC ¶¶ 50-51.  Finally, the government has no interest in an illegitimate policy that will harm the public and exacerbate the very problems it is meant to address.  Nor is it burdened by adhering to the statutorily mandated, multi-factor public charge test.  In other words, all the *Mathews* factors tip in favor of notice to Plaintiffs about the admissibility requirements they must satisfy and a meaningful opportunity to make their showing.

Indeed, the "most basic" due process protection is "the demand of fair notice"—that a "citizen could not be taken by surprise" by the government's imposition of new requirements or obligations.  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018) (Gorsuch, J., concurring).  Plaintiffs have been taken by surprise.  *See* FAC ¶¶ 180-215.  Defendants unilaterally imposed entirely new rules and requirements on Plaintiffs and members of the Class.  *Id.* ¶¶ 1, 31, 41-44.  Defendants afforded no meaningful warning, and departed from decades of well-established immigration practices, all while exceeding the authority delegated to them under the INA.  And Plaintiffs have no meaningful opportunity to respond because the requirements of the

Proclamation are so vague and impossible to satisfy. *See Doe #1*, 418 F. Supp. 3d at 583-84.

Therefore, Plaintiffs plausibly allege a claim for violation of their due process rights under the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

DATED this 26th day of June, 2020.

INNOVATION LAW LAB

s/ Nadia Dahab

**Karen C. Tumlin** (admitted *pro hac vice*)
karen.tumlin@justiceactioncenter.org
**Esther H. Sung** (admitted *pro hac vice*)
esther.sung@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: +1 323 316-0944

**Naomi A. Igra** (admitted *pro hac vice*)
naomi.igra@sidley.com
**Ben Gillig** (to be admitted *pro hac vice*)
bgillig@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Ste. 2000
San Francisco, CA 94704
Telephone: +1 415 772-7495
Facsimile: +1 415 772-7400

**Stephen Manning** (SBN 013373)
stephen@innovationlawlab.org
**Nadia Dahab** (SBN 125630)
nadia@innovationlawlab.org
**Tess Hellgren** (SBN 191622)
tess@innovationlawlab.org
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: +1 503 241-0035
Facsimile: +1 503 241-7733

-and-

**Scott D. Stein** (admitted *pro hac vice*)
sstein@sidley.com
**Kevin M. Fee** (admitted *pro hac vice*)
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL 60603
Telephone: +1 312 853-7520
Facsimile: +1 312 853-7036

**Jesse Bless** (admitted *pro hac vice*)
jbless@aila.org
AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1301 G. Street, Ste. 300
Washington, D.C. 20005
Telephone: +1 781 704-3897
Facsimile: +1 202 783-7853

*Attorneys for Plaintiffs*